Avi Burkwitz, Esq., Bar No.: 217225
aburkwitz@pbbllp.com
Ryan A. Graham, Esq., Bar No.: 310186
rgraham@pbbllp.com
**PETERSON · BRADFORD · BURKWITZ**
100 North First Street, Suite 300
Burbank, California 91502
Tel ....818.562.5800
Fax....818.562.5810

Attorneys for Defendants,
COUNTY OF LOS ANGELES, MARIA HERRERA SOSA, VICKI RAMIREZ, STEVE CAREY, MARAL HELWAJIAN, and RONALD TIGERINO

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCY ULIKHANOVA, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF LOS ANGELES, *et al.*,<br><br>Defendants. | Case No. 2:17-CV-9193-FMO-E<br><br>Hon. Fernando M. Olguin (Dist. Judge)<br><br>**DEFENDANTS MARAL HELWAJIAN'S AND RONALD TIGERINO'S NOTICE OF MOTION AND MOTION TO DISMISS THE THIRD AMENDED COMPLAINT UNDER RULE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date .................... September 20, 2018<br>Time ................... 10:00 a.m.<br>Courtroom .......... 6D<br><br>Complaint Filed: December 28, 2017<br>FAC Filed: April 19, 2018<br>SAC Filed: May 18, 2018<br>TAC Filed: July 2, 2018 |

TO THE HONORABLE COURT, PLAINTIFFS LUCY ULIKHANOVA AND P.G. ("Plaintiffs," collectively), THROUGH THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on September 20, 2018, at 10:00 a.m. in Courtroom 6D of the United States District Court for the Central District of

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

California, located on the sixth floor of the First Street Federal Courthouse, 350 West First Street, Los Angeles, CA 90012-4565, Defendants MARAL HELWAJIAN and RONALD TIGERINO will move this Court for an order dismissing, without leave to amend and with prejudice, the several claims for relief stated against them in Plaintiffs' Third Amended Complaint for Damages (TAC) pursuant to Federal Rule of Civil Procedure 12(b)(6) and relevant case law. This motion will be made and based on the following grounds:

1.      Plaintiffs' First Claim for Relief (Count One), entitled "Violation of 4th Amendment—Unlawful Seizure" fails to state a claim upon which relief can be granted against Defendant Ronald Tigerino;

2.      Plaintiffs' First Claim for Relief (Count Two), entitled "Violation of 14th Amendment—Interference with Familial Relations" fails to state a claim upon which relief can be granted against Defendant Ronald Tigerino;

3.      Plaintiffs' First Claim for Relief (Count Three), entitled "Violation of 14th Amendment—Presentation of False Evidence" fails to state a claim upon which relief can be granted against Defendant Ronald Tigerino;

4.      Plaintiffs' Fifth Claim for Relief, entitled "Intentional Infliction of Emotional Distress" (IIED) fails to state a claim upon which relief can be granted against Defendant Ronald Tigerino or Defendant Maral Helwajian;

5.      Plaintiffs' Sixth Claim for Relief, entitled "Bane Act under California Civil Code Section 52.1" fails to state a claim upon which relief can be granted against Defendant Ronald Tigerino;

6.      Plaintiffs' Seventh Claim for Relief, entitled "Violation of 14th Amendment—Unauthorized Medical Procedures" fails to state a claim upon which relief can be granted against Defendant Maral Helwajian;

7.      Plaintiffs' Eighth Claim for Relief, entitled "Violation of 1st & 4th Amendments—Unauthorized Medical Procedures" fails to state a claim upon which relief can be granted against Defendant Maral Helwajian.

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

**DEF. TIGERINO'S AND DEF. HELWAJIAN'S MOTION TO DISMISS THE TAC**
Case No. 2:17-CV-9193-FMO-E

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

This motion is made and based upon the TAC, the Court file, the memorandum of points and authorities submitted herewith, the hearing on this matter, and any matters upon which the Court may take judicial notice.

This motion is made following the conference of counsel pursuant to L.R. 7-3 and the Court's standing order. On August 9, 2018, counsel for Defendants Ronald Tigerino and Maral Helwajian sent an email correspondence to counsel for Plaintiffs to convey the grounds for dismissal. Counsel for Plaintiffs replied on August 14, 2018 thanking counsel for Defendants Ronald Tigerino and Maral Helwajian.

DATED: August 14, 2018          PETERSON · BRADFORD · BURKWITZ


By:      */s/ Ryan A. Graham, Esq.*
         Avi Burkwitz, Esq.
         Ryan A. Graham, Esq.
         Attorneys for Defendants,
         MARAL HELWAJIAN, and
         RONALD TIGERINO

**DEF. TIGERINO'S AND DEF. HELWAJIAN'S MOTION TO DISMISS THE TAC**
Case No. 2:17-CV-9193-FMO-E

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

## Table of Contents

**I.** **INTRODUCTION** ...................................................................**9**

**II.** **STATEMENT OF FACTS** ......................................................**9**

    A.    Family Circumstances and DCFS Investigation in March 2013 ............9

    B.    DCFS Investigation in May 2014 .....................................9

    C.    DCFS Investigation in February 2015 ...............................10

    D.    DCFS Investigation in October 2015..................................10

    E.    The Warrant Application .................................................13

    F.    The Removal ..............................................................13

**III.** **LEGAL STANDARD** ..........................................................**13**

**IV.** **ARGUMENT** ....................................................................**15**

    A.    THE CLAIMS AGAINST DEFENDANTS TIGERINO AND HELWAJIAN ARE IMPERMISSIBLY SPECULATIVE DUE TO THE CONFUSING TRIPARTITE REFERENCES TO NAMED AND UN-NAMED PARTIES..................................................15

    B.    PLAINTIFFS' BANE ACT CLAIM (SIXTH CLAIM FOR RELIEF) AGAINST DEFENDANT TIGERINO FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED..................................16

        1.    Defendant Tigerino is immune from Plaintiffs' Bane Act claim under the California Tort Claims Act. ...............................17

        2.    Plaintiffs failed to allege any threatening, coercive, or

**DEF. TIGERINO'S AND DEF. HELWAJIAN'S MOTION TO DISMISS THE TAC**
Case No. 2:17-CV-9193-FMO-E

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

intimidating conduct. ...................................................................18

C.   PLAINTIFFS' IIED ACT CLAIM (FOURTH CLAIM FOR RELIEF)
     AGAINST DEFENDANT HELWAJIAN AND DEFENDANT
     TIGERINO FAILS TO STATE A CLAIM UPON WHICH RELIEF
     CAN BE GRANTED ...................................................................18

     1.   Defendants Tigerino and Helwajian are immune from Plaintiffs'
          IIED claim under the California Tort Claims Act. ....................19

     2.   Plaintiffs failed to allege any outrageous conduct......................20

D.   PLAINTIFFS' SECTION 1983 CLAIM (FIRST CLAIM FOR
     RELIEF) AGAINST DEFENDANT TIGERINO FAILS TO STATE A
     CLAIM UPON WHICH RELIEF CAN BE GRANTED....................20

     1.   No facts alleged permit an inference that Defendant Tigerino
          personally participated in any judicial deception. ......................21

     2.   Plaintiff Ulikhanova's claim against Defendant Tigerino is time-
          barred. .......................................................................................22

E.   PLAINTIFFS' VACCINATION-RELATED CLAIMS (SEVENTH
     AND EIGHTH CLAIMS FOR RELIEF) AGAINST DEFENDANT
     HELWAJIAN FAIL TO STATE A CLAIM UPON WHICH RELIEF
     CAN BE GRANTED ...................................................................24

     1.   No facts alleged permit an inference that Defendant Helwajian
          personally participated in any vaccination. ...............................24

V.   CONCLUSION ..............................................................................26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

## Table of Authorities

Federal Cases

*ASARCO, LLC v. Union Pac. R. Co.*,
   765 F.3d 999 (9th Cir. 2014) ..............................................................23

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................14, 15, 21, 24

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).................................................................9, 14, 15

*Brian Clewer, Inc. v. Pan Am. World Airways, Inc.*,
   674 F. Supp. 782 (C.D. Cal. 1986) .....................................................15

*Buckey v. Cty. of Los Angeles*,
   968 F.2d 791 (9th Cir. 1992) ..............................................................9

*Colony Cove Properties, LLC v. City Of Carson*,
   640 F.3d 948 (9th Cir. 2011) ..............................................................22

*Davage v. City of Eugene*,
   No. CIV.04-6321-HO, 2007 WL 2007979 (D. Or. July 6, 2007) ........21

*Holden v. Hagopian*,
   978 F.2d 1115 (9th Cir. 1992) .....................................................15, 25

*Lacey v. Maricopa Cty.*,
   693 F.3d 896 (9th Cir. 2012) ..............................................................22

*Papasan v. Allain*,
   478 U.S. 265 (1986)............................................................................14

*Roy v. San Francisco Police Dep't*,
   953 F.2d 1388, 1992 WL 14399 (9th Cir. 1992) ................................22

*San Joaquin Deputy Sheriffs' Ass'n v. Cty. of San Joaquin*,
   898 F. Supp. 2d 1177 (E.D. Cal. 2012) ..............................................19

*Wallis v Spencer*,

**DEF. TIGERINO'S AND DEF. HELWAJIAN'S MOTION TO DISMISS THE TAC**
Case No. 2:17-CV-9193-FMO-E

202 F.3d 1126 (2000) ............................................................................... 17

State Cases

*Amylou R. v. Cty. of Riverside*,
   28 Cal. App. 4th 1205 (1994) ....................................................... 17, 19

*Christensen v. Superior Court*,
   54 Cal. 3d 868 (1991) ........................................................................ 19

*Julian v. Mission Cmty. Hosp.*,
   11 Cal. App. 5th 360 (2017) .............................................................. 18

*Towery*,
   14 Cal. App. 5th (Bane Act) .............................................................. 17

Federal Statutes

42 U.S.C. § 1983 ............................................................................. passim

State Statutes

California Civil Code Section 52.1 ................................................... 2, 17

California *Government Code section 820.2* ........................................ 17

California *Government Code section 820.8* ............................. 17, 18, 19

California *Government Code section 821.6* ........................................ 17

Federal Rules

Fed. Rule Civ. Proc. 8(a)(2) ................................................................ 14

Federal Rule of Civil Procedure 12(b)(6) .......................................... 2, 14

Rule 8 of the Federal Rules of Civil Procedure ............................... 13, 14

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

**DEF. TIGERINO'S AND DEF. HELWAJIAN'S MOTION TO DISMISS THE TAC**
Case No. 2:17-CV-9193-FMO-E

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.**   **INTRODUCTION**

The vague and conclusory TAC, like the first three complaints, in the words of the Ninth Circuit, "aims in the general direction of the federal Constitution with buckshot." *Buckey v. Cty. of Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992). While the TAC describes the admitted misfortune of Plaintiff Lucy Ulikhanova and her minor child, Plaintiff P.G., and identifies those who they believe are the cause—the Department of Children and Family Services (DCFS), the County, and several social workers—Plaintiffs in no way adequately plead injuries cognizable under 42 U.S.C. § 1983 ("Section 1983") or the host of state law claims asserted. As discussed below, none of these claims are alleged with sufficient factual plausibility to satisfy Rule 8 or survive the present motion.

**II.**   **STATEMENT OF FACTS**

The facts set forth below, alleged in the TAC, are assumed true for purposes of the present motion, even if doubtful in fact. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**A.**   **Family Circumstances and DCFS Investigation in March 2013**

Ulikhanova and her husband, Brian G., have one child: P.G. (Third Amended Complaint (TAC), ECF No. 39, ¶¶ 5, 25.)[1] On May 8, 2013, Ulikhanova filed for divorce after being physically attacked by Brian G. (¶¶ 26, 28.) DCFS investigated the family, but "didn't initiate a dependency court case." (¶ 27.)

**B.**   **DCFS Investigation in May 2014**

After Ulikhanova and Brian G. separated, they agreed to "an out-of-court contract for custody and visitation" in which P.G. spent three nights per week with Brian G. and "the rest of the time" with Ulikhanova. (¶ 28.)

In January and February 2014, P.G. "revealed several instances of what

---

[1] All paragraph citations are to the Third Amended Complaint, ECF No. 39.

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

appeared to be sexual abuse" by Brian G. (¶ 30.) Ulikhanova "reopened the divorce proceeding and months later, on March 26, 2014, a judge of the Los Angeles Superior Court's Family Division ("family court") issued a restraining order against Brian G. for reasons undisclosed by the TAC. (¶¶ 30, 31.) The family court nevertheless ordered Ulikhanova to make P.G. available for monitored visits with Brian G. (¶ 31.)

On an unspecified date, Ulikhanova called 911 after P.G. "more certainly made a disclosure of a sexual abuse incident by father." (¶ 33.) Police responded and took P.G. for forensic examination, which was inconclusive. (¶ 33.) Although law enforcement could not confirm that any sexual abuse occurred, the police nevertheless "referred the matter to DCFS on April 28, 2014." (¶ 33.) DCFS "social worker supervisor Lana Mejia investigated the sexual abuse." (¶ 37.)

In May 2014, Ulikhanova hired a forensic psychologist—"Dr. Reinhart"— who was also unable to confirm that any sexual abuse definitively occurred. Dr. Reinhart "rendered an opinion that [P.G.] was sexually abused ***or*** "at least [had] been subjected to sexual behavior by [Brian G.]" (¶ 35.) Dr. Reinhart also submitted her opinion "to DCFS to investigate." (¶ 35.)

In June 2014, DCFS supervisor Lana Mejia closed the sexual abuse investigation "as 'INCONCLUSIVE.'" (¶ 37 (capitalized typeface in original).)

## C.    DCFS Investigation in February 2015

Ulikhanova's "care of [P.G.]" was investigated by DCFS social worker Ronda White in February 2015 for reasons undisclosed by the TAC. (¶ 41.) Plaintiffs do not claim that the investigation was initiated due to allegations made by Brian G. The investigation was closed as "unfounded" on March 10, 2015. (*Id.*)

## D.    DCFS Investigation in October 2015

Ulikhanova's care of P.G. was investigated in October 2015 due to allegations of emotional abuse. (¶ 42.) Plaintiffs do not allege the investigation was initiated by Brian G. and the TAC never discloses the nature of the emotional abuse alleged

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

10

against Ulikhanova. (*See* ¶¶ 42–66 (absence of such claim in allegations related to investigation.)

The investigation was initially handled by social worker Ronald Tigerino, who was supervised by Def. Vicki Ramirez. (¶¶ 43, 47.)  Mr. Tigerino attempted to make contact with Ulikhanova at her home on October 9 and 14, 2015, but "no one was home." (¶ 43.) Ulikhanova asked Def. Ramirez for "a new social worker [to] be assigned to investigate" due to supposedly "unprofessional" behavior by Mr. Tigerino on a telephone call and threatened Def. Ramirez that "she would sue DCFS for harassing her." (¶¶ 44–47.) Def. Ramirez agreed, reassigning the investigation to Def. Maria Herrera Sosa on November 17, 2015. (¶ 48.)

On November 17, 2015, Def. Sosa attempted to make an in-person response to the allegations of emotional abuse (¶ 49.) Ulikhanova refused to permit Def. Sosa to interview P.G., instead making P.G. visible through a "metal door." (¶ 49.) Ulikhanova told Def. Sosa that she "knew her rights and didn't need to allow Sosa in her home without a warrant." (¶ 49.) On November 17, Ulikhanova also "launched a complaint against Sosa and Ramirez with the Office of the County Counsel"—*i.e.*, on the ***same day*** Def. Sosa was assigned to the investigation. (¶ 49.)

On November 18, 2015, Def. Sosa called Ulikhanova, noting that P.G. could be removed from Ulikhanova's custody if an in-person interview was not set up with P.G. immediately. (¶ 50.) Ulikhanova refused, stating that she needed to speak with her attorney, who had not returned her call. (¶ 50.)

On November 18, 2015, Def. Ramirez spoke with Brian G. (¶ 52.) Brian G. conceded that Ulikhanova was "a good mother," but provided the following information: that Ulikhanova appeared to be schizophrenic, that she would not permit P.G. to leave the home, that the sexual abuse allegations were false, and that Ulikhanova used controlled substances. (*Id.*) Brian G. admitted to being arrested for harassing Ulikhanova three weeks earlier and cried on the phone with Def. Ramirez. (*Id.*) Def. Ramirez consoled Brian G., noting that she "totally understood how he

11

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

1   felt" as a parent. (*Id.*)

2       On November 18, 2015, Defs. Sosa and Ramirez met with County Counsel

3   Keith Davis to discuss Ulikhanova's complaint. (¶ 53.) No action was taken. (*Id.*)

4       On November 24, 2015, Def. Ramirez spoke to P.G.'s paternal aunt, Mary L.

5   R., who explained that she did not believe the sexual abuse allegations, that

6   Ulikhanova was a habitual liar, and that Ulikhanova was keeping P.G. away from

7   the paternal family. (¶ 54.)

8       On December 2, 2015, Def. Sosa spoke to another paternal aunt, Meredith G.,

9   who told Def. Sosa that she "had not seen [P.G.] in two years." (¶ 55.) The same

10  day, Def. Sosa also spoke with Brian G., who also stated he had not seen his

11  daughter in two years. (¶ 56.)

12      On December 2, 2015, Def. Sosa "applied for and was granted a warrant to

13  interview [P.G.]" (¶ 58.) The same day, Ulikhanova's attorney finally called Def.

14  Sosa to set up an interview. (¶ 57.) They spoke, "attempting to schedule an

15  interview" and "avoid a need for a warrant." (¶ 57.) Ulikhanova "became upset"

16  with Def. Sosa during another telephone call and reiterated that she wanted a new

17  social worker. (¶ 58.)

18      On December 4, 2018, Def. Sosa continued trying to work with Ulikhanova,

19  sending her attorney a text message to find out the status of the interview. (¶ 58.)

20      On December 7, 2015, Def. Sosa met with Brian G. (¶ 59.) He gave Def. Sosa

21  a set of "letters that . . . [P.G.] supposedly wrote claiming sexual abuse," according

22  to Ulikhanova. (¶ 59.)

23      On December 8, 2015, Def. Sosa interviewed P.G.'s paternal grandfather,

24  Frank G., who confirmed that the paternal family "had not seen [P.G.] for two

25  years." (¶ 60.)

26      On December 30, 2015, Def. Sosa and a police officer served the warrant to

27  interview P.G. (¶ 62.) During the interview, P.G. was observed cheerfully describing

28  that she had been bullied in school and that Brian G. had bitten her "woo-woo" and

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

12

"touched [her] all over." (¶ 64.) However, P.G. confirmed Brian G.'s statements that she did not write the letters Ulikhanova had claimed that P.G. wrote documenting the alleged sexual abuse—denying the handwriting was hers. (¶ 64.)

### E.   The Warrant Application

On January 7, 2016, Def. Sosa submitted a 19-page application for a warrant for removal with the juvenile court, which was drafted by herself, Def. Ramirez, and Ronald Tigerino. (¶ 67.) Plaintiffs allege that the warrant was obtained "by way of judicial deception" because the warrant application contained several pieces of allegedly misleading information while omitting others allegedly material facts. For purposes of brevity, this information is identified in Part III.A, *infra*.

### F.   The Removal

The juvenile court granted the warrant application on January 8, 2016. (¶ 77.) Plaintiff P.G. was removed to the safety of a paternal aunt on January 13, 2016. (¶¶ 77, 80.) A jurisdiction and disposition hearing was held in October 2016. (¶ 81.) During the removal, Defendant Sosa told Plaintiff P.G. they were going "to go have fun at the Americana At Brand," and Defendant Sosa sat Plaintiff P.G. on her lap without a car seat. (¶ 79.) P.G. was returned to Ulikhanova's care on April 28, 2017 and DCFS' jurisdiction terminated on November 28, 2017. (¶¶ 82, 83.)

Plaintiffs also allege that Plaintiff P.G. was vaccinated in June 2016 over express objections made by Ulikhanova to Defs. Carey and Maral Helwajian via email. (¶¶ 86–88.)

During the period of P.G.'s removal, Plaintiffs also allege that Def. Carey "falsified and misrepresented made by third parties in his reports to the juvenile court, who later came forward and put in writing that [he] misrepresented their statements to the juvenile court." (¶ 88.) There are no other allegations about what took place after Plaintiff P.G. was removed.

### III.   LEGAL STANDARD

Under Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must plead a

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of the claim and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id*. at 555–56. Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). A complaint that simply offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertion[s]' devoid of 'further factual enhancement'" will not do. *Iqbal*, 556 U.S. at 678 (first quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986), second quoting *Twombly*, 550 U.S. at 555, 557).

Under Rule 12(b)(6), a party may move to dismiss a claim for relief for its failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In evaluating a complaint against a motion to dismiss, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Motions to dismiss test complaints against a plausibility standard: *i.e.*, whether the complaint contains sufficient factual matter, taken as true, to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. Rule Civ. Proc. 8(a)(2)). The plausibility standard demands more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

14

"Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal citations and quotations omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

Although courts are obliged to presume that all factual allegations in a complaint are true, they "do not 'have to accept every allegation in the complaint as true in considering its sufficiency,'" rather courts must "'examine whether conclusory allegations follow from the description of facts as alleged by the plaintiff.'" *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992) (quoting *Brian Clewer, Inc. v. Pan Am. World Airways, Inc.*, 674 F. Supp. 782, 783 (C.D. Cal. 1986)).

## IV.   ARGUMENT

### A.   THE CLAIMS AGAINST DEFENDANTS TIGERINO AND HELWAJIAN ARE IMPERMISSIBLY SPECULATIVE DUE TO THE CONFUSING TRIPARTITE REFERENCES TO NAMED AND UN-NAMED PARTIES.

Plaintiffs allege that "Ronald Tigerino and Maral Helwajian are herein added as DEFENDANTS in substitution to [sic] the previously named Does 1-10" (TAC ¶ 3), while continuing to refer to Defendant Tigerino, Defendant Helwajian, and all ten Does Defendants separately as twelve different people. (*E.g.*, TAC 77:1–8 (IIED claim alleged against all twelve).)

*Claims against Defendant Tigerino*. Plaintiffs allege the First, Fifth, and Sixth Claims for relief against Defendant Tigerino: *i.e.*, the Section 1983 claim (all three counts), IIED, and state civil rights violations by way of intimidation, threats, or coercion in violation of the Bane Act. (TAC 44:4, 52:2, 58:13, 77:5, 82:22.)

Plaintiffs do not allege the Third, Fourth, Seventh, or Eighth Claims for Relief against Defendant Tigerino (child abduction, false imprisonment, or the vaccination-

15

1 related claims), although such claims *are* alleged against "Does 1 through 10."

2 (TAC 67:1–5, 71:1–4, 84:5–9, 88:14–19.)

3     *Claims against Defendant Helwajian*. Plaintiffs allege the Fifth, Seventh, and

4 Eighth Claims for relief against Defendant Helwajian—*i.e.*, the IIED claim and

5 vaccination-related claims. (TAC 77:6, 84:9, 88:18.)

6     Plaintiffs do not allege the First, Second, or Fourth Claims for Relief against

7 Defendant Helwajian, although such claims *are* alleged against "Does 1 through

8 10." (TAC 44:1-5, 52:1-4, 58:9-15, 67:1-5, 71:1-4.)

9     Counsel for Plaintiffs and counsel for Defendants previously discussed this

10 issue in connection with the motion to dismiss filed on behalf of the other

11 defendants. (ECF No. 40-1 ¶ 11(b).) While initially conceding that the TAC could

12 be clarified to assign Defendants Tigerino and Helwajian as Doe Nos. 1 or 2,

13 counsel for Plaintiffs then changed course—asserting that Defendants Tigerino and

14 Helwajian could be added as new defendants entirely. (*Id.*)

15     Accordingly, to the extent that the Court might entertain the possibility that

16 the Third, Fourth, Seventh, and Eighth Claims for Relief are alleged against

17 Defendant Tigerino by way of confusing ambiguous reference to "Does 1 through

18 10," such claims for relief are impermissibly speculative against Defendant

19 Tigerino. And with respect to Defendant Helwajian, the First, Second, and Fourth

20 Claims for Relief fail to state plausible claims for relief by the same reasoning. The

21 Second and Ninth Claims (*Monell* liability and declaratory relief) contain absolutely

22 no facts concerning either of Defendants Helwajian and Tigerino.

23 **B.**    **PLAINTIFFS' BANE ACT CLAIM (SIXTH CLAIM FOR RELIEF)**

24     **AGAINST DEFENDANT TIGERINO FAILS TO STATE A CLAIM**

25     **UPON WHICH RELIEF CAN BE GRANTED**

26     Plaintiffs bring a Bane Act claim against Defendant Tigerino for violations of

27 their civil rights by threats, intimidation, and coercion. (TAC 82:16–84:2.) The Bane

28 Act provides a cause of action for individuals whose rights under the United States

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

or California Constitutions have been interfered with by threats, intimidation, or coercion. Cal. Civ. Code § 52.1.

### 1.   Defendant Tigerino is immune from Plaintiffs' Bane Act claim under the California Tort Claims Act.

Plaintiffs' claims are barred by the California Tort Claims Act (CTCA). Under California *Government Code section 821.6*, "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Cal. Gov't Code § 821.6. The Court of Appeal has expressly found that this immunity applies to IIED and Bane Act claims. *E.g.*, *Amylou R. v. Cty. of Riverside*, 28 Cal. App. 4th 1205, 1209 (1994) (IIED); *Towery*, 14 Cal. App. 5th at 235 (Bane Act).

To the extent that Plaintiffs seek to hold Defendant Tigerino responsible for detention that initiated Plaintiff P.G.'s dependency case, such a claim is barred by Government Code section 821.6.

Under California *Government Code section 820.2*, "a public employee cannot be held liable for any injury resulting from 'his act or omission where the act or omission was the result of the exercise of discretion vested in him, whether or not such discretion be abused.'" *Wallis v Spencer*, 202 F.3d 1126, 1144 (2000). It applies to "county social workers engaged in investigating allegations of child abuse" and provides "complete protection for the decision to investigate, to make an 'in-person response,' and for actions necessary to make a meaningful investigation." *Id.* at 1144–45.

Given that the only facts alleged against Defendant Tigerino concern his investigation of the allegations of emotional abuse before it was transferred to Defendant Sosa, Plaintiffs' Bane Act claim falls squarely within the investigatory immunity available under Government Code section 820.2 described by *Wallis*.

California *Government Code section 820.8* provides that "a public employee

17

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

is not liable for an injury caused by the act or omission of another person."

Given that the force of Plaintiffs' Bane Act claim appears to be related to the allegedly deceptive warrant (TAC ¶ 177), which was obtained by Defendant Sosa (TAC ¶ 68)—not Defendant Tigerino—Government Code section 820.8 immunizes Defendant Tigerino from Plaintiffs' attempt to hold him liable for the acts of others.

### 2. <u>Plaintiffs failed to allege any threatening, coercive, or intimidating conduct.</u>

With respect to <u>*Plaintiff P.G.'s Bane Act claim*</u>, absolutely no facts suggest that she ever even came into contact with or spoke to Defendant Tigerino—much less that he threatened her exercise of any civil rights during such a fictional exchange.

With respect to <u>*Plaintiff Ulikhanova's Bane Act claim*</u> against Defendant Tigerino, the only facts alleged regarding him concern two failed attempts at investigating the emotional abuse (TAC ¶ 43) and two phone calls (TAC ¶¶ 44–45). On the first telephone call, Plaintiff Ulikhanova was confused about the identity of Defendant Tigerino and hung up on him. (TAC ¶ 44.) The next day, she called Defendant Tigerino and apologized. (TAC ¶ 45.) These facts do not state a Bane Act claim, as "[s]peech is insufficient to establish the requisite threat unless it includes threat of violence." *Julian v. Mission Cmty. Hosp.*, 11 Cal. App. 5th 360, 395 (2017), *as modified on denial of reh'g* (May 23, 2017). Plaintiffs make no allegations of violent threats.

### C. <u>PLAINTIFFS' IIED ACT CLAIM (FOURTH CLAIM FOR RELIEF) AGAINST DEFENDANT HELWAJIAN AND DEFENDANT TIGERINO FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED</u>

Plaintiffs bring an IIED claim against Defendant Helwajian in connection for her "vaccinating and forever inject[ing] [Plaintiff P.G.] with immunizations." (TAC ¶ 166.) They bring an IIED claim against Defendant Tigerino for his alleged

18

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

1    involvement in the judicial deception. (TAC ¶ 165.)

2    "To state a claim for intentional infliction of emotional distress, a plaintiff

3    must plead: (1) extreme and outrageous conduct by the defendant with the intention

4    of causing, or reckless disregard of the probability of causing, emotional distress; (2)

5    that the plaintiff suffered severe or extreme emotional distress; and (3) that the

6    plaintiff's injuries were actually or proximately caused by the defendant's outrageous

7    conduct." *San Joaquin Deputy Sheriffs' Ass'n v. Cty. of San Joaquin*, 898 F. Supp.

8    2d 1177, 1192 (E.D. Cal. 2012). For conduct to be outrageous, must be so extreme

9    as to exceed all bounds of that usually tolerated in a civilized community and the

10   defendant must have engaged in "conduct intended to inflict injury or engaged in

11   with the realization that injury will result." *Christensen v. Superior Court*, 54 Cal.

12   3d 868, 903 (1991) (citation omitted).

13        **1.    <u>Defendants Tigerino and Helwajian are immune from Plaintiffs'</u>**
     **<u>IIED claim under the California Tort Claims Act.</u>**

15        As discussed in Part IV.B.1, *supra*, the CTCA immunities apply to IIED

16   claims. *Amylou R.*, 28 Cal. App. 4th at 1209. The only factual basis for the claims

17   *<u>against Defendant Helwajian</u>* is that she received several emails. (TAC ¶ 91.) The

18   allegation that Defendant Helwajian "arranged for" Plaintiff P.G.'s vaccination

19   (TAC ¶ 92) is, without more, impermissibly conclusory to support any inference

20   that she was remotely connected with Plaintiff P.G.'s vaccination. Assuming that

21   Plaintiff P.G. was, in fact, actually vaccinated, it certainly is not attributable to any

22   acts by Defendant Helwajian. Irrespective of whoever *<u>is</u>* responsible for such

23   vaccination, the CTCA does not permit Plaintiffs to simply blame Defendant

24   Helwajian. Cal Gov. Code § 820.8.

25        With respect to Defendant Tigerino, as discussed in Part IV.B.1, supra, the

26   only facts alleged against him are his unsuccessful attempts to visit Plaintiffs in-

27   person and two telephone calls. California Government Code section 820.8 also bars

28   any claim against him for the acts of other defendants in pursing the warrant.

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

19

**2.**   **Plaintiffs failed to allege any outrageous conduct.**

As described in Part IV.C.1, *supra*, the only factual basis for the claims against Defendant Helwajian are that she received several emails from Plaintiff Ulikhanova—Plaintiffs do not even allege that she replied to such emails. These facts cannot serve as the basis for an IIED claim for the obvious reason that one cannot allege an *intentional* tort without alleging any *intentional* conduct. In any case, receiving emails is not "so extreme as to exceed all bounds" of what is tolerated in a civilized society. Defendant Tigerino's telephone calls are no more outrageous.

Plaintiffs have failed to sufficiently allege the necessary elements of their IIED claim (to which Defendants Tigerino and Helwajian are immune under the CTCA anyway) and it is, accordingly, subject to dismissal.

**D.   PLAINTIFFS' SECTION 1983 CLAIM (FIRST CLAIM FOR RELIEF) AGAINST DEFENDANT TIGERINO FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

Plaintiffs allege the First Claim for Relief, the judicial deception claim for the removal of Plaintiff P.G. by way of an allegedly defective warrant affidavit, against Defendants Tigerino, Sosa, Ramirez, and Carey. Defendants Sosa, Ramirez, and Carey have moved to dismiss such claim in a separate motion. (ECF No. 40.) With respect to Defendant Tigerino, the First Claim for Relief should be dismissed because (1) Plaintiffs have failed to allege facts sufficient to infer that he personally participated in any of the allegedly unconstitutional conduct, and (2) with respect to Plaintiff Ulikhanova's claim, the claim is time-barred.

Plaintiffs allege the following as the basis for the Section 1983 claim against Defendant Tigerino: "it is for the maliciously false, misleading, and at times completely fabricated representations of fact included in the delivered service logs, the Application for Removal, and reports prepared for the detentions hearing, to achieve unlawful separation of [Plaintiff P.G.] from [Plaintiff Ulikhanova]." (TAC ¶

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

20

118.)

Additionally, they claim that Defendant Tigerino "deceived the juvenile court to believe that [Plaintiff Ulikhanova] is suffering a mental episode" because she was withholding Plaintiff P.G. from her family for two years. (TAC ¶ 73.)

Finally, Plaintiffs allege that Defendant Tigerino "maliciously collaborated" with Defendants Ramirez and Sosa (TAC ¶ 109) and that the "SOCIAL WORKER DEFENDANTS and DOES 1 through 10 . . . conspired to unlawfully seize [Plaintiff P.G.]" (TAC ¶¶ 111, 113).

## 1. **No facts alleged permit an inference that Defendant Tigerino personally participated in any judicial deception.**

To establish a § 1983 claim against an individual defendant, a plaintiff must establish personal participation by the defendant in the alleged constitutional deprivation. *Ashcroft v. Iqbal*, 556 U.S. 662, 676–77 (2009). Absent an allegation that the named state officials were personally involved in the alleged deprivation of constitutional rights, a complaint under 42 U.S.C. § 1983 does not state a claim. *Id.*

The January 2016 warrant affidavit that is central to this action was "signed under penalty of perjury" by Defendant Sosa, "with the approval of [Defendant] Ramirez." (TAC ¶ 67.)

While Plaintiffs allege Defendant Tigerino was the first social worker assigned to investigate Plaintiff Ulikhanova's emotional abuse of her daughter (TAC ¶¶ 42, 43), it was reassigned to Defendant Sosa on November 17, 2015 (TAC ¶ 49).

Plaintiffs do not allege Defendant Tigerino personally sought the challenged warrant, that he agreed with the decision to seek a warrant, that he was in any position to stop the seeking of a warrant—or even that he knew about the warrant.

On such facts, Plaintiffs cannot fault Defendant Tigerino for any warrant affidavits that allegedly lacked probable cause. As one district court put it, a defendant's minimal investigative efforts "do not require [him] to find that no probable cause existed for a warrant he did not apply for." *Davage v. City of*

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

21

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

*Eugene*, No. CIV.04-6321-HO, 2007 WL 2007979, at \*4 (D. Or. July 6, 2007).

With respect to the allegations of conspiracy and collaboration, no facts are alleged regarding the nature of the conspiracy—no facts suggest that Defendant Tigerino is acquainted with or has ever met Defendants Sosa or Ramirez. After *Twombly* and *Iqbal*, a complaint may not simply conclude that a conspiracy existed, but rather must plead facts from which the existence of a conspiracy may reasonably be inferred. *Lacey v. Maricopa Cty.*, 693 F.3d 896, 937 (9th Cir. 2012) (en banc) ("The conclusory conspiracy allegations in the original complaint do not define the scope of any conspiracy involving [the defendant], what role he had, or when or how the conspiracy operated."). *Id*. Even if Plaintiffs had adequately alleged conspiracy, such facts were alleged sufficient, an allegation of conspiracy is "inadequate to show [a defendant's] personal participation in the preparation of the warrant." *Roy v. San Francisco Police Dep't*, 953 F.2d 1388, 1992 WL 14399, at \*3 (9th Cir. 1992) (unpublished opinion).

Here, there are no acts or conduct alleged which the Plaintiffs would have the Court condemn except a telephone call. There are, accordingly, no facts alleged giving rise to an inference that Defendant Tigerino personally participated in the alleged constitutional violation.

### 2.   Plaintiff Ulikhanova's claim against Defendant Tigerino is time-barred.

#### a.   *Only conduct that falls within the two-year period preceding the April 19, 2018 filing of the FAC is within the statute of limitations.*

The statute of limitations for Section 1983 claims in California is two years. *Colony Cove Properties, LLC v. City Of Carson*, 640 F.3d 948, 956 (9th Cir. 2011).

Plaintiffs' first allegations against Defendant Tigerino occurred in the First Amended Complaint—he was not an original defendant. (*Compare* ECF No. 1 *with* ECF Nos. 21 (original FAC) *and* 24 (corrected FAC).) The FAC was filed once on April 19, 2018, and a second time on April 24, 2018 after a notice of deficiencies

22

issued due to Plaintiffs having more than 10 unnamed doe defendants. (ECF Nos. 21, 22, 24.) Accordingly, only claims against Defendant Tigerino that occurred within the two-year period preceding April 19, 2018 are timely.

> ### b. *None of the facts alleged concerning Defendant Tigerino occurred within the two-year period preceding the filing of the FAC.*

In the TAC, Plaintiffs' allegations against Defendant Tigerino consist of the following: that he (1) visited their house on October 9 and 14, 2015, (2) spoke with Brian G. on October 29, 2015, (3) participated in a telephone call with Plaintiff Ulikhanova on November 11, 2015, and (4) participated in another telephone call with Plaintiff Ulikhanova on November 11, 2016. (TAC ¶¶ 43, 44, 45, 46, 47.)

Since all of the factual allegations against Defendant Tigerino concern conduct that occurred *before* April 2016, none of such conduct is actionable under Section 1983.

> ### c. *Rule 15's provision for the relationship back of amendments does not save the claims against Defendant Tigerino, as the allegations against him are time-barred even with respect to the Original Complaint.*

"[R]elation back does not help [a plaintiff] if the original complaint was not timely in the first instance." *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1007 (9th Cir. 2014). The Original Complaint was filed on December 23, 2017. (ECF No. 1.) The factual allegation concerning Defendant Tigerino that is closest in time to the filing of the Original Complaint is that he "transferred [Plaintiff Ulikhanova] to his supervisor" during a November 12, 2015 telephone call. (TAC ¶ 47.) Therefore, even if the substance of the TAC had been asserted in the Original Complaint, the allegations against Defendant Tigerino would have been time-barred by over a month.

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

### E.   PLAINTIFFS' VACCINATION-RELATED CLAIMS (SEVENTH AND EIGHTH CLAIMS FOR RELIEF) AGAINST DEFENDANT HELWAJIAN FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

In their ***Seventh Claim for Relief*** against Defendant Helwajian, Plaintiffs allege she violated Plaintiff Ulikhanova's and Plaintiff P.G.'s Fourteenth Amendment rights to familial association. With respect to *Plaintiff P.G.*, the TAC alleges that Defendant Helwajian "violated the Minor's 14th Amendment right to familial association and the rights to the care, comfort, and presence of her Mother during medical evaluations and/or procedures." (TAC ¶ 182.) With respect to *Plaintiff Ulikhanova*, the TAC alleges that Defendant Helwajian violated her Fourteenth Amendment "right to familia[l] association when her child was forever injected with vaccines" against Plaintiff Ulikhanova's will, in her absence, and "without any opportunity to be present" or notifying her "where these immunizations were taking place." (TAC ¶ 181.)

In the ***Eighth Claim for Relief***, Plaintiff P.G. alleges that Defendant Helwajian "violated the minor's 1st and 4th Amendment rights of privacy in her body" and "violated the Minor's right to be free from unreasonable search and seizure" under the First and Fourth Amendments. (TAC ¶ 191.)

#### 1.   No facts alleged permit an inference that Defendant Helwajian personally participated in any vaccination.

Although not captioned as a Section 1983 claim, Defendants presume the Seventh and Eighth Claims for Relief are only actionable as Section 1983 claims. Accordingly, it is subject to the same requirements of personal participation described above. *Iqbal*, 556 U.S. at 676–77.

The TAC does not set forth a *single fact* concerning any affirmative conduct by Defendant Helwajian. Plaintiffs allege Defendant Helwajian received a handful of emails (TAC ¶ 184)—but do not allege she ever replied. Receiving emails does

24

1    state a Fourteenth Amendment violation.

2        Plaintiffs lament that Defendant Helwajian "did not inform MOTHER when

3    and where the MINOR was to be vaccinated and effectively did not permit

4    MOTHER'S presence during this procedure." (TAC ¶ 185.)

5        While the allegation the Defendant Helwajian did not inform Plaintiff

6    Ulikhanova about the location where her then-detained daughter would be

7    vaccinated may be a well-pleaded fact, the allegation that Defendant Helwajian

8    "effectively" precluded Plaintiff Ulikhanova's attendance does not—in the words of

9    the Ninth Circuit—"follow from the description of the facts as alleged by the

10   Plaintiff" and is not entitled to the presumption of truth. *Holden*, 978 F.2d at 1121.

11       Absolutely no facts regarding Defendant Helwajian are alleged. No facts

12   alleged elucidate Defendant Helwajian's connection to Plaintiffs—no facts suggest

13   she ever even met Plaintiffs. Whether she is even a social worker, Plaintiffs leave to

14   guesswork.

15       As discussed above, there are no facts permitting an inference that Defendant

16   Helwajian had anything to do with the alleged vaccination. Without such facts, there

17   is no plausible claim that Defendant Helwajian violated the First, Fourth, or

18   Fourteenth Amendments.

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

25

**DEF. TIGERINO'S AND DEF. HELWAJIAN'S MOTION TO DISMISS THE TAC**
Case No. 2:17-CV-9193-FMO-E

## V.      CONCLUSION

For the reasons stated above, Defendants Tigerino and Helwajian respectfully request the Court dismiss the TAC in its entirety, without leave to amend, and with prejudice.

DATED:  August 14, 2018                    PETERSON · BRADFORD · BURKWITZ


By:   */s/ Ryan A. Graham, Esq.*
       Avi Burkwitz, Esq.
       Ryan A. Graham, Esq.
       Attorneys for Defendants,
       MARAL HELWAJIAN, and
       RONALD TIGERINO

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 100 North First Street, Suite 300, Burbank, California 91502.

On August 14, 2018, I served the foregoing document described as:

### Defendant Ronald Tigerino's and Defendant Maral Helwajian's Motion to Dismiss the TAC

on interested parties in this action by placing a true and correct copy thereof enclosed in a sealed envelope addressed as follows:

### SEE ATTACHED MAILING LIST

☒  **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed document(s) with the Clerk of the Court by using the CM/ECF system. Participants in this case who are registered CM/ECF users will be served by the CM/ECF system. Participants in this case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

☒  **BY MAIL:**  I deposited such envelope in the mail at Burbank, California. The envelope was mailed with postage thereon fully prepaid.  As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Burbank, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒  **FEDERAL:** I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on August 14, 2018, at Burbank, California.

*/s/ Ryan A. Graham*

Ryan A. Graham

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# SERVICE LIST

**RE:**   **<u>Ulikhanova, Lucy v. County of Los Angeles</u>**

|   |   |
|---|---|
| **Case No.:** | 2:17-cv-9193-FMO-E |

Liana Serobian, Esq.
Serobian Law, Inc.
100 North Brand Blvd., Suite 600
Glendale, CA 91203
Tele: (818) 539-2249
L.Serobian@yahoo.com

**Attorney for Plaintiff**
**Lucy Ulikhanova and**
**P.G. a Minor**