## D.I. DEFENDANTS' INTRODUCTION

Preliminarily, Defendants note several procedural irregularities that, taken as a whole, warrant denial of Plaintiffs' summary judgment motion outright. None of these issues would warrant such drastic measures singly, but these issues—taken together—establish that Plaintiffs cannot meet the high burden at summary judgment.

(i.) As the parties briefed the Court in their Rule 26(f) Joint Report over a year ago, state law—Welfare and Institutions Code section 827—requires that the parties petition the juvenile court for an order authorizing use of P.G.'s juvenile case file in this lawsuit. ECF No. 17, 2:19–3:6.

Defendants, through their counsel, Ryan A. Graham, Esq., petitioned for such authorization, which the juvenile court granted in two orders dated July 16, 2018 and January 4, 2019. ECF Nos. 63-1, 78-2. These orders authorize Defendants' counsel to disclose the records to other parties (*i.e.*, to Plaintiffs) in this litigation and to file the records (under seal). *E.g.*, ECF No. 78-2 ¶¶ 7, 8.

Despite the necessity of petitioning the juvenile court being known to Plaintiffs since the beginning of the litigation, Plaintiffs had made no progress in doing so as late as October 2018. ECF No. 67, 3:1–4. This delay conduct even caused Defendants to withdraw certain discovery discovery requests. ECF 78-3, at 007, ¶ 1 (Sept. 2018 email from Graham to Serobian, "I don't want our discovery request to create a dispute where we've asked you to produce something you can't[,] [i]f you do not have an order permitting Plaintiffs to disseminate the records in this litigation, please consider [RFP] No. 2 . . . withdrawn").

Now, Plaintiffs have re-purposed the exhibits they received from Defendants in support of *Defendants summary judgment motion* as exhibits in support of *Plaintiffs' summary judgment motion*. Given that the only person subject to the juvenile court orders of July 2018 and January 2019 is Defendants' counsel, and

that it is Defendants' counsel who remains accountable to the juvenile court for any violations of the terms of those orders, it remains unclear how Plaintiffs can lawfully rely on P.G.'s juvenile case file in this case. Without any evidence, this motion lacks any support.

(ii.) In their motion, while Plaintiffs cite to exhibits within the Plaintiffs' Joint Evidentiary Appendix (PJA), Plaintiffs fail to cite to the Joint Appendix of Undisputed and Disputed Facts ("Separate Statement"). This is especially egregious, given the additional time Defendants provided to Plaintiffs for this purpose.

The parties met to confer on their summary judgment motions on April 18, 2019. *Declaration of Ryan A. Graham in Opposition to Plaintiff's Summary Judgment Motion* (*Graham Declaration in Opposition*), ¶ 2. Under the terms of the summary judgment order, Defendants should have received the motion within seven days, ECF No. 19, ¶ 9(B): April 25. On that day, Defendants received nothing. *Graham Decl. in Opp.* ¶ 3. Eventually, Plaintiffs submitted a draft without a statement of facts on April 29, and failed to submit the Separate Statement altogether. *Id.* at ¶¶ 4–5. Defendants agreed to provide Plaintiffs with additional time, and when Plaintiffs finally did submit a Separate Statement, they did so in a non-editable PDF format. *Id.* at ¶ 5. They did not provide editable Word versions of either the Separate Statement or the Joint Brief until May 10. *Id.* When they did supply a Word version of the Joint Brief, it was a version created from a PDF, not a natively-created Word document. *Id.* at ¶ 6. Consequently, Defendants were unable to create the style of *seriatim* responses contemplated by the Court, and must resort to using point headings to follow Plaintiffs' point headings. *Id.*

(iii.) Again, these procedural defects might be de minimis in isolation. Plaintiffs have had the opportunity to gather the evidence they need—they chose not to. Plaintiffs have had the opportunity to tether whatever evidence they can

find to the points in the Joint Brief, by way of a Separate Statement—they chose not to.

## D.II. REBUTTAL TO PLAINTIFFS' STATEMENT OF FACTS

Defendants' statement of facts is presented in their own summary judgment motion and is omitted here for brevity. Several points in Plaintiffs' recitation of facts, however, require corrective attention.

*Plaintiffs' citation failures.*

Plaintiffs' refusal to provide pincites—especially to hearing or deposition transcripts—makes any attempt at auditing the accuracy of Plaintiffs' citations unnecessarily difficult. Moreover, numerous factual statements have no factual support at all—whether to the PJA or Separate Statement. These issues force Defendants and the Court to engage in a burdensome comparative exercise in which the statement of facts must be scrutinized against the Separate Statement, and yet again against the PJA. The Ninth Circuit condemns such practice: "'[j]udges are not like pigs, hunting for truffles buried in briefs.'" *Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (alternation in *Indep. Towers*) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

*Plaintiffs continue to litigate collateral, immaterial issues.*

Plaintiffs' statement of facts continues to prosecute Garcia for claims that have no impact on the merits of the only dispute before the Court: whether P.G.'s vaccination and related events were constitutionally sound. Plaintiffs have alleged, in support of the judicial deception claims, that Garcia's bad acts were mischaracterized in filings with the juvenile court. *See Order Re: Pending Motions [to Dismiss]*, 7:2–5, 7:11–14 (citing TAC ¶¶ 68, 77), ECF No. 71. These bad acts were immaterial to the judicial deception claims, which were dismissed. *See id.* at 7:23–24. They are equally immaterial to the vaccination claim.

*Plaintiffs overlook conflicting evidence.*

Plaintiffs overlook evidence, disclosed during discovery, that contradicts their version of events. They claim the party who reported Ulikhanova to DCFS in October 2015 was "anonymous," despite the fact that the caller clearly identified himself as law enforcement. *Defendants' Joint Evidentiary Appendix*, Ex. 13 at COLA_003225 (DCFS Hotline Screener Narrative), Ex. 31 at COLA_004108–09 (Glendale P.D. Report No. 15-15253). Additionally, Plaintiffs claim that P.G. was removed from Ulikhanova because Ulikhanova make nonsensical statements, kept P.G. away from Garcia, and made false statements of sexual abuse. But the juvenile court authorized the removal of P.G. for different reasons: (1) P.G. "required immediate medical care", (2) P.G. was "in danger of physical or sexual abuse," (3) P.G.'s "physical environment poses a threat to the child's health or safety," (4) P.G. was "suffering severe emotional damage," and (5) P.G. had "no parent, guardian, or responsible relative; or the child's parent, guardian, or responsible relative is not willing to provide care for the child." PJA, Ex. 1 at 8.

*Plaintiffs misrepresent Helwajian's deposition testimony.*

Plaintiffs claim DCFS was concerned with Reisch "permitting [Garcia] unauthorized contact with P.G.," citing Helwajian's deposition testimony at PJA, Ex. 36, 552–558. Helwajian futher testified to precisely the opposite:

> Q. Were there -- was there a concern that the aunt was actually allowing the father unmonitored contact with the child against the court orders?
>
> A. There was no concern over that, not from us.

PJA, Ex. 36, 553:4–7. Helwajian testified that Ulikhanova "would always make allegations that she would think that he would have unmonitored contact, but we didn't believe that to be the case." *Id.* at 553:12–14.

Plaintiffs claim Helwajian testified Ulikhanova was compliant with the juvenile court's case plan "all along" during the dependency case. But Helwajian

only testified that she recommended the juvenile case be closed with custody of P.G. vested with Ulikhanova, and that she did so because of Ulikhanova's compliance. PJA, Ex. 36, 501:14–16 (recommendation), 501:23–502:4 (reason for recommendation). She did not testify about the degree or duration of compliance. Given Judge Arakaki's statements during the June 10, 2016 hearing—*e.g.*, "[t]o secret a microphone in a doll to have the child recorded is in complete violation of this court's order"—Plaintiffs cannot seriously contend that Ulikhanova was totally compliant with the juvenile court. PJA, Ex. 21, 244:20–22

*Plaintiffs mischaracterize the juvenile court proceedings.*

Plaintiffs claim that the warrant application filed in the juvenile court did not disclose that Ulikhanova had full custody. They are wrong: it states "the mother went to family law court and obtained full custody of the child." PJA, Ex. 1, at 30. Plaintiffs claim the warrant application omits the fact that Garcia had monitored visitation, even though it states "there is a Family Law order that grants the father monitored visits." PJA, Ex. 1, at 12.

Plaintiffs claim that Helwajian filed a request "to have P.G. immunized." Helwajian did not—she only asked the juvenile court to "make an order regarding this matter." PJA, Ex. 21, 127 ¶ 1. Helwajian's *February Ex Parte* simply presents a dispute between two parents—*i.e.*, Garcia consenting to vaccination, Ulikhanova objecting—and asks the juvenile court for a resolution. Helwajian specifically does not take a side in the matter.

*Plaintiffs mischaracterize Ulikhanova's email objecting to vaccinations.*

Plaintiffs claim that in "several emails" Ulikhanova sent to Defendants, she "verbalized her objection to P.G. being vaccinated for several reasons." Plaintiffs claim those reasons included (1) the family's autoimmune history, (2) the fact that P.G. was not school age, (3) Ulikhanova's "own negative side effects," and (4) "safety risks associated." In support, Plaintiffs seem to cite a February 12, 2016

email from Ulikhanova to many individuals (PJA, Ex. 7, 118–112), a March 30, 2016 email from Ulikhanova to someone at DCFS (PJA, Ex. 12, 171), an April 6, 2016 email to Carey (PJA, Ex. 16, 213), and a June 4, 2016 email to Carey (PJA, Ex. 19, 230–31).

The February email does not mention autoimmune diseases, school, Ulikhanova's negative side effects from vaccination, or safety risks. PJA, Ex. 7, 118. Ulikhanova simply objects to vaccination because her "late father a ND, Ph.D. ,Msc , and so on and his colleagues who are Nds always gave me instruction for P[.G.] care in homeopathic or Asian medicines ,medical advice." *Id.* (quoted verbatim, except initialization of minor).

The March email is similarly silent on these issues. PJA, Ex. 12, 171. Ulikhanova does not even object to vaccination in this email—she accuses Reisch of vaccinating P.G. without informing her (Ulikhanova). *Id.* And again, Ulikhanova refers to her father: "My late Father treated many children who had adverse to even near deathly reactions to vaccines." *Id.*

The April email also fails to mention autoimmune diseases, P.G.'s school age, Ulikhanova's experience with vaccination, or safety risks. PJA, Ex. 16, 213.

The June email is almost unintelligible, rambling about Indian deities, Bill Maher, and ionic silver. But again, Ulikhanova's focus is her father: "My father was a alternative healthcare leader pioneer in this country! I will not vaccinate her with the junk ingredient vaccines to which you do not even understand what is in them ,!" PJA, Ex. 19, 230–31 (quoted verbatim). Ulikhanova's father was, according to her, able to cure autism—which she contended was a side effect of vaccination. *Id.* She accused Carey of engaging in a plot to punish her for being related to her father: "To try to make an example out of me who was the daughter of one of the leading pioneers and alternative healthcare in this country who did nothing but good for thousands and thousands of people around the world how

dare you!" *Id.* While Ulikhanova does mention school age, she seems to do so as evidence of Carey's campaign of retaliation against her father: "You know that this subject touched close to me , you know my father was a pioneer leader in alternative healthcare in this country , to attempt this what she's not even legal age to go to school and is not in jurisdiction shows you are antagonist ." *Id.* In any case, the June email is not an objection to vaccination per se—Ulikhanova actually suggests specific kinds of vaccines from a Dr. Sam Chachoua and/or Jay Newman. *Id.* at 230 (Chachoua), 231 (Newman).

*Plaintiffs mischaracterize the criminal proceedings against Ulikhanova.*

The charges related to the doll incident were not dismissed on June 17, 2016, as Plaintiffs contend. On that day, a misdemeanor complaint and an application for arrest warrant were filed. *Defendants' Joint Evidentiary Appendix*, Ex. 3, COLA_001339, COLA_001341. Her diversion was not complete until January 2018. *Id.* at COLA_001321. And the diversion resulted in her *case* being dismissed—the prior finding of guilt, the conviction, and the criminal restraining order are unaffected. *See id.*

## D.III. REBUTTAL TO PLAINTIFFS' PROFFERED LEGAL STANDARD

Plaintiffs resist application of a shocks-the-conscience standard. Mot. 30:17. Instead, they urge the Court to use a balancing test, citing to the Supreme Court's decision in *Cruzan by Cruzan v. Dir., Missouri Dep't of Health*, 497 U.S. 261 (1990). Mot. 20:9–21. As briefed in Defendant's motion, there are two competing tests—the "fundamental rights" and "shocks-the-conscience" tests—in substantive due process jurisprudence that apply in different circumstances.

*The Court must apply a shocks-the-conscience test.*

The evolution of these tests has admittedly been rocky. *See Cty. of Sacramento v. Lewis*, 523 U.S. 833, 861 (1998) (Scalia, J., dissenting) ("The atavistic methodology that Justice SOUTER announces for the Court is the very

same methodology that the Court called atavistic when it was proffered by Justice SOUTER in Glucksberg."); *Hawkins v. Freeman*, 195 F.3d 732, 738 (4th Cir. 1999) (noting the two tests "evoked a multiplicity of opinions reflecting continuing disagreements even within Court majorities respecting the precise methodology for assessing such claims"). However, a shocks-the-conscience test applies here (as Defendants contend), rather than a fundamental rights test (as Plaintiffs proffer), for at least three reasons.

First, in *Lewis*, the Supreme Court unambiguously distinguished substantive due process challenges to legislative acts from challenges to executive acts. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) ("criteria to identify what is fatally arbitrary differ depending on whether it is legislation or a specific act of a governmental officer that is at issue"). Consequently, legal tests applied in the legislative context cannot automatically be applied to supplant the shocks-the-conscience standard in the executive context—at least not without some explanation, which Plaintiffs do not provide.

Second, the Supreme Court, speaking of executive abuses, made clear that the "cognizable level of executive abuse of power as that which shocks the conscience." *Lewis*, 523 U.S. at 846. Given that Plaintiffs challenge executive acts, their request for the Court to reject a shocks-the-conscience test must account for *Lewis*. Plaintiffs make no attempt to convince the Court why *Lewis* is misguided.

Third, the leading Supreme Court case on the fundamental rights test, *Washington v. Glucksberg*, 521 U.S. 702 (1997), is silent as to executive actions or a shocks-the-conscience test. At best, Plaintiffs' success in persuading the Court to apply a fundamental rights test would only serve to require Plaintiffs to meet both tests—an even more burdensome requirement than grappling with *Lewis* alone. In *Chavez v. Martinez*, a plurality applied both *Glucksberg* and *Lewis* to executive action. 538 U.S. 760 (2003). Justice Gorsuch, writing for the Tenth Circuit, wrote

that "[p]erhaps it is impossible to know what such a splintered Court [in *Chavez*] meant," but that "[a]ll we can say with certainty is that *Chavez* did not expressly overrule *Lewis's* holding that the 'arbitrary or conscience shocking' test is the appropriate one for executive action so we feel obliged to apply it." *Browder v. City of Albuquerque*, 787 F.3d 1076, 1079 n.1 (10th Cir. 2015). There is simply no way for Plaintiffs to prevail without showing that Carey and Helwajian engaged in conscience-shocking behavior.

*The law of other circuits supports the application of Lewis here.*

The Ninth Circuit has not yet provided guidance to lower courts as to when they should apply *Lewis*, *Glucksberg*, or both—explicitly. Defendants submit that, as persuasive authority, the Tenth and Fourth Circuits make explicit what the Ninth Circuit has only stated thus far by implication.

Over the course of a decade, the Tenth Circuit has grappled with substantive due process and the distinctions between executive and legislative challenges— each time, making painstaking analyses of the shocks-the-conscience and fundamental rights tests. *Seegmiller v. LaVerkin City*, 528 F.3d 762 (10th Cir. 2008); *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1182 (10th Cir. 2009); *Browder v. City of Albuquerque*, 787 F.3d 1076, 1078–79 (10th Cir. 2015); *Halley v. Huckaby*, 902 F.3d 1136, 1153 (10th Cir. 2018), *cert. denied*, No. 18-986, 2019 WL 358389 (U.S. Mar. 18, 2019); *Dawson v. Bd. of Cty. Commissioners of Jefferson Cty., Colorado*, 732 F. App'x 624, 636 (10th Cir. 2018), *cert. denied sub nom. Dawson v. Bd. of Cty. Comm'rs of Jefferson Cty., Colorado*, 139 S. Ct. 862 (2019).

After a decade of deliberation, the Tenth Circuit "follow[s] a simple binary approach." *Dawson*, 732 F. App'x at 636. While this approach acknowledges that the case law is not perfectly clear, the Tenth Circuit's cases have "coalesced around a solution: we apply the fundamental-rights approach when the plaintiff

challenges legislative action, and the shocks-the-conscience approach when the plaintiff seeks relief for tortious executive action." *Halley*, 902 F.3d at 1153; *accord Dawson*, 732 F. App'x at 636; *Browder*, 787 F.3d at 1078–79.

In *Halley*, of particular note, the Tenth Circuit considered the specific case of substantive due process claims asserting a liberty interest in familial association, and denied that it constituted "a third, separate, and solitary branch of substantive due process doctrine." 902 F.3d at 1154. The Tenth Circuit, like the Ninth Circuit, had sometimes employed a legal test that did not resemble either *Glucksberg* or *Lewis* without much explanation. *Id.* at 1153–54. Its test required an analysis whether a public official-defendant's conduct constituted an "unwarranted intrusion" into the family relationship, *id.*, a phrasing which mimics the Ninth Circuit's infrequently-used "unwarranted interference" test, *Crowe v. Cty. of San Diego*, 608 F.3d 406, 441 n.23 (9th Cir. 2010). The Tenth Circuit clarified that "familial association claims are grounded in the shocks-the-conscience approach to substantive due process claims challenging executive action." *Id.* at 1155.

The Fourth Circuit follows the same legislative/executive distinctions as the Tenth Circuit. *Hawkins*, 195 F.3d at 738 (en banc). And, similarly, it applies *Lewis* to claims alleging violations of familial association. *Martin v. Saint Mary's Dep't Soc. Servs.*, 346 F.3d 502, 511 (4th Cir. 2003).

The Ninth Circuit has not expressly endorsed a binary approach like the Fourth and Tenth Circuits. In practice, however, it appears to follow such a distinction. The Ninth Circuit has applied the fundamental rights test to legislative enactments, applying strict scrutiny to legislation that infringes fundamental rights and rational basis to legislation that does not. *See, e.g.*, *Wedges/Ledges of California, Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56, 66 (9th Cir. 1994); *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1234 (9th Cir. 1994). On the specific question of which test to apply to familial association claims, the Ninth Circuit has

adhered to the shocks-the-conscience standard in cases involving executive actions in at least one per curiam decision and when sitting en banc. *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1079 (9th Cir. 2011) (per curiam); *Gonzalez v. City of Anaheim*, 747 F.3d 789, 797 (9th Cir. 2014) (en banc).

Accordingly, Defendants submit that the approached of the Tenth and Fourth Circuits, which are consistent with the Ninth Circuit's most significant, recent cases, support application of a *Lewis*-style shocks-the-conscience test here.

*The non-application of Lewis in Mann is unremarkable.*

Plaintiffs claim that the Ninth Circuit's rejection of a shocks-the-conscience test in *Mann* supports the non-application of such a test here. This point is addressed at length in Defendant's motion, and Defendants' counterpoints are omitted for brevity. As an additional point, however, Defendants note that not submitting a *Monell* claim to *Lewis* in consistent with the legislative/executive binary framework discussed above.

In *United States v. Stein* (*I* and *II*), the Southern District of New York considered whether substantive due process was violated by (1) a Deputy U.S. Attorney General promulgating a memorandum concerning factors that assistant U.S. attorneys should consider in making a decision whether to charge a corporation, and (2) actions taken by AUSAs related to that memorandum. *United States v. Stein (II)*, 495 F. Supp. 2d 390, 412–13 (S.D.N.Y. 2007); *United States v. Stein (I)*, 435 F. Supp. 2d 330, 337–38 (S.D.N.Y. 2006), aff'd, 541 F.3d 130 (2d Cir. 2008) (describing memorandum). It found that a fundamental rights analysis was sufficient for evaluating the memorandum, because promulgating the memorandum was analogous to promulgating a regulation, which was quasi-legislative—while the AUSAs' conduct was evaluated under a shocks-the-conscience analysis. 495 F. Supp. 2d at 412–13.

Municipal policies, like the memorandum in *Stein*, are quasi-legislative and

would not fall within the scope of *Lewis*.

*Plaintiffs' Monell-related points are unavailing.*

In Part V.D. of their motion, Plaintiffs claim that *Lewis* should be abandoned because the non-*Monell* claims they intend to resurrect concern training, which are the functional equivalent of a direct *Monell* claim. Even giving the argument the most generous interpretation, and assuming the Court would actually indulge these claims, Plaintiffs—at best—would have an indirect *Monell* claim, not a direct one.

As *Mann* observed, direct *Monell* claims do not employ a shocks-the-conscience standard because issues of proof are uncomplicated. *Mann v. Cty. of San Diego*, 907 F.3d 1154, 1164 (9th Cir. 2018) However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 822 (1985)). Policies of inadequate training are "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*." *Tuttle*, 471 U.S. at 822. These are the hallmarks of an indirect *Monell* claim. *Gibson v. Cty. of Washoe, Nev.*, 290 F.3d 1175, 1186–87 (9th Cir. 2002), *overruled by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016).

Even *Gibson*—the case on which *Mann* relies—analyzed a failure to train claim under the indirect *Monell* analysis. *Id.* at 1194. Consequently, *Mann*'s *Monell* reasoning does not support abandoning *Lewis* on Plaintiffs' speculative *Monell* points.

## D.IV. COUNTERPOINT: WALLIS AND MANN DO NOT APPLY

(i.) In support of the argument that *Mann* and *Wallis* apply to P.G.'s vaccinations, Plaintiffs point to the "everchanging state and federal law." Mot. 21:25–26. They also cite to a statement from the Association of American Physicians and Surgeons (AAPS). Mot. 23:3–27.

Plaintiffs' points reinforce the Supreme Court's frequent admonitions that courts should hesitate to break new ground in substantive due process cases. *Raich v. Gonzales*, a case in which the plaintiffs proffered that medical use of marijuana was a fundamental right, is instructive. 500 F.3d 850, 866 (9th Cir. 2007). There, the Ninth Circuit noted that, "[f]or the time being, this issue remains in 'the arena of public debate and legislative action.'" *Id.* (quoting *Glucksberg*, 521 U.S. at 720). Plaintiffs simply make the point that some problems are better left to the political branches to solve. Heightened legislative interest in this field is highly indicative that the nation's history and traditions are no settled that a fundamental right is involved here—or that the Court should be breaking new ground.

(ii.) Plaintiffs attempt to make arguments about "18 chemical permanent injections" and "over 8 estimated shots." They claim the vaccinations were "painful and uncomfortable" and that P.G. was "never injected before." All of these assertions are unsupported. The only traumatic medical procedure in evidence is, frankly, a hospital visit in July 2015 when Ulikhanova took P.G. to Glendale Memorial Hospital because she "want[ed] to know if [P.G.]'s hymen is intact even 'though she knows it is not very accurate." *Graham Decl. in Opp.*, Ex. 6, at 9 (Medical Recs. of Glendale Hosp.). The results of the exam were normal. *Id.* at 10. Unsurprisingly, this was part of Ulikhanova's campaign against Garcia. In this exam, Ulikhanova subjected her daughter to highly invasive medical procedures despite the fact that Ulikhanova told medical staff that P.G. "had not been with her dad for about 1 year." *Id.* at 9.

(iii.) Plaintiffs argue *Wallis* and *Mann* apply because P.G. was detained temporarily and because, at the time of the vaccination hearing, the disposition hearing had not yet happened. They make points about the evidentiary standards that apply at various points during juvenile proceedings, citing to *Santosky v. Kramer*, 455 U.S. 745, 753 (1982) and *In re Angelia P.*, 28 Cal. 3d 908, 917

(1981).

Using Plaintiffs' logic, this "temporary" detention lasted ten months—so the characterization of the detention as non-permanent, without further explanation that Plaintiffs do not provide, is meaningless. Plaintiffs' points about the evidentiary standards in juvenile cases concern *procedural* due process, not *substantive* due process—confirmed by the fact that *Santosky* is a procedural due process case. *E.g.*, 455 U.S. at 754 (engaging factors from landmark procedural due process case, *Mathews v. Eldridge*, 424 U.S. 319 (1976)).

Plaintiffs attempt to persuade the Court that their entitlement to procedural due process under state law—Welfare and Institutions Code section 361— necessarily entitles them to the substantive due process protections of *Wallis* and *Mann*. This comparative exercise is flawed insofar as the existence of procedural due process protections in situations where parental rights risk terminations does not necessarily imply the presence of parallel substantive due process protection with respect to vaccination. Moreover, while property and liberty interests can be protected by procedural due process where the interest arises from state law, rather than the Constitution, "substantive due proess rights are created only by the Constitution." *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 229 (1985) (Powell, J., concurring); *Fischer v. Winter*, 564 F. Supp. 281, 297 n.14 (N.D. Cal. 1983).

## D.V. COUNTERPOINT: DEFENDANTS DID NOT JUDICIALLY DECEIVE THE JUVENILE COURT

Plaintiffs accuse Carey and Helwajian of procuring the order authorizing vaccination by judicial deception. They accuse Defendants of three species of acts.

(i.) Plaintiffs accuse Defendants of "misleading the juvenile court to believe that the Minor was of school age in June 2016 or the coming 2016 academic year and needed to be vaccinated to enroll." Mot. 25:9–13 (citing PJA, Ex. 8, 127, Ex.

17, 222). Again, Plaintiffs misrepresent the evidence.

Helwajian only discusses age to the extent that she gives a factually correct report of the dispute between Ulikhanova and Garcia. The cited portion of Helwajian's *February Ex Parte* only refers to school twice: "the new law says that ever child in a school/daycare setting needs immunizations" and "the Father would like the child to be able to attend school, but mother refuses school until age 6." PJA, Ex. 8, 127; Separate Statement (SS) ¶ D51.

Carey, in his June Supplemental Report, stated that P.G. needed to be in school—*but he never discussed age*. PJA, Ex. 17, 222; SS ¶ D52. DCFS sought to enroll P.G. in school because she required socialization and services a school he could provide. PJA, Ex. 21, 241:13–18; SS ¶ D56.

(ii.) Plaintiffs accuse Defendants of misleading the juvenile court with respect to Garcia having decision-making power over P.G.'s educational and medical rights. However, the juvenile court had already decided that Garcia had rights to make decisions in P.G.'s life by the time Helwajian filed her *February Ex Parte* and Carey filed his *June Supplemental Report*. Whatever Plaintiffs contend happened in the divorce court, the juvenile court unmistakable ordered that the parents—both parents, not just Ulikhanova—retained educational and developmental decision-making rights on January 20 and February 25, 2016. PJA, Ex. 10, 146:26–28, 157:16–18; SS ¶¶ D53, D54. And afterward, the juvenile court never took away Garcia's rights in these spheres. SS ¶ D55 (deemed admission).

And although Plaintiffs' argument sails dangerously close to attacking a state court judgment, and Defendants submit they have no obligation to defend the judgment of the state court, Defendants note that the juvenile court had every right to make orders in variance with the prior proceedings. "Once a petition has been filed in juvenile court alleging that a child is described by a subsection of section 300, and until the petition is dismissed or dependency is terminated, the juvenile

court has sole and exclusive jurisdiction over matters relating to the custody of the child and visitation with the child." *A.H. v. Superior Court*, 219 Cal. App. 4th 1379, 1389 (2013) (quoting Cal. Rules of Ct. 5.620(a)); *see also In re Alexander P.*, 4 Cal. App. 5th 475, 488 (2016)

(iii.) Plaintiffs claim the juvenile court was deceived by the omission of various vaccination forms from Helwajian's *February Ex Parte* and Carey's *June Supplemental Report*.

Defendants enjoy absolute immunity from this dimension of Plaintiffs' claims under the doctrine of prosecutorial immunity. Absolute immunity determinations are based on "the nature of the function performed, not the identity of the actor who performed it." *Milstein v. Cooley*, 257 F.3d 1004, 1008 (9th Cir. 2001) (citing *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997)). The prosecutor's intent "should play no role in the immunity analysis." *Id.* (citing *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986) (en banc))). Where a social worker performs the functions of a prosecutor, the social worker enjoys the same absolute immunity as a prosecutor. *Meyers v. Contra Costa Cty. Dep't of Soc. Servs.*, 812 F.2d 1154, 1157 (9th Cir. 1987); *Miller v. Gammie*, 335 F.3d 889, 896 (9th Cir. 2003). And where a prosecutor is not entitled to absolute immunity, social workers are correspondingly not entitled to absolute immunity, such as when swearing to facts in support of an arrest warrant under oath as a complaining witness. *Kalina*, 522 U.S. at 131; *Beltran v. Santa Clara Cty.*, 514 F.3d 906, 908 (9th Cir. 2008).

Prosecutorial immunity "covers the knowing use of false testimony at trial, the suppression of exculpatory evidence, and malicious prosecution." *Milstein*, 257 F.3d at 1008. There is no distinction between willfully presenting perjured testimony to the factfinder and deliberately withholding exculpatory information: while both may be reprehensible, both are entitled to absolute immunity. *Imbler v. Pachtman*, 424 U.S. 409, 431 n.34 (1976); *accord Broam v. Bogan*, 320 F.3d 1023,

1030 (9th Cir. 2003).

Consequently, Plaintiffs' allegations that any information was withheld is a non-starter.

## D.VI. COUNTERPOINT: REISCH RAN A DAYCARE

Plaintiffs try to argue that Carey misled the juvenile court about the necessity of P.G. being vaccinated vis-à-vis Reisch and her daycare.

First, Plaintiffs claim that P.G. was not a pupil in the daycare, but was under living with Reisch as a foster care placement. There is no support for the assertion that P.G. was not a pupil in Reisch's daycare, and even if there were, the consequence of such a point is left unexplained. DCFS was concerned with salvaging P.G.'s placement with Reisch. PJA, Ex. 21, 4:4–12; SS ¶ D59. The source of this concern, as reported to the juvenile court, was that P.G. was in the physical presence of Reisch's clients—"exposed to a dozen other children." PJA, Ex. 8, 127. Whether P.G. was in their physical presence as a friend, relative, classmate, roommate, or whatever else is inconsequential for Reisch's purposes. There is simply no evidence that whether P.G. was enrolled as a pupil in the daycare has ever been a concern for DCFS. P.G. simply could not be present, unvaccinated, at the location where the daycare was ran—which happened to be the same place where she had been placed.

Second, Plaintiffs argue that Carey misled the juvenile court because (1) the vaccination requirements do not apply to private schools that operate inside a home, and (2) Reisch ran such a school. There is no evidence Reisch runs a school, rather than a daycare.

Third, Plaintiffs claim Carey misled the Court to believe P.G.'s "need for speech therapy required her enrollment in school" because the vaccination statute has an exception for individualized educational programs (IEP) under California Education Code section 56026.

Again, Plaintiffs misrepresent the record. Carey never represented that P.G. "required" speech therapy, he only said she "may" need speech therapy. PJA, Ex. 17, 222. And he recommended immunization/school "so she can receive a speech assessment, and if needed, speech therapy through the district"—hardly the type of forceful language capable of deceiving a jurist that Plaintiffs suggest. *Id*. And while there is an exception for IEPs, Cal. Health & Safety Code § 120335(h), Plaintiffs provide no evidence that P.G. has ever had an IEP in place.

Plaintiffs' speculation that P.G.'s need for speech therapy "could have been accomplished by a simple referral to a [speech] therapist" highlights the meritlessness of this case: this is precisely the type of point that Plaintiffs' counsel could have made at the hearing on June 10, 2016 to the juvenile court.

## D.VII. COUNTERPOINT: GRANDFATHER CLAUSE

Plaintiffs make frequent reference to a "grandfather's" clause—presumably in reference to the vaccination statute's provision that students with preexisting personal belief waivers can continue to enroll in school, delaying vaccination, until they hit one of three statutory checkpoints, one of which is exiting preschool. *Whitlow v. California*, 203 F. Supp. 3d 1079, 1082 (S.D. Cal. 2016) (citing Cal. Health & Safety Code § 120335(g)). This point is discussed in Defendants' motion and treated only superficially for brevity. P.G. was entering kindergarten in 2016. Consequently, she was at a checkpoint, no previous vaccination waivers would not have applied, and she would be subject to the vaccination requirements. *Id.* at 1082–83.

## D.VIII. COUNTERPOINT: HELWAJIAN DID NOT VIOLATE THE 14TH AMENDMENT WITH RESPECT TO PRESENCE

(i.) Before P.G. was removed, Ulikhanova's liberty to see her daughter was clearly unlimited. However, beginning in January 2016, that liberty was reduced to visitation in a DCFS office, with a DCFS monitor present. SS ¶ 60. On Juen 10,

2016, when the vaccinations were authorized, the juvenile court refused to remove these restrictions, confirming that DCFS had discretion to restrict her contact with P.G. to the DCFS office. SS ¶¶ 61–63, 65. It also issued a temporary restraining order, preventing Ulikhanova from having any contact with Reisch and her family. SS ¶ 64. Consequently, Plaintiffs would fault Helwajian for allegedly denying her access to a routine, outpatient medical appointment that she had been judicially prevented from attending. The Constitution simply does not forbid such inconsequential conduct.

(ii.) In trying to persuade the Court that Helwajian violated the Constitution, Plaintiffs continue to misrepresent evidence. They claim Helwajian was motivated by some preference for Reisch, citing to no evidence at all. They claim "[t]he aunt did not need to be there, whether there was a conflict between her and [Ulikhanova] or not," citing to pages 548 through 550 of the PJA. Nowhere in the PJA does Helwajian testify that Reisch—the person taking care of P.G.—did not have to be present at P.G.'s medical appointments: Helwajian's answer to the relevant question is "Perhaps. Maybe, yes." PJA, Ex. 21, 550:10–12. Deposition testimony such as this is not the quantum of evidence that supports summary judgment in favor of Plaintiffs.

What the cited deposition testimony does tend to establish is that Garcia was present—and to the extent that *Wallis* establishes that P.G. had a right to the presence of a parent, P.G.'s rights were satisfied.

(iii.) When P.G. was first vaccinated on June 10, 2016, it would have been impossible for Ulikhanova to be present at the vaccination since she was restrained from attending with Reisch and, more importantly, she could not leave the DCFS office with P.G. to go to any physician's office. Helwajian's conduct in not following up with Ulikhanova when those circumstances were no longer barriers to attending the medical appointments is, at best, negligent. However, "[m]ere

negligence or lack of due care by state officials in the conduct of their duties does not trigger the substantive due process protections of the Fourteenth Amendment and therefore does not state a claim under section 1983." *Woodrum v. Woodward Cty., Okl.*, 866 F.2d 1121, 1126 (9th Cir. 1989).

As one district court has recently noted, the holdings of *Wallis* and *Mann* are invariably colored by the fact that they concerned only *Monell* claims against a County: "*Wallis* and *Mann*, and the other cases discussing parents' right to advance notice when the County intends to conduct a medical examination of their children, say nothing about a constitutional right to notice from particular individuals or notice in a particular form." *Benavidez v. Cty. of San Diego*, No. 18-CV-0558, 2019 WL 581647, at *6 (S.D. Cal. Feb. 12, 2019). While this point concerns the notice/consent dimension of *Wallis*, it illustrates the point that Ulikhanova has no claim against Helwajian for not facilitating her ability to attend the vaccination appointments. Neither *Wallis* nor *Mann* support Plaintiffs' notion that Helwajian or Carey—or any other of the legion social workers employed by DCFS—had an affirmative duty to ensure that Ulikhanova was present. "The government generally is under no obligation to facilitate or fund the exercise of constitutional rights." *Lipscomb By & Through DeFehr v. Simmons*, 962 F.2d 1374, 1379 (9th Cir. 1992).

## D.IX. COUNTERPOINT: PLAINTIFFS ARGUMENTS REGARDING THE CLEARLY ESTABLISHED PRONG OF QUALIFIED IMMUNITY ARE MERITLESS

Plaintiffs contend that Defendants are not entitled to qualified immunity because they "knew of the clearly established law that parents could skip kindergarten and no immunization was needed before the Minor was of school age." Presumably Plaintiffs attempt to leverage California Health and Safety Code section 120335 to meet the second prong of the qualified immunity under *Saucier*

*v. Katz*, 533 U.S. 194 (2001). This is insufficient, as state law does not define the contours of clearly established rights. *Finkelstein v. Bergna*, 924 F.2d 1449, 1452 (9th Cir. 1991).

Plaintiffs claim Defendants are not entitled to qualified immunity because they obtained the vaccination orders with judicial deception, citing *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009). There is no support for this proposition in *Mueller*. As discussed above, Defendants are shielded by <u>*absolute*</u> immunity for the judicial deception claims here.

## D.X. DEFENDANTS' AFFIRMATIVE POINT: PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE THEY HAVE NOT DEMONSTRATED CULPABLE CONDUCT UNDER EITHER LEWIS OR GLUCKSBERG

Where the plaintiff has the ultimate burden of proof, he or she may prevail on a motion for summary judgment only if he or she affirmatively demonstrates that there is no genuine dispute as to every essential element of its claim. *See River City Mkts., Inc. v. Fleming Foods W., Inc.*, 960 F.2d 1458, 1462 (9th Cir.1992); *Cabo Distrib. Co. v. Brady*, 821 F. Supp. 601, 607 (N.D. Cal. 1992).

As *Cruzan* acknowledges, "determining that a person has a 'liberty interest' under the Due Process Clause does not end the inquiry*." Cruzan by Cruzan v. Dir., Missouri Dep't of Health*, 497 U.S. 261, 279 (1990). Plaintiffs must consequently hold Defendants to account against some standard of culpability. As discussed above, Plaintiffs must do so by demonstrating conscience-shocking conduct. Plaintiffs dispute the applicability of this test, but make no attempt to establish conscience-shocking conduct in the event the Court agrees with Defendants. Defendants respectfully submit that the, if the Court finds that *Lewis*' shock-the-conscience analysis controls the present dispute, then Plaintiffs' motion should immediately be denied for failure to establish conscience-shocking conduct.

Even under Plaintiffs' fundamental rights test, they are not entitled to summary judgment. As the Supreme Court noted in *Cruzan*, a balancing test was using to decide the vaccination issues in *Jacobson*. *Cruzan by Cruzan v. Dir., Missouri Dep't of Health*, 497 U.S. 261, 278 (1990) (noting it "balanced an individual's liberty interest in declining an unwanted smallpox vaccine against the State's interest in preventing disease"). In balancing the rights of the individual against the people of the Commonwealth of Massachusetts, the Supreme Court upheld the vaccination legislation at issue in that case. *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 37–38 (1905). Consequently, even if Plaintiffs' own legal test was applied, they would not prevail.

Avi Burkwitz, Esq., Bar No.: 217225
aburkwitz@pbbllp.com
Ryan A. Graham, Esq., Bar No.: 310186
rgraham@pbbllp.com
**PETERSON · BRADFORD · BURKWITZ**
100 North First Street, Suite 300
Burbank, California 91502
Tel ....818.562.5800
Fax....818.562.5810

*Attorneys for Defendants,*
STEPHEN CAREY and MARAL HELWAJIAN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

LUCY ULIKHANOVA, *et al.*,

　　　　　Plaintiffs,

　　v.

COUNTY OF LOS ANGELES, *et al.*,

　　　　　Defendants.

Case No. 2:17-CV-9193-FMO-E

Hon. Fernando M. Olguin (Dist. Judge)
Hon. Charles F. Eick (Mag. Judge)

**DECLARATION OF RYAN A. GRAHAM, ESQ. IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Complaint Filed: December 28, 2017
FAC Filed: April 19, 2018
SAC Filed: May 18, 2018
TAC Filed: July 2, 2018

## DECLARATION OF RYAN A. GRAHAM, ESQ.

I, Ryan A. Graham, Esq., declare the following:

1.　　I am an attorney licensed to practice law in the State of California. I am an associate attorney employed at the law firm of Peterson Bradford Burkwitz, LLP, attorneys of record for Defendants Stephen Carey and Maral Helwajian. I have personal knowledge of the information contained in this declaration, except where stated upon information and belief. If called upon to testify regarding the contents of this declaration, I would and could competently do so.

2.　　The parties met and conferred on their respective summary judgment motions at the offices of Peterson Bradford Burkwitz, LLP on April 18, 2019.

1

3.      I did not receive Plaintiffs' summary judgment motion on April 25, 2019.

4.      On April 26, 2019, I emailed opposing counsel, Liana Serobian, Esq., to ask for a status update on Plaintiff's motion. She responded and told me it was in progress. I eventually received a draft on April 29, 2019 that did not have a statement of facts.

  a.  Attached as **<u>EXHIBIT 1</u>** is a true and correct copy of an email exchange with opposing counsel from April 26–29, 2019.

5.      I also did not receive a separate statement from Ms. Serobian until May 7, 2019. The separate statement was in a PDF format and not editable. After conferring with Ms. Serobian, she finally provided word versions on May 10.

  a.  Attached as **<u>EXHIBIT 2</u>** is a true and correct copy of an email exchange with opposing counsel from May 10, 2019.

6.      When Ms. Serobian did supply a Word version of the joint brief in support of her motion, it was a version created from a PDF, not a natively-created Word document. I was forced to send the opposition as a separate document and email Plaintiff with precise instructions as to how I want portions of it inserted into the joint brief. I could not follow the Court's instruction to follow Plaintiffs' points in a point-counterpoint, *seriatim* format—but rather I was forced to follow Plaintiffs' macro-level headings with my own headings. Moreover, I do not have faith that my formatting, including citations and emphasis, will be followed during this process.

7.      On behalf of Defendants Carey and Helwajian, I drafted a set of requests for admissions to Plaintiffs Ulikhanova and P.G., which were served on January 7, 2019.

  a.  Attached as **<u>EXHIBIT 3</u>** are Defendant Helwajian's Requests for Admissions (Set 1) to Plaintiff Lucy Ulikhanova.

  b.  Attached as **<u>EXHIBIT 4</u>** are Defendant Helwajian's Requests for

2

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

Admissions (Set 1) to Plaintiff P.G.

    c.  Identical requests were propounded simultaneously on behalf of Defendant Carey.

8.    On April 19, 2019, Ms. Serobian emailed me responses to the January 7, 2019 discovery responses. I replied, noting that the responses were late, that various objections based on Welfare and Institutions Code § 827 were in bad faith, and that the admissions were deemed admitted. Ms. Serobian told me she would file a motion for relief. She has not done so.

    a.  Attached as **EXHIBIT 5** is a true and correct copy an email exchange between me and Serobian from April 19, 2019.

9.    As part of my work on this case, I subpoenaed records from Glendale Memorial Hospital for Plaintiff P.G.

    a.  A true and correct copy of those records is attached as **EXHIBIT 6.**

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing statements are true and correct.

Executed May 19, 2019 in Burbank, CA.

*/s/ Ryan A. Graham, Esq.*
Ryan A. Graham, Esq., Declarant

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

3

**Ryan A. Graham**

| | |
|---|---|
| **From:** | Liana Serobian <l.serobian@yahoo.com> |
| **Sent:** | Monday, April 29, 2019 5:16 PM |
| **To:** | Ryan A. Graham |
| **Cc:** | Avi Burkwitz |
| **Subject:** | Re: Plaintiff's MSJ |
| **Attachments:** | ULIKHANOVA_JOINT_PLAINTIFFSBRIEF_MSJ(1).docx |

| | |
|---|---|
| **Categories:** | Opposing Counsel |

Dear Mr. Graham,

Here is my first draft Summary Judgement Motion. I just need to do the tables and the facts and citations thereto. Thank you, Liana.

**Important Legal Notice:** The content of and any documents accompanying this email contain information belonging to the sender and are legally privileged as sender's work-product and/or attorney-client communication. This email and the information it contains are intended only for the use of the person or entity to which it is addressed. If you are not the intended recipient you are hereby notified that any use, disclosure, copying or distribution of this transmission is strictly prohibited. If you have received this email in error please notify the sender to arrange for its immediate destruction or return.

On Monday, April 29, 2019 10:49 AM, Liana Serobian <l.serobian@yahoo.com> wrote:

Dear Mr. Graham,

Did the defendants sign their deposition transcripts and are those available to you or sent back to me so that we can attach to the joint exhibits? Thank you so much, Liana.

**Important Legal Notice:** The content of and any documents accompanying this email contain information belonging to the sender and are legally privileged as sender's work-product and/or attorney-client communication. This email and the information it contains are intended only for the use of the person or entity to which it is addressed. If you are not the intended recipient you are hereby notified that any use, disclosure, copying or distribution of this transmission is strictly prohibited. If you have received this email in error please notify the sender to arrange for its immediate destruction or return.

On Friday, April 26, 2019 4:19 PM, Liana Serobian <l.serobian@yahoo.com> wrote:


Dear Mr. Graham,

I'm agreeable. Works for me as well. Have a great weekend, Liana.


Sent from Yahoo Mail for iPhone

On Friday, April 26, 2019, 4:17 PM, Ryan A. Graham <rgraham@pbbllp.com> wrote:

Dear Ms. Serobian:

That's actually ok. We hustled to get a draft out by last night—with the religious holidays and other pressing cases, it's been a very busy week on our end, so we actually would appreciate a few more days to finalize ours as well. Would you be amenable to stipulating to extending our deadlines to trade drafts to Monday? You can have until Monday to send us your draft—and then we can send you a new draft on Monday. Every other deadlines would remain the same (so opposing sections would be due two weeks from last yesterday).

Let me know if you're agreeable.

**Sincerely,**
**Ryan A. Graham, Esq.**
**Peterson · Bradford · Burkwitz**
100 North First Street, Suite 300
Burbank, CA 91502
Tel. (818) 562-5800, ext. 229
Fax (818) 562-5810
rgraham@pbbllp.com


E-MAIL CONFIDENTIALITY NOTICE: THE CONTENTS OF THIS E-MAIL MESSAGE AND ANY ATTACHMENTS ARE INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL, OR EXEMPT FROM DISCLOSURE UNDER APPLICABLE FEDERAL OR STATE LAW.  IF YOU ARE NOT THE INTENDED RECIPIENT, OR THIS MESSAGE HAS BEEN ADDRESSED TO YOU IN ERROR, PLEASE IMMEDIATELY ALERT THE SENDER BY REPLY E-MAIL AND THEN DELETE THIS MESSAGE AND ANY ATTACHMENT(S).  IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY USE, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION OR ANY ATTACHMENT(S) IS STRICTLY PROHIBITED.

**From:** Liana Serobian <l.serobian@yahoo.com>
**Sent:** Friday, April 26, 2019 4:06 PM

**To:** Ryan A. Graham <rgraham@pbbllp.com>
**Cc:** Avi Burkwitz <ABurkwitz@pbbllp.com>
**Subject:** Re: Plaintiff's MSJ

Dear Mr. Graham,

I'm finishing it and will email by tonight a draft. Or early tomorrow morning. Hope this would be ok? Thank you, Liana.

Sent from Yahoo Mail for iPhone

On Friday, April 26, 2019, 4:02 PM, Ryan A. Graham <rgraham@pbbllp.com> wrote:

Dear Ms. Serobian:

We haven't received a copy of your MSJ yet—would you mind sending it along?

**Sincerely,**
**Ryan A. Graham, Esq.**
**Peterson · Bradford · Burkwitz**
100 North First Street, Suite 300
Burbank, CA 91502
Tel. (818) 562-5800, ext. 229
Fax (818) 562-5810
rgraham@pbbllp.com

E-MAIL CONFIDENTIALITY NOTICE: THE CONTENTS OF THIS E-MAIL MESSAGE AND ANY ATTACHMENTS ARE INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL, OR EXEMPT FROM DISCLOSURE UNDER APPLICABLE FEDERAL OR STATE LAW. IF YOU ARE NOT THE INTENDED RECIPIENT, OR THIS MESSAGE HAS BEEN ADDRESSED TO YOU IN ERROR, PLEASE IMMEDIATELY ALERT THE SENDER BY REPLY E-MAIL AND THEN DELETE THIS MESSAGE AND ANY ATTACHMENT(S). IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY USE, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION OR ANY ATTACHMENT(S) IS STRICTLY PROHIBITED.

**Ryan A. Graham**

| | |
|---|---|
| **From:** | Liana Serobian <l.serobian@yahoo.com> |
| **Sent:** | Friday, May 10, 2019 5:18 PM |
| **To:** | Ryan A. Graham |
| **Cc:** | Avi Burkwitz; Lynda Kerekesh; Lilliana Rosales |
| **Subject:** | Re: Ulikhanova v. County, Word Documents |
| **Attachments:** | ULIKHANOVA_JOINT_PLAINTIFFSBRIEF_MSJ(1)(ExportedFromPdf).docx; PlaintiffsJoint_Appendix_Facts.docx |
| | |
| **Categories:** | Opposing Counsel |

**Important Legal Notice:** The content of and any documents accompanying this email contain information belonging to the sender and are legally privileged as sender's work-product and/or attorney-client communication. This email and the information it contains are intended only for the use of the person or entity to which it is addressed. If you are not the intended recipient you are hereby notified that any use, disclosure, copying or distribution of this transmission is strictly prohibited. If you have received this email in error please notify the sender to arrange for its immediate destruction or return.

On Friday, May 10, 2019 5:17 PM, Liana Serobian <l.serobian@yahoo.com> wrote:

Dear Mr. Graham,

Here is my Summary Judgement Motion exported from the pdf I sent you on May 7, 2019, into word as requested. This will ensure identical text and hopefully formatting. I'm attaching word of facts as well. However, I still plan to ask the court for a clarification and to request that we do the oppositions separate and also about the untimeliness of your brief as discussed before in your emails to each other and the clerk. If the court does permit to do separate, than you can just copy paste your answers into a separate opposition, if not, then you can work as is. I will do the same.

When are our oppositions due to each other and how would we do the filing now that all the docs are separate? I propose each one files their own documents with the court, including the Opposition, and when would that due date be?

Thank you and have a great weekend, Liana.

**Important Legal Notice:** The content of and any documents accompanying this email contain information belonging to the sender and are legally privileged as sender's work-product and/or attorney-client communication. This email and the information it contains are intended only for the use of the person or entity to which it is addressed. If you are not the intended recipient you are hereby notified that any use, disclosure, copying or distribution of this transmission is strictly prohibited. If you have received this email in error please notify the sender to arrange for its immediate destruction or return.

On Friday, May 10, 2019 5:04 PM, Ryan A. Graham <rgraham@pbbllp.com> wrote:

Dear Ms. Serobian:

Please confirm whether you still plan on sending us word documents of your MSJ and separate statement. If you do not, please confirm that you are refusing to do so.

**Sincerely,**
**Ryan A. Graham, Esq.**
**Peterson · Bradford · Burkwitz**
100 North First Street, Suite 300
Burbank, CA 91502
Tel. (818) 562-5800, ext. 229
Fax (818) 562-5810
rgraham@pbbllp.com

E-MAIL CONFIDENTIALITY NOTICE: THE CONTENTS OF THIS E-MAIL MESSAGE AND ANY ATTACHMENTS ARE INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL, OR EXEMPT FROM DISCLOSURE UNDER APPLICABLE FEDERAL OR STATE LAW.  IF YOU ARE NOT THE INTENDED RECIPIENT, OR THIS MESSAGE HAS BEEN ADDRESSED TO YOU IN ERROR, PLEASE IMMEDIATELY ALERT THE SENDER BY REPLY E-MAIL AND THEN DELETE THIS MESSAGE AND ANY ATTACHMENT(S).  IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY USE, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION OR ANY ATTACHMENT(S) IS STRICTLY PROHIBITED.

Avi Burkwitz, Esq., Bar No.: 217225
aburkwitz@pbbllp.com
Ryan A. Graham, Esq., Bar No.: 310186
rgraham@pbbllp.com
**PETERSON · BRADFORD · BURKWITZ**
100 North First Street, Suite 300
Burbank, California 91502
Tel ....818.562.5800
Fax....818.562.5810

Attorneys for Defendants,
STEPHEN CAREY and MARAL HELWAJIAN

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCY ULIKHANOVA, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF LOS ANGELES, *et al.*, <br><br> Defendants. | Case No. 2:17-CV-9193-FMO-E <br><br> Hon. Fernando M. Olguin (Dist. Judge) <br> Hon. Charles F. Eick (Mag. Judge) <br><br> **DEFENDANT MARAL HELWAJIAN'S REQUESTS FOR ADMISSION (SET ONE) TO PLAINTIFF LUCY ULIKHANOVA** <br><br> Complaint Filed: December 28, 2017 <br> FAC Filed: April 19, 2018 <br> SAC Filed: May 18, 2018 <br> TAC Filed: July 2, 2018 |

**Propounding Party** ..................Defendant Maral Helwajian

**Responding Party** ....................Plaintiff Lucy Ulikhanova

**Set Number**...............................One

Pursuant to Federal Rule of Civil Procedure 33, Defendant Maral Helwajian hereby requests that Plaintiff Lucy Ulikhanova admit the matters identified below, under oath, within thirty (30) days.

///

///

///

1

## DEFINITIONS

As used in these Requests for Admission, the following words and phrases, when capitalized and bolded, are assigned the following meanings.

"**YOU**" means Plaintiff Lucy Ulikhanova.

## REQUESTS FOR ADMISSION

**Requests for Admission No. 1.**

Admit that an order to remove P.G. from the care of Lucy Ulikhanova was authorized on January 8, 2016 by Judge Anthony Trendacosta of the juvenile court.

**Requests for Admission No. 2.**

Admit that, on January 13, 2016, P.G. was removed from Lucy Ulikhanova's physical custody.

**Requests for Admission No. 3.**

Admit that the juvenile court held a hearing on January 19, 2016.

**Requests for Admission No. 4.**

Admit that, at the January 19, 2016 juvenile court hearing, Lucy Ulikhanova was present and was represented by an attorney.

**Requests for Admission No. 5.**

Admit that, at the January 19, 2016 juvenile court hearing, the juvenile court found that a prima facie case for detaining P.G. and a showing that P.G. is a person described by Welfare and Institutions Code § 300(b) was established.

**Requests for Admission No. 6.**

Admit that, at the January 19, 2016 juvenile court hearing, the juvenile court found that, pursuant to Welfare and Institutions Code § 319, a substantial danger existed to the physical or emotional health of P.G. and there was no reasonable means to protect P.G. without removing her from Lucy Ulikhanova.

**Requests for Admission No. 7.**

Admit that, at the January 19, 2016 juvenile court hearing, the juvenile court found that reasonable efforts had been made to prevent or eliminate the need for

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

2

N:\File\2003 Ulikhanova (CO) A\Discovery\Propounded_by_Def_Carey-Helwajian\Helwajian-RFAO1_to_Lucy_Ulikhanova.docx

N:\Files\2003-Ulikhanova (CO:All)\Discovery\Propounded_by_Defs_Carey-Helwajian\Helwajian-RFAO1_to_Lucy_Ulikhanova.docx

1   P.G.'s removal from Lucy Ulikhanova's home.

2   **Requests for Admission No. 8.**

3       Admit that, at the January 19, 2016 juvenile court hearing, the juvenile court

4   found that P.G. continuing to be in Lucy Ulikhanova's home was contrary to P.G.'s

5   welfare.

6   **Requests for Admission No. 9.**

7       Admit that the juvenile court held a hearing on January 20, 2016.

8   **Requests for Admission No. 10.**

9       Admit that, at the January 20, 2016 juvenile court hearing, Lucy Ulikhanova

10   was present and represented by an attorney.

11   **Requests for Admission No. 11.**

12       Admit that, at the January 20, 2016 juvenile court hearing, the court ordered

13   that Lucy Ulikhanova's visits with P.G. were required to be monitored by a DCFS-

14   approved monitor.

15   **Requests for Admission No. 12.**

16       Admit that, at the January 20, 2016 juvenile court hearing, the court ordered

17   that Brian G.'s visits with P.G. were required to be monitored by a DCFS-approved

18   monitor.

19   **Requests for Admission No. 13.**

20       Admit that, at the January 20, 2016 juvenile court hearing, the court ordered

21   that the monitored visitations between Lucy Ulikhanova and P.G. were to be a

22   minimum of 3 times per week at 3 hours per visit, or 9 hours per week.

23   **Requests for Admission No. 14.**

24       Admit that, at the January 20, 2016 juvenile court hearing, the court ordered

25   that the monitored visitations between Brian G. were to be a minimum of 3 times

26   per week at 3 hours per visit, or 9 hours per week.

27   **Requests for Admission No. 15.**

28       Admit that the juvenile court held a hearing on February 25, 2016.

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

3

**Requests for Admission No. 16.**

Admit that Lucy Ulikhanova was present at the juvenile court hearing on February 25, 2016 and represented by counsel.

**Requests for Admission No. 17.**

Admit that, on February 25, 2016, the juvenile court prohibited Lucy Ulikhanova from videotaping her interaction with P.G. and with DCFS.

**Requests for Admission No. 18.**

Admit that, on February 25, 2016, the juvenile court issued an order stating that Lucy Ulikhanova was not allowed to go to the home of Mary Louise Reisch.

**Requests for Admission No. 19.**

Admit that the juvenile court held a hearing on March 14, 2016.

**Requests for Admission No. 20.**

Admit that Lucy Ulikhanova was present and represented by counsel at the juvenile court hearing on March 14, 2016.

**Requests for Admission No. 21.**

Admit that the juvenile court held a hearing on March 16, 2016.

**Requests for Admission No. 22.**

Admit that Lucy Ulikhanova was present at the juvenile court hearing on March 16, 2016 and was represented by counsel.

**Requests for Admission No. 23.**

Admit that the juvenile court held a hearing on March 28, 2016.

**Requests for Admission No. 24.**

Admit that Lucy Ulikhanova was present and represented by an attorney at the juvenile court hearing on March 28, 2016.

**Requests for Admission No. 25.**

Admit that the juvenile court held a hearing on April 1, 2016.

**Requests for Admission No. 26.**

Admit that Lucy Ulikhanova was present at the juvenile court hearing on

4

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

1  April 1, 2016 and was represented by counsel.

2  **Requests for Admission No. 27.**

3      Admit that the juvenile court held a hearing on April 12, 2016.

4  **Requests for Admission No. 28.**

5      Admit that Lucy Ulikhanova was present at the juvenile court hearing on

6  April 12, 2016 and was represented by counsel.

7  **Requests for Admission No. 29.**

8  Admit that the juvenile court held a hearing on June 9, 2016.

9  **Requests for Admission No. 30.**

10      Admit that Lucy Ulikhanova was present at the juvenile court hearing on June

11  9, 2016 and was represented by counsel.

12  **Requests for Admission No. 31.**

13      Admit that the juvenile court held a hearing on June 10, 2016.

14  **Requests for Admission No. 32.**

15      Admit that Lucy Ulikhanova was present at the juvenile court hearing on June

16  10, 2016 and was represented by counsel.

17  **Requests for Admission No. 33.**

18      Admit that, at the June 10, 2016 juvenile court hearing, the juvenile court

19  granted a request for restraining order filed by DCFS.

20  **Requests for Admission No. 34.**

21      Admit that, at the June 10, 2016 juvenile court hearing, the juvenile court

22  authorized the immunization of P.G. over the objection of Lucy Ulikhanova.

23  **Requests for Admission No. 35.**

24      Admit that, at the June 10, 2016 juvenile court hearing, the juvenile court

25  issued a temporary restraining order against Lucy Ulikhanova, protecting Mary

26  Louise Reisch, Anthony Reisch, Peyton Reisch, and minor M.R.

27  **Requests for Admission No. 36.**

28      Admit that, on August 16, 2016, the juvenile court appointed Dr. Alfredo

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

5

Crespo to examine Lucy Ulikhanova.

**Requests for Admission No. 37.**

Admit that, on August 16, 2016, the juvenile court appointed Dr. Alfredo Crespo to examine Brian G.

**Requests for Admission No. 38.**

Admit that, on August 16, 2016, the juvenile court appointed Dr. Alfredo Crespo to examine P.G.

**Requests for Admission No. 39.**

Admit that, on August 16, 2016, the juvenile court sustained count 1 of Welfare and Institutions Code section (b).

**Requests for Admission No. 40.**

Admit that the juvenile court held a hearing on October 17, 2016.

**Requests for Admission No. 41.**

Admit that Lucy Ulikhanova was present at the juvenile court hearing on October 17, 2016 and was represented by counsel.

**Requests for Admission No. 42.**

Admit that, on October 17, 2016, the juvenile court ordered that "the parents remains holder of educational and developmental rights for [P.G.]"

**Requests for Admission No. 43.**

Admit that, on October 17, 2016, the juvenile court ordered that Brian G., as well as Lucy Ulikhanova, continued to hold educational and developmental rights for P.G.

**Requests for Admission No. 44.**

Admit that the juvenile court never took away Brian G.'s rights to make educational decisions on behalf of P.G.

**Requests for Admission No. 45.**

Admit that Brian G. wanted his daughter to attend kindergarten.

///

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

**DEF. HELWAJIAN'S REQS. FOR ADMISSION (SET ONE) TO PL. LUCY ULIKHANOVA**
Case No. 2:17-CV-9193-FMO-E

**Requests for Admission No. 46.**

Admit that, on October 17, 2016, the juvenile court found by clear and convincing evidence that substantial danger existed to the physical health of P.G. and/or that P.G. was suffering severe emotional damage, and that there was no reasonable means to protect P.G. without removing her from Lucy Ulikhanova's custody.

**Requests for Admission No. 47.**

Admit that, on October 17, 2016, the juvenile court found that reasonable efforts had been made to prevent or eliminate the need for removal of P.G. from Lucy Ulikhanova's care.

**Requests for Admission No. 48.**

Admit that, on October 17, 2016, the juvenile court declared P.G. a dependent of the court under Welfare and Institutions code § 300(b).

**Requests for Admission No. 49.**

Admit that, on November 28, 2017, the juvenile court ordered jurisdiction be terminated, but stayed the termination to December 1, 2017 pending receipt of the juvenile custody order (1) awarding sole legal and physical custody to Lucy Ulikhanova with primary residence with Lucy Ulikhanova, and (2) awarding Brian G. visitation for two hours per week, monitored by a mutually agreed upon monitor or a professional monitor to be paid for by the father, with drop-offs and pick-ups to be at a police station.

**Requests for Admission No. 50.**

Admit that, on December 1, 2017, the juvenile court held a non-appearance progress hearing for receipt of the juvenile court custody order.

**Requests for Admission No. 51.**

Admit that, on December 1, 2017, the juvenile court continued the non-appearance progress hearing for receipt of the juvenile court custody order to December 8, 2017.

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

7

**Requests for Admission No. 52.**

Admit that, on December 8, 2017, the juvenile court terminated jurisdiction over P.G.

**Requests for Admission No. 53.**

Admit that the following page(s) is a genuine copy of the juvenile court's order dated January 19, 2016: COLA_000020 through COLA_000021.

**Requests for Admission No. 54.**

Admit that the following page(s) is a genuine copy of the juvenile court's order dated January 20, 2016: COLA_000016 through COLA_000019.

**Requests for Admission No. 55.**

Admit that the following page(s) is a genuine copy of the juvenile court's order dated February 25, 2016: COLA_000013 through COLA_000014.

**Requests for Admission No. 56.**

Admit that the following page(s) is a genuine copy of the juvenile court's order dated March 16, 2016: COLA_000011.

**Requests for Admission No. 57.**

Admit that the following page(s) is a genuine copy of the juvenile court's order dated March 14, 2016: COLA_000012.

**Requests for Admission No. 58.**

Admit that the following page(s) is a genuine copy of the juvenile court's order dated March 28, 2016: COLA_000009 through COLA_000010.

**Requests for Admission No. 59.**

Admit that the following page(s) is a genuine copy of the juvenile court's order dated April 1, 2016: COLA_000001 through COLA_000002.

**Requests for Admission No. 60.**

Admit that the following page(s) is a genuine copy of the juvenile court's order dated April 12, 2016: COLA_000930 through COLA_000931.

///

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

8

**Requests for Admission No. 61.**

Admit that the following page(s) is a genuine copy of the juvenile court's order dated April 25, 2016: COLA_000928 through COLA_000929.

**Requests for Admission No. 62.**

Admit that the following page(s) is a genuine copy of the juvenile court's order dated April 28, 2016: COLA_000926 through COLA_000927.

**Requests for Admission No. 63.**

Admit that the following page(s) is a genuine copy of the juvenile court's order dated June 9, 2016: COLA_000922 to COLA_000923.

**Requests for Admission No. 64.**

Admit that the following page(s) is a genuine copy of the juvenile court's order dated May 18, 2016: COLA_000924 through COLA_000925.

**Requests for Admission No. 65.**

Admit that the following page(s) is a genuine copy of the juvenile court's order dated June 10, 2016: COLA_000897 to COLA_000898.

**Requests for Admission No. 66.**

Admit that the following page(s) is a genuine copy of the juvenile court's order dated July 11, 2016: COLA_000891 to COLA_000892.

**Requests for Admission No. 67.**

Admit that the following page(s) is a genuine copy of the juvenile court's order dated August 1, 2016: COLA_000889 through COLA_000890.

**Requests for Admission No. 68.**

Admit that the following page(s) is a genuine copy of the juvenile court's order dated August 4, 2016: COLA_000884 through COLA_000886.

**Requests for Admission No. 69.**

Admit that the following page(s) is a genuine copy of the juvenile court's order dated August 16, 2016: COLA_000884 to COLA_000886.

///

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

9

**Requests for Admission No. 70.**

Admit that the following page(s) is a genuine copy of the juvenile court's order dated September 27, 2016: COLA_000883.

**Requests for Admission No. 71.**

Admit that the following page(s) is a genuine copy of the juvenile court's order dated October 12, 2016: COLA_000882.

**Requests for Admission No. 72.**

Admit that the following page(s) is a genuine copy of the juvenile court's order dated October 17, 2016: COLA_000879 to COLA_000881.

**Requests for Admission No. 73.**

Admit that the following page(s) is a genuine copy of the juvenile court's order dated December 28, 2016: COLA_000877 to COLA_000878.

**Requests for Admission No. 74.**

Admit that the following page(s) is a genuine copy of the juvenile court's order dated April 17, 2017: COLA_000874 through COLA_000875.

**Requests for Admission No. 75.**

Admit that the following page(s) is a genuine copy of the juvenile court's order dated October 27, 2017: COLA_001260 through COLA_001261.

**Requests for Admission No. 76.**

Admit that the following page(s) is a genuine copy of the juvenile court's order dated November 28, 2017: COLA_001258 through COLA_001259.

**Requests for Admission No. 77.**

Admit that the following page(s) is a genuine copy of the juvenile court's order dated December 1, 2017: COLA_001257.

**Requests for Admission No. 78.**

Admit that the following page(s) is a genuine copy of the juvenile court's order dated December 8, 2017: COLA_001256.

///

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

10

**Requests for Admission No. 79.**

Admit that the following page(s) is a genuine copy of Defendant Maral Helwajian's Ex Parte Application, filed with the juvenile court on February 1, 2016: COLA_000152 through COLA_000155.

**Requests for Admission No. 80.**

Admit that the following page(s) is a genuine copy of Defendant Maral Helwajian's Ex Parte Application, filed with the juvenile court on February 9, 2016: COLA_000148 through COLA_000151.

**Requests for Admission No. 81.**

Admit that the following page(s) is a genuine copy of Defendant Stephen Carey's Jurisdiction and Disposition Report, filed with the juvenile court on March 14, 2016: COLA_000118 through COLA_000131.

**Requests for Admission No. 82.**

Admit that the following page(s) is a genuine copy of Defendant Stephen Carey's Supplemental Report, filed with the juvenile court on April 12, 2016: COLA_001078 through COLA_001107.

**Requests for Admission No. 83.**

Admit that the following page(s) is a genuine copy of Attachment B to Defendant Stephen Carey's Supplemental Report, filed with the juvenile court on April 12, 2016: COLA_000480 through COLA_000532.

**Requests for Admission No. 84.**

Admit that the following page(s) is a genuine copy of Attachment C to Defendant Stephen Carey's Supplemental Report, filed with the juvenile court on April 12, 2016: COLA_000533 through COLA_000755.

**Requests for Admission No. 85.**

Admit that the following page(s) is a genuine copy of Attachment E to Defendant Stephen Carey's Supplemental Report, filed with the juvenile court on April 12, 2016: COLA_000166 through COLA_000479.

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

1    **Requests for Admission No. 86.**

2         Admit that the following page(s) is a genuine copy of Attachment F to

3    Defendant Stephen Carey's Supplemental Report, filed with the juvenile court on

4    April 12, 2016: COLA_001109 through COLA_001255.

5    **Requests for Admission No. 87.**

6         Admit that the following page(s) is a genuine copy of Defendant Stephen

7    Carey's Supplemental Report, filed with the juvenile court on June 9, 2016:

8    COLA_001058 through COLA_001063.

9

10   DATED:  January 7, 2019            PETERSON · BRADFORD · BURKWITZ

11

12                                   By: _____

13                                        Avi Burkwitz, Esq.

14                                        Ryan A. Graham, Esq.

15                                        Attorneys for Defendants
                                          STEPHEN CAREY and

16                                        MARAL HELWAJIAN

17

18

19

20

21

22

23

24

25

26

27

28

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

**DEF. HELWAJIAN'S REQS. FOR ADMISSION (SET ONE) TO PL. LUCY ULIKHANOVA**
Case No. 2:17-CV-9193-FMO-E

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 100 North First Street, Suite 300, Burbank, California 91502. On January 7, 2019 I served the document described as "**DEFENDANT MARAL HELWAJIAN'S REQUESTS FOR ADMISSION (SET ONE) TO PLAINTIFF LUCY ULIKHANOVA**" on interested parties in this action by placing a true and correct copy thereof enclosed in a sealed envelope addressed as follows:

Liana Serobian, Esq.
Serobian Law, Inc.
100 North Brand Blvd., Suite 600
Glendale, CA 91203
Tele: (818) 539-2249
L.Serobian@yahoo.com
**Attorney for Plaintiff Lucy Ulikhanova and P.G., a Minor**

☒ **BY MAIL:** I deposited such envelope in the mail at Burbank, California. The envelope was mailed with postage thereon fully prepaid. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Burbank, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒ **FEDERAL:** I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed January 7, 2019, at Burbank, CA.

Lilliana Rosales

13

Avi Burkwitz, Esq., Bar No.: 217225
aburkwitz@pbbllp.com
Ryan A. Graham, Esq., Bar No.: 310186
rgraham@pbbllp.com
**PETERSON · BRADFORD · BURKWITZ**
100 North First Street, Suite 300
Burbank, California 91502
Tel.... 818.562.5800
Fax ... 818.562.5810

Attorneys for Defendants,
STEPHEN CAREY and MARAL HELWAJIAN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCY ULIKHANOVA, *et al.*,<br><br>              Plaintiffs,<br><br>      v.<br><br>COUNTY OF LOS ANGELES, *et al.*,<br><br>              Defendants. | Case No. 2:17-CV-9193-FMO-E<br><br>Hon. Fernando M. Olguin (Dist. Judge)<br>Hon. Charles F. Eick (Mag. Judge)<br><br>**DEFENDANT MARAL HELWAJIAN'S REQUESTS FOR ADMISSION (SET ONE) TO PLAINTIFF P.G.**<br><br>Complaint Filed: December 28, 2017<br>FAC Filed: April 19, 2018<br>SAC Filed: May 18, 2018<br>TAC Filed: July 2, 2018 |

**Propounding Party** ................. Defendant Maral Helwajian

**Responding Party** .................... Plaintiff P.G.

**Set Number** .............................. One

Pursuant to Federal Rule of Civil Procedure 33, Defendant Maral Helwajian hereby requests that Plaintiff P.G. admit the matters identified below, under oath, within thirty (30) days.

///

///

///

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

\\pcb-hp.local\pcbdata\files\2003-Ulikhanova (COLA)\Discovery\Propounded_by_Defs_Carey Helwajian\Helwajian-RFA01_to_P.G..docx

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

## DEFINITIONS

As used in these Requests for Admission, the following words and phrases, when capitalized and bolded, are assigned the following meanings.

"**YOU**" means Plaintiff P.G..

## REQUESTS FOR ADMISSION

**Requests for Admission No. 1.**

Admit that an order to remove P.G. from the care of Lucy Ulikhanova was authorized on January 8, 2016 by Judge Anthony Trendacosta of the juvenile court.

**Requests for Admission No. 2.**

Admit that, on January 13, 2016, P.G. was removed from Lucy Ulikhanova's physical custody.

**Requests for Admission No. 3.**

Admit that the juvenile court held a hearing on January 19, 2016.

**Requests for Admission No. 4.**

Admit that, at the January 19, 2016 juvenile court hearing, Lucy Ulikhanova was present and was represented by an attorney.

**Requests for Admission No. 5.**

Admit that, at the January 19, 2016 juvenile court hearing, the juvenile court found that a prima facie case for detaining P.G. and a showing that P.G. is a person described by Welfare and Institutions Code § 300(b) was established.

**Requests for Admission No. 6.**

Admit that, at the January 19, 2016 juvenile court hearing, the juvenile court found that, pursuant to Welfare and Institutions Code § 319, a substantial danger existed to the physical or emotional health of P.G. and there was no reasonable means to protect P.G. without removing her from Lucy Ulikhanova.

**Requests for Admission No. 7.**

Admit that, at the January 19, 2016 juvenile court hearing, the juvenile court found that reasonable efforts had been made to prevent or eliminate the need for

2

1  P.G.'s removal from Lucy Ulikhanova's home.

2  **Requests for Admission No. 8.**

3      Admit that, at the January 19, 2016 juvenile court hearing, the juvenile court

4  found that P.G. continuing to be in Lucy Ulikhanova's home was contrary to P.G.'s

5  welfare.

6  **Requests for Admission No. 9.**

7      Admit that the juvenile court held a hearing on January 20, 2016.

8  **Requests for Admission No. 10.**

9      Admit that, at the January 20, 2016 juvenile court hearing, Lucy Ulikhanova

10  was present and represented by an attorney.

11  **Requests for Admission No. 11.**

12      Admit that, at the January 20, 2016 juvenile court hearing, the court ordered

13  that Lucy Ulikhanova's visits with P.G. were required to be monitored by a DCFS-

14  approved monitor.

15  **Requests for Admission No. 12.**

16      Admit that, at the January 20, 2016 juvenile court hearing, the court ordered

17  that Brian G.'s visits with P.G. were required to be monitored by a DCFS-approved

18  monitor.

19  **Requests for Admission No. 13.**

20      Admit that, at the January 20, 2016 juvenile court hearing, the court ordered

21  that the monitored visitations between Lucy Ulikhanova and P.G. were to be a

22  minimum of 3 times per week at 3 hours per visit, or 9 hours per week.

23  **Requests for Admission No. 14.**

24      Admit that, at the January 20, 2016 juvenile court hearing, the court ordered

25  that the monitored visitations between Brian G. were to be a minimum of 3 times

26  per week at 3 hours per visit, or 9 hours per week.

27  **Requests for Admission No. 15.**

28      Admit that the juvenile court held a hearing on February 25, 2016.

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

3

1 **Requests for Admission No. 16.**

2   Admit that Lucy Ulikhanova was present at the juvenile court hearing on

3 February 25, 2016 and represented by counsel.

4 **Requests for Admission No. 17.**

5   Admit that, on February 25, 2016, the juvenile court prohibited Lucy

6 Ulikhanova from videotaping her interaction with P.G. and with DCFS.

7 **Requests for Admission No. 18.**

8   Admit that, on February 25, 2016, the juvenile court issued an order stating

9 that Lucy Ulikhanova was not allowed to go to the home of Mary Louise Reisch.

10 **Requests for Admission No. 19.**

11   Admit that the juvenile court held a hearing on March 14, 2016.

12 **Requests for Admission No. 20.**

13   Admit that Lucy Ulikhanova was present and represented by counsel at the

14 juvenile court hearing on March 14, 2016.

15 **Requests for Admission No. 21.**

16   Admit that the juvenile court held a hearing on March 16, 2016.

17 **Requests for Admission No. 22.**

18   Admit that Lucy Ulikhanova was present at the juvenile court hearing on

19 March 16, 2016 and was represented by counsel.

20 **Requests for Admission No. 23.**

21   Admit that the juvenile court held a hearing on March 28, 2016.

22 **Requests for Admission No. 24.**

23   Admit that Lucy Ulikhanova was present and represented by an attorney at

24 the juvenile court hearing on March 28, 2016.

25 **Requests for Admission No. 25.**

26   Admit that the juvenile court held a hearing on April 1, 2016.

27 **Requests for Admission No. 26.**

28   Admit that Lucy Ulikhanova was present at the juvenile court hearing on

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

4

1   April 1, 2016 and was represented by counsel.

2   **Requests for Admission No. 27.**

3       Admit that the juvenile court held a hearing on April 12, 2016.

4   **Requests for Admission No. 28.**

5       Admit that Lucy Ulikhanova was present at the juvenile court hearing on

6   April 12, 2016 and was represented by counsel.

7   **Requests for Admission No. 29.**

8   Admit that the juvenile court held a hearing on June 9, 2016.

9   **Requests for Admission No. 30.**

10      Admit that Lucy Ulikhanova was present at the juvenile court hearing on June

11  9, 2016 and was represented by counsel.

12  **Requests for Admission No. 31.**

13      Admit that the juvenile court held a hearing on June 10, 2016.

14  **Requests for Admission No. 32.**

15      Admit that Lucy Ulikhanova was present at the juvenile court hearing on June

16  10, 2016 and was represented by counsel.

17  **Requests for Admission No. 33.**

18      Admit that, at the June 10, 2016 juvenile court hearing, the juvenile court

19  granted a request for restraining order filed by DCFS.

20  **Requests for Admission No. 34.**

21      Admit that, at the June 10, 2016 juvenile court hearing, the juvenile court

22  authorized the immunization of P.G. over the objection of Lucy Ulikhanova.

23  **Requests for Admission No. 35.**

24      Admit that, at the June 10, 2016 juvenile court hearing, the juvenile court

25  issued a temporary restraining order against Lucy Ulikhanova, protecting Mary

26  Louise Reisch, Anthony Reisch, Peyton Reisch, and minor M.R.

27  **Requests for Admission No. 36.**

28      Admit that, on August 16, 2016, the juvenile court appointed Dr. Alfredo

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

5

1 Crespo to examine Lucy Ulikhanova.

2 **Requests for Admission No. 37.**

3     Admit that, on August 16, 2016, the juvenile court appointed Dr. Alfredo

4 Crespo to examine Brian G.

5 **Requests for Admission No. 38.**

6     Admit that, on August 16, 2016, the juvenile court appointed Dr. Alfredo

7 Crespo to examine P.G.

8 **Requests for Admission No. 39.**

9     Admit that, on August 16, 2016, the juvenile court sustained count 1 of

10 Welfare and Institutions Code section (b).

11 **Requests for Admission No. 40.**

12     Admit that the juvenile court held a hearing on October 17, 2016.

13 **Requests for Admission No. 41.**

14     Admit that Lucy Ulikhanova was present at the juvenile court hearing on

15 October 17, 2016 and was represented by counsel.

16 **Requests for Admission No. 42.**

17     Admit that, on October 17, 2016, the juvenile court ordered that "the parents

18 remains holder of educational and developmental rights for [P.G]."

19 **Requests for Admission No. 43.**

20     Admit that, on October 17, 2016, the juvenile court ordered that Brian G., as

21 well as Lucy Ulikhanova, continued to hold educational and developmental rights

22 for P.G.

23 **Requests for Admission No. 44.**

24     Admit that the juvenile court never took away Brian G.'s rights to make

25 educational decisions on behalf of P.G.

26 **Requests for Admission No. 45.**

27     Admit that Brian G. wanted his daughter to attend kindergarten.

28 **Requests for Admission No. 46.**

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

6

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

1  Admit that, on October 17, 2016, the juvenile court found by clear and

2  convincing evidence that substantial danger existed to the physical health of P.G.

3  and/or that P.G. was suffering severe emotional damage, and that there was no

4  reasonable means to protect P.G. without removing her from Lucy Ulikhanova's

5  custody.

6  **Requests for Admission No. 47.**

7  Admit that, on October 17, 2016, the juvenile court found that reasonable

8  efforts had been made to prevent or eliminate the need for removal of P.G. from

9  Lucy Ulikhanova's care.

10 **Requests for Admission No. 48.**

11 Admit that, on October 17, 2016, the juvenile court declared P.G. a dependent

12 of the court under Welfare and Institutions code § 300(b).

13 **Requests for Admission No. 49.**

14 Admit that, on November 28, 2017, the juvenile court ordered jurisdiction be

15 terminated, but stayed the termination to December 1, 2017 pending receipt of the

16 juvenile custody order (1) awarding sole legal and physical custody to Lucy

17 Ulikhanova with primary residence with Lucy Ulikhanova, and (2) awarding Brian

18 G. visitation for two hours per week, monitored by a by a mutually agreed upon

19 monitor or a professional monitor to be paid for by the father, with drop-offs and

20 pick-ups to be at a police station.

21 **Requests for Admission No. 50.**

22 Admit that, on December 1, 2017, the juvenile court held a non-appearance

23 progress hearing for receipt of the juvenile court custody order.

24 **Requests for Admission No. 51.**

25 Admit that, on December 1, 2017, the juvenile court continued the non-

26 appearance progress hearing for receipt of the juvenile court custody order to

27 December 8, 2017.

28 **Requests for Admission No. 52.**

1   Admit that, on December 8, 2017, the juvenile court terminated jurisdiction

2   over P.G.

3   **Requests for Admission No. 53.**

4   Admit that the following page(s) is a genuine copy of the juvenile court's

5   order dated January 19, 2016: COLA_000020 through COLA_000021.

6   **Requests for Admission No. 54.**

7   Admit that the following page(s) is a genuine copy of the juvenile court's

8   order dated January 20, 2016: COLA_000016 through COLA_000019.

9   **Requests for Admission No. 55.**

10   Admit that the following page(s) is a genuine copy of the juvenile court's

11   order dated February 25, 2016: COLA_000013 through COLA_000014.

12   **Requests for Admission No. 56.**

13   Admit that the following page(s) is a genuine copy of the juvenile court's

14   order dated March 16, 2016: COLA_000011.

15   **Requests for Admission No. 57.**

16   Admit that the following page(s) is a genuine copy of the juvenile court's

17   order dated March 14, 2016: COLA_000012.

18   **Requests for Admission No. 58.**

19   Admit that the following page(s) is a genuine copy of the juvenile court's

20   order dated March 28, 2016: COLA_000009 through COLA_000010.

21   **Requests for Admission No. 59.**

22   Admit that the following page(s) is a genuine copy of the juvenile court's

23   order dated April 1, 2016: COLA_000001 through COLA_000002.

24   **Requests for Admission No. 60.**

25   Admit that the following page(s) is a genuine copy of the juvenile court's

26   order dated April 12, 2016: COLA_000930 through COLA_000931.

27   **Requests for Admission No. 61.**

28   Admit that the following page(s) is a genuine copy of the juvenile court's

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

8

1  order dated April 25, 2016: COLA_000928 through COLA_000929.

2  **Requests for Admission No. 62.**

3         Admit that the following page(s) is a genuine copy of the juvenile court's

4  order dated April 28, 2016: COLA_000926 through COLA_000927.

5  **Requests for Admission No. 63.**

6         Admit that the following page(s) is a genuine copy of the juvenile court's

7  order dated June 9, 2016: COLA_000922 to COLA_000923.

8  **Requests for Admission No. 64.**

9         Admit that the following page(s) is a genuine copy of the juvenile court's

10  order dated May 18, 2016: COLA_000924 through COLA_000925.

11  **Requests for Admission No. 65.**

12         Admit that the following page(s) is a genuine copy of the juvenile court's

13  order dated June 10, 2016: COLA_000897 to COLA_000898.

14  **Requests for Admission No. 66.**

15         Admit that the following page(s) is a genuine copy of the juvenile court's

16  order dated July 11, 2016: COLA_000891 to COLA_000892.

17  **Requests for Admission No. 67.**

18         Admit that the following page(s) is a genuine copy of the juvenile court's

19  order dated August 1, 2016: COLA_000889 through COLA_000890.

20  **Requests for Admission No. 68.**

21         Admit that the following page(s) is a genuine copy of the juvenile court's

22  order dated August 4, 2016: COLA_000884 through COLA_000886.

23  **Requests for Admission No. 69.**

24         Admit that the following page(s) is a genuine copy of the juvenile court's

25  order dated August 16, 2016: COLA_000884 to COLA_000886.

26  **Requests for Admission No. 70.**

27         Admit that the following page(s) is a genuine copy of the juvenile court's

28  order dated September 27, 2016: COLA_000883.

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

9

**Requests for Admission No. 71.**

Admit that the following page(s) is a genuine copy of the juvenile court's order dated October 12, 2016: COLA_000882.

**Requests for Admission No. 72.**

Admit that the following page(s) is a genuine copy of the juvenile court's order dated October 17, 2016: COLA_000879 to COLA_000881.

**Requests for Admission No. 73.**

Admit that the following page(s) is a genuine copy of the juvenile court's order dated December 28, 2016: COLA_000877 to COLA_000878.

**Requests for Admission No. 74.**

Admit that the following page(s) is a genuine copy of the juvenile court's order dated April 17, 2017: COLA_000874 through COLA_000875.

**Requests for Admission No. 75.**

Admit that the following page(s) is a genuine copy of the juvenile court's order dated October 27, 2017: COLA_001260 through COLA_001261.

**Requests for Admission No. 76.**

Admit that the following page(s) is a genuine copy of the juvenile court's order dated November 28, 2017: COLA_001258 through COLA_001259.

**Requests for Admission No. 77.**

Admit that the following page(s) is a genuine copy of the juvenile court's order dated December 1, 2017: COLA_001257.

**Requests for Admission No. 78.**

Admit that the following page(s) is a genuine copy of the juvenile court's order dated December 8, 2017: COLA_001256.

**Requests for Admission No. 79.**

Admit that the following page(s) is a genuine copy of Defendant Maral Helwajian's Ex Parte Application, filed with the juvenile court on February 1, 2016: COLA_000152 through COLA_000155.

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

**Requests for Admission No. 80.**

Admit that the following page(s) is a genuine copy of Defendant Maral Helwajian's Ex Parte Application, filed with the juvenile court on February 9, 2016: COLA_000148 through COLA_000151.

**Requests for Admission No. 81.**

Admit that the following page(s) is a genuine copy of Defendant Stephen Carey's Jurisdiction and Disposition Report, filed with the juvenile court on March 14, 2016: COLA_000118 through COLA_000131.

**Requests for Admission No. 82.**

Admit that the following page(s) is a genuine copy of Defendant Stephen Carey's Supplemental Report, filed with the juvenile court on April 12, 2016: COLA_001078 through COLA_001107.

**Requests for Admission No. 83.**

Admit that the following page(s) is a genuine copy of Attachment B to Defendant Stephen Carey's Supplemental Report, filed with the juvenile court on April 12, 2016: COLA_000480 through COLA_000532.

**Requests for Admission No. 84.**

Admit that the following page(s) is a genuine copy of Attachment C to Defendant Stephen Carey's Supplemental Report, filed with the juvenile court on April 12, 2016: COLA_000533 through COLA_000755.

**Requests for Admission No. 85.**

Admit that the following page(s) is a genuine copy of Attachment E to Defendant Stephen Carey's Supplemental Report, filed with the juvenile court on April 12, 2016: COLA_000166 through COLA_000479.

**Requests for Admission No. 86.**

Admit that the following page(s) is a genuine copy of Attachment F to Defendant Stephen Carey's Supplemental Report, filed with the juvenile court on April 12, 2016: COLA_001109 through COLA_001255.

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

11

1    **<u>Requests for Admission No. 87.</u>**

2          Admit that the following page(s) is a genuine copy of Defendant Stephen

3    Carey's Supplemental Report, filed with the juvenile court on June 9, 2016:

4    COLA_001058 through COLA_001063.

5

6

7    DATED:  January 7, 2019                 PETERSON · BRADFORD · BURKWITZ

8

9                                            By:  _____

10                                                Avi Burkwitz, Esq.

11                                                Ryan A. Graham, Esq.

                                                  Attorneys for Defendants

12                                                STEPHEN CAREY and

13                                                MARAL HELWAJIAN

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California  91502
818.562.5800

12

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 100 North First Street, Suite 300, Burbank, California 91502. On January 7, 2019 I served the document described as "**DEFENDANT MARAL HELWAJIAN'S REQUESTS FOR ADMISSION (SET ONE) TO PLAINTIFF P.G.**" on interested parties in this action by placing a true and correct copy thereof enclosed in a sealed envelope addressed as follows:

Liana Serobian, Esq.
Serobian Law, Inc.
100 North Brand Blvd., Suite 600
Glendale, CA 91203
Tele: (818) 539-2249
L.Serobian@yahoo.com
**Attorney for Plaintiff Lucy Ulikhanova and P.G., a Minor**

☒  **BY MAIL:** I deposited such envelope in the mail at Burbank, California. The envelope was mailed with postage thereon fully prepaid. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Burbank, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒  **FEDERAL:** I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed January 7, 2019, at Burbank, CA.

Lilliana Rosales

DEF. HELWAJIAN'S REQS. FOR ADMISSION (SET ONE) TO PL. P.G.
Case No. 2:17-CV-9193-FMO-E

**Ryan A. Graham**

| | |
|---|---|
| **From:** | Liana Serobian <l.serobian@yahoo.com> |
| **Sent:** | Friday, April 19, 2019 4:41 PM |
| **To:** | Ryan A. Graham |
| **Cc:** | Avi Burkwitz |
| **Subject:** | Re: Discovery Responses |
| | |
| **Categories:** | Opposing Counsel |

Dear Mr. Graham,

I will be filing a motion to deem my previous timeliny discovery responses effective and your repetitive burdensome almost identical discovery as bad faith effort to burden the plaintiffs and get false admissions. As you said yesterday, I don't have access to 827 yet and I can't therefore properly look at everything unless used at the depositions by you.

We can meet and confer or this email could serve as notice of my discovery motion coming up. I met the deadline: it's timely now and was timely before. By the way, please provide proof of service for the January 25 mailing. I don't have hard copies and only was provided email copies on March 27, 2019, after much prompting from me.

Thank you, Liana Serobian


Sent from Yahoo Mail for iPhone

On Friday, April 19, 2019, 4:35 PM, Ryan A. Graham <rgraham@pbbllp.com> wrote:

Dear Ms. Serobian:


This is too little, too late. You aren't allowed to object when you're past the deadline. And anyway, why are you sending the same 827 objections again? I sent you a letter about this in January. Please see that letter—this is the absolute height of bad faith. You have access to the documents. You had them before you filed this lawsuit. We've given them to you in discovery. You cannot now willfully refuse to look at them simply because it suits you and you don't want to make certain admissions.


And the RFAs are already deemed admitted, anyway. We're using them against Plaintiffs in the MSJ. I thank you for trying to do something before the discovery cutoff, but this just isn't how federal court works. You can't stonewall us in discovery for months and months, and then come in with objections at the last minute and hope to avoid the consequences of ignoring your obligations under the Federal Rules of Civil Procedure.

And the responses aren't even signed.

**Sincerely,**

**Ryan A. Graham, Esq.**
**Peterson · Bradford · Burkwitz**

100 North First Street, Suite 300

Burbank, CA 91502

Tel. (818) 562-5800, ext. 229

Fax (818) 562-5810

rgraham@pbbllp.com

E-MAIL CONFIDENTIALITY NOTICE: THE CONTENTS OF THIS E-MAIL MESSAGE AND ANY ATTACHMENTS ARE INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL, OR EXEMPT FROM DISCLOSURE UNDER APPLICABLE FEDERAL OR STATE LAW.  IF YOU ARE NOT THE INTENDED RECIPIENT, OR THIS MESSAGE HAS BEEN ADDRESSED TO YOU IN ERROR, PLEASE IMMEDIATELY ALERT THE SENDER BY REPLY E-MAIL AND THEN DELETE THIS MESSAGE AND ANY ATTACHMENT(S).  IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY USE, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION OR ANY ATTACHMENT(S) IS STRICTLY PROHIBITED.

**From:** Liana Serobian <l.serobian@yahoo.com>
**Sent:** Friday, April 19, 2019 4:25 PM
**To:** Ryan A. Graham <rgraham@pbbllp.com>
**Subject:** Re: Discovery Responses

My apologies, the dates were corrected from 2018 to 2019. Sorry, please see attached corrected. Thank you!

**Important Legal Notice:** The content of and any documents accompanying this email contain information belonging to the sender and are legally privileged as sender's work-product and/or attorney-client communication. This email and the information it contains are intended only for the use of the person or entity to which it is addressed. If you are not the intended recipient you are hereby notified that any use, disclosure, copying or distribution of this transmission is strictly prohibited. If you have received this email in error please notify the sender to arrange for its immediate destruction or return.

On Friday, April 19, 2019 4:18 PM, Liana Serobian <l.serobian@yahoo.com> wrote:

Dear Mr. Graham,

Hope you are well! Please attached find the e-signed discovery responses that are being mailed to you today. Thank you, Liana.

**Important Legal Notice:** The content of and any documents accompanying this email contain information belonging to the sender and are legally privileged as sender's work-product and/or attorney-client communication. This email and the information it contains are intended only for the use of the person or entity to which it is addressed. If you are not the intended recipient you are hereby notified that any use, disclosure, copying or distribution of this transmission is strictly prohibited. If you have received this email in error please notify the sender to arrange for its immediate destruction or return.



Litigation Support Services

11/16/2018

PETERSON BRADFORD BURKWITZ
ATTN:   RYAN GRAHAM (SBN: 310186) / LILLIANA ROSALES
100 NORTH FIRST STREET, SUITE 300
BURBANK, CA 91502-0000

WORK ORDER NUMBER: 495157-04

CASE:                        LUCY ULIKHANOVA, ET AL.
            VS.
                             COUNTY OF LOS ANGELES, ET AL.

RE:                          PENELOPY GARCIA AKA: P.G., A MINOR
FILE:                        2003-COLA
CLAIM #:                     181142137*001
ADJUSTER:

LOCATION:                    GLENDALE MEMORIAL HOSPITAL

AO 88B (Rev. 2/14 ) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# United States District Court
### for the
### CENTRAL DISTRICT of UNITED STATES DISTRICT COURT

LUCY ULIKHANOVA, ET AL.

_____
PLAINTIFF
v.
COUNTY OF LOS ANGELES, ET AL.

_____
DEFENDANT

)
)
)
)
)
)

Civil Action No. 2:17-CV-9193-FMO-E

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

TO:    **CUSTODIAN OF RECORDS OF: GLENDALE MEMORIAL HOSPITAL, 1420 S. CENTRAL AVENUE, GLENDALE, CA 91204 Telephone No. (818) 502-2276**

*(Name of person to whom this subpoena is directed)*

☒ *Production:* **YOU ARE COMMANDED** to produce at the time, date and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:
**See attachment to Subpoena in a Civil Case.**

| Place: **RONSIN** 215 S. LEMON CREEK DRIVE, WALNUT  CA 91789     Phone: (909) 594-5995 | Date and Time: **11/13/2018 9:00 AM** |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached - Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena, and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

**Date:  October 11, 2018**

CLERK OF COURT

OR

_____          _____
Signature of Clerk or Deputy Clerk                     Attorney's signature

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* DEFENDANT COUNTY OF LOS ANGELES, ET AL., who issues or requests this subpoena, are:
**RYAN GRAHAM (SBN: 310186), PETERSON BRADFORD BURKWITZ, 100 NORTH FIRST STREET, SUITE 300 BURBANK, CA 91502-0000, (818) 562-5800**

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).          495157-04/A088Bc

AO 88B (Rev. 2/14 ) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. **2:17-CV-9193-FMO-E**

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subppena for *(name of individual and title, if any)* **GLENDALE MEMORIAL HOSPITAL**
on *(date)* 10/15/18

☐ I served the subpoena by delivering a copy to the named individual as follows: *Marcy Salvador*
_____ on *(date)* 10/15/18

☐ I returned the subpoena unexecuted because ;

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness
fees for one day's attendance, and the mileage allowed by law, in the amount of
$

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____

I declare under penalty of perjury that this information is true.

Date:  10/15/18

_____
*Server's signature*

*Santiago Carrillo*
_____
*Printed name and title*

**Registration No.: 2015197812**
**RONSIN**
**215 S. LEMON CREEK DRIVE, WALNUT CA, 91789**
*Server's Address*

*Additional information regarding attempted service, etc:*

CPROOF28p2/495157

AO 88B (Rev. 2/14 ) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 3)

**Federal Rule of Civil Procedure 45 (c),(d) and (e) (Effective 12/1/13)**

(c) **Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) **For Other Discovery.** A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) **Protecting a Person Subject to a Subpoena; Enforcement.**

(1) **Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanctions - which may include lost earnings and reasonable attorney's fees - on a party or attorney who fails to comply.

(2) **Command to Produce Materials or Permit Inspection.**

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises - or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) **Quashing or Modifying a Subpoena.**

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) **DUTIES IN RESPONDING TO A SUBPOENA.**

(1) **Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) **Claiming Privilege or Protection.**

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) **CONTEMPT.** The court for the district where compliance is required - and also, after a motion is transferred, the issuing court - may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

**For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).**

---

**RONSIN**
**WALNUT CA, 91789**
**Phone: (909) 594-5995 Fax: (909) 598-2308**

**Case Number:   2:17-CV-9193-FMO-E**

**Case Name:   LUCY ULIKHANOVA, ET AL.**
**vs.**
**COUNTY OF LOS ANGELES, ET AL.**

**ATTACHMENT 3**

The records to be produced are described as follows:

THE RECORDS REQUESTED ARE regardless of date FOR THE FOLLOWING TYPES OF
RECORDS:   ANY AND ALL MEDICAL RECORDS, DOCUMENTS, MEDICAL REPORTS,
INCLUDING DOCTORS' ENTRIES, NURSES' CHARTS, PROGRESS REPORTS, PHYSICAL
THERAPY RECORDS, PATHOLOGY REPORTS, X-RAY REPORTS, LAB REPORTS, CASE
HISTORY, EMERGENCY ROOM RECORDS, ADMITTING SHEETS, SPECIAL TESTS, INPATIENT
AND OUTPATIENT RECORDS, AND ANY SIGN-IN SHEETS, INCLUDING BUT NOT LIMITED TO
ANY RECORDS/DOCUMENTS THAT MAY BE STORED DIGITALLY AND/OR ELECTRONICALLY
PERTAINING TO THE CARE AND TREATMENT, DIAGNOSIS, PROGNOSIS, CONDITION,
DISCHARGE, AFFECTING OR RELATING TO PENELOPY GARCIA AKA: P.G., A MINOR, DOB:
11/5/2010, SS#: .

495157-04/GENATT3

**RONSIN**
215 S. LEMON CREEK DRIVE
WALNUT, CA 91789  PH: (800) 331-0006
Registered Los Angeles County # 2015197812

## DECLARATION OF CUSTODIAN OF RECORDS

Regarding:   **PENELOPY GARCIA AKA: P.G., A MINOR**

SS#                              DOB:   **November 05, 2010**      Our File #  **495157**

Location:   **GLENDALE MEMORIAL HOSPITAL, 1420 S. CENTRAL AVENUE, GLENDALE, CA**

I, the undersigned, being the duly authorized Custodian of Records and having authority to certify the records declare the following:

☒ **CERTIFICATION OF RECORDS COPIED**
The records were prepared by the personnel of the business in the ordinary course of business at or near the time of the act, condition, or event. I testify to its identity and the mode of its preparation; and the sources of information and method of time of preparation were such as to indicate its trustworthiness. The copy is a true copy of all the documents requested:

☒ MEDICAL ☐ XRAYS ON FILM/CD ☐ BILLING ☐ EMPLOYMENT
☐ DENTAL ☐ PHOTOGRAPHS ☐ PATHOLOGY ☐ ELECTRONICALLY STORED DOCUMENTS
☐ OTHER _____

described in the subpoena duces tecum/deposition subpoena or:

Pursuant to Evidence Code Section 1560(e), the original records described in the subpoena duces tecum/deposition subpoena were delivered to the attorney or the attorney's representative for copying at the witness' place of business.

☐ **CERTIFICATION OF NO:**
☐ **RECORDS**      ☐ **RECORDS ARE LOST/DESTROYED**            ☐ **DENTAL**
☐ **XRAYS**        ☐ **NO RECORDS EXIST FOR DATES REQUESTED**  ☐ **PHOTOGRAPHS**
☐ **BILLING**      ☐ **PATHOLOGY**                             ☐ **OTHER**

A.  A thorough search of our files, carried out under my direction and control revealed no documents, records or other things called for in the subpoena duces tecum/deposition subpoena presented to me.

B.  That, it is understood that such records could exist under another spelling, name or classification, that with the information furnished, and to the best of our knowledge, no such records exist in our files.

I DECLARE UNDER PENALTY OF PERJURY AND UNDER THE LAWS OF THE STATE OF CALIFORNIA THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on ___11/14/18___ at ___Glendale___, California

Print Name ___MARCY SALVADOR___   Signed ___Marcy Salvador___

DO NOT WRITE BELOW THIS LINE FOR OFFICE USE ONLY

**CERTIFICATION OF PROFESSIONAL PHOTOCOPIER**

☐ I am the attorney or the attorney's representative and I state that I made true copies of all the original records delivered to me by the Custodian of Records of the above indicated location.

☒ I am the attorney or the attorney's representative and I state that original records were not made available to me by the Custodian of Records of the above indicated location and that I received copies of records from the Custodian.

I DECLARE UNDER PENALTY OF PERJURY AND UNDER THE LAWS OF CALIFORNIA THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on ___11/14/14___ at ___Glendale___, California

Print Name ___Eun Babichka___   Signed _____

Pursuant to Business and Professions Code Section 22462, I will maintain the integrity and confidentiality of information obtained under the applicable codes and distribute the records copied by RONSIN to the authorized person or entities.

Order#: 495157-04/RPROOF59

By: ___Thomas D. Alkema___

Thomas D. Alkema, Ronsin Litigation Support Services

| Confidential: |
| Notice of Patient Privacy: 07/21/15 |
| Clergy Visitation? N |
| Admit Clerk: AENJILY |

**PATIENT DEMOGRAPHICS**

Patient No.  **GA0241785490**          Advance Directive      Recd.          Medical Record No.  **GM01068096**

| PATIENT NAME | **GARCIA,PENELOPY E** | ROOM/BED | | AD./SRC | 1 | PT.TYPE | ER | REL | CHR | ADMIT DATE | **07/21/15** | ADMIT TIME | **1728** |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | SERVICE | | ACC. | | REL INFO | DISCH DATE | | | DISCH DATE | **07/21/15** | DISCH TIME | **2002** |

| STREET ADDRESS | **1429 N COLUMBUS AVE** | | | PREV ADMIT DATE | | AKA | | | HOSP NAME | | OTHER OPEN ACCTS | | DATE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CITY,STATE,ZIP | **GLENDALE,CA 91202** | | | HOSP SVC OTHER W/I 60 DAYS | | | | | | | | | |

| MARITAL STATUS | **SINGLE** | SSN | ***-**-5117 | PHONE | **310-975-4240** | EMPLOY OF PAT/PARENT | **CHILD** | | OCCUP | **CHILD** |
|---|---|---|---|---|---|---|---|---|---|---|

| DRIVER'S LICENSE NO. | **CA/B7331413** | | | ADDRESS OF EMP | | DEPT/DIV |
|---|---|---|---|---|---|---|

| BIRTH DATE | **11/05/2010** | AGE | **7** | SEX | **F** | RACE | **WH** | CITY,STATE,ZIP | | PHONE |
|---|---|---|---|---|---|---|---|---|---|---|

| ADMITTING PHYS. | | CODE | | RELATIVE/FRIEND | **ULIKHANOVA,LUCY** | |
|---|---|---|---|---|---|---|
| ATTENDING PHYS. | **KIRAKOSIAN,LENA M** | CODE | **KIRALE** | STREET ADDRESS | **1429 N COLUMBUS AVE** | REL TO PT | **MOTHER** |
| PRIMARY CARE PHYS. | **NOT ON STAFF,PHYSICIAN** | CODE | **NTSTAF** | PATIENT LANGUAGE | **ENG** | |

| SPOUSE OR PARENT | | SPOUSE/PARENT DOB | | CITY,STATE,ZIP | **GLENDALE,CA 91202** | PHONE | **310-975-4240** |
|---|---|---|---|---|---|---|---|
| STREET ADDRESS | | REL TO PT | | SPOUSE EMPLOYER | | PHONE | |

| CITY,STATE,ZIP | | | EMPLOYER | **UNEMPLOYED** |
|---|---|---|---|---|
| NAME | **ULIKHANOVA,LUCY** | | STREET ADDRESS | |

| STREET ADDRESS | **1429 N COLUMBUS AVE** | PHONE | **310-975-4240** | CITY,STATE,ZIP | | OCCUP | **UNEMPLOYED** |
|---|---|---|---|---|---|---|---|
| CITY,STATE,ZIP | **GLENDALE,CA 91202** | SSN | ***-**-4810 | | | | |

| TYPE OF ACCI | | DATE OF ACC | | TIME | | LOCATION OF ACCID | | BRIEF DESCRIP |
|---|---|---|---|---|---|---|---|---|
| ADMITTING DIAGNOSIS | **"ABUSE"** | | | | | | REL | **CHR - Christian** |
| OTHER PHYS. | | | | | | | | |

| 1. | PRIMARY INSURANCE | **BC PRUDENT BUYER** | CODE | **BCCPPRBP** | 2. | SECOND INSURANCE | **PT LIAB AFTER INSURANCE** | CODE | **PLIOOTHS** |
|---|---|---|---|---|---|---|---|---|---|
| | MEDICAL GROUP | **MOTION PICTURE INDUSTRY H** | CODE | | | MEDICAL GROUP | | CODE | |

| STREET ADDRESS | **PO BOX 60007** | | | | STREET ADDRESS | | |
|---|---|---|---|---|---|---|---|
| CITY,STATE,ZIP | **LOS ANGELES** | **CA 90060** | | | CITY,STATE,ZIP | | |

| GROUP NO. | **220** | SUBSCRIBER ID | **MPI01472647Q** | GROUP NO. | **010** | SUBSCRIBER ID | **564634810** |
|---|---|---|---|---|---|---|---|
| SUBSCRIBER | **GARCIA,BRIAN** | | | SUBSCRIBER | **ULIKHANOVA,LUCY** | | |

| PT REL TO SUB | **FA** | SUB DOB | **02/07/79** | AUTH. | PT REL TO SUB | **MO** | SUB DOB | | AUTH. |
|---|---|---|---|---|---|---|---|---|---|
| MAIL CLAIM TO: | | | | | MAIL CLAIM TO: | | | | |
| CITY,STATE,ZIP | | | | | CITY,STATE,ZIP | | | | |

| REMARKS | **PCP:BOXTIN PER MOTHER** | | STD# CODE | | VR#2 | MSR#2 | TP? | FX# | MDRO |
|---|---|---|---|---|---|---|---|---|---|
| CAP#/SP | **None** | | LEVEL OF CARE | | COA | **1** | | | |
| Maiden/Other: | | | | | | | | | |

| PRINCIPLE DIAGNOSIS | | CODES | | PRINCIPLE PROCEDURE | | CODES |
|---|---|---|---|---|---|---|

| OTHER DIAGNOSIS | | OTHER PROCEDURE | |
|---|---|---|---|

| CONSULTATION WITH | | DISCHARGE STATUS | | EXPIRED | | AUTOPSY | | CORONER'S CASE |
|---|---|---|---|---|---|---|---|---|
| | | WITH          AMA | | -48 | +48 | YES | NO | |
| | | APPROVAL | | HOURS | HOURS | | | |

                                                    M.D. _____

(ATTENDING PHYSICIAN PHONE NUMBER)        (PHYSICIAN SIGNATURE)                    (DATE)

| ASSEMBLY | _____ | DATE | _____ | CODED/ABSTRACTED | _____ | DATE | _____ |
|---|---|---|---|---|---|---|---|
| ANALYSIS | _____ | DATE | _____ | FINAL CHECK | _____ | DATE | _____ |

| GLENDALE MEMORIAL HOSPITAL | PATIENT NO. | MEDICAL RECORD NO. |
|---|---|---|
| 1420 SOUTH CENTRAL AVENUE | **GA0241785490** | **GM01068096** |
| GLENDALE, CALIFORNIA 91204 | | |
| (818) 502-1900 | | |

 **Glendale Memorial Hospital and Health Center.**
A Dignity Health Member
1420 South Central Ave   Glendale, CA 91204   (818) 502-1900

Patient: GARCIA,PENELOPY E
Account Num: GA0241785490
Med Rec Num: GM01068096
Location: GED
Physician: KIRAKOSIAN,LENA M
Date: 07/21/15

## Patient Visit Information

### You were seen today for:

Child abuse by father

### Staff

Your caregivers today were:

Physician    KIRAKOSIAN,LENA M
Nurse        JC

### Patient Instructions Reviewed

Child Abuse, Suspected

received 07/21/15 - 1951

### Activity Restrictions or Additional Instructions

Please schedule a follow-up appointment with your primary physician within 48 hours of your Emergency Department visit.  If you do not have a primary physician, please call our Doctor Finder Service at (818) 502-BEST (2378) for assistance.

If your condition worsens, please return to the Emergency Department.

### Follow-up

Please contact the following to make an appointment for follow-up care:

NOT ON STAFF,PHYSICIAN
Fax: 111-111-1111

Note: Your health care plan may require a referral from your primary care provider prior to making an appointment.



**Glendale Memorial Hospital and Health Center.**
A Dignity Health Member
1420 South Central Ave   Glendale, CA 91204   (818) 502-1900

Patient: GARCIA,PENELOPY E
Account Num: GA0241785490
Med Rec Num: GM01068096
Location: GED
Physician: KIRAKOSIAN,LENA M
Date: 07/21/15

# Child Abuse, Suspected

REPORTING TO CHILD PROTECTIVE SERVICES

Based on the information obtained today, your doctor is concerned that your child's health or well-being may be at risk. Your doctor is required by state law to report this to the police or Child Protective Services (CPS).

A police officer or a CPS worker will come to talk with you and investigate the situation. If the investigating officer believes that the child is not safe in the home, your child may be taken into protective custody, taken to a juvenile facility, placed temporarily with relatives, or in a foster shelter home. The final disposition will depend on a court hearing.

While physicians, police and CPS workers do their best, sometimes the facts are misleading. If the investigation shows that there is no danger to your child, we apologize in advance for the emotional upset this may have caused. However, many times, such concerns prove to be correct and the intervention is necessary for the welfare of the child.

Based on the medical exam performed today, it is safe for your child to be released in accordance with the CPS or police directives.

# GLENDALE MEMORIAL HOSPITAL AND HEALTH CENTER

*1420 South Central Ave*
*Glendale, CA 91204*

**Patient:** GARCIA,PENELOPY E          **MR #:**  GM01068096          **Acct #:**  GA0241785490
**Admit Date:**

**DOB:** 11/05/2010          **Age:** 4Y 08M          **Sex:**  F
**Room/Bed:**     **Location:** GED   **Report Number:**  0721-0480

## EMERGENCY DEPARTMENT REPORT

# Signed

## General
**Chief Complaint:** Pediatric General Complaints
**Stated Complaint:** "ABUSE"
**Date of MD/PA/NP initial eval:** Jul 21, 2015
**Time of MD/PA/NP initial eval:** 17:40
**Source:** patient, family
**Exam Limitations:** no limitations

## History of Present Illness
**Initial Comments**
Patient is a 4-y-8m old BIB mother with a cco "child has been more verbal and describing symptoms of sexual abuse" Patients mother states that she has an open case against the biological father who was sexually abusing her daughter. Mom states that the patient has not been with her dad for about 1 year but since the patient has been describing more events of "penetration" in her vagina and rectum mom wanted to bring her in to have an evaluation. Mom wants to know if her hymen is intact even "though she knows it is not very accurate". Patient is not complaining of pain or discomfort.
**Allergies:**
**Coded Allergies:**
   peanut (Unverified Allergy, Unknown, 7/21/15)

## Past History
**Surgical History:** no surgical history
**Birth History:** No Complications, Term

**All systems:** Reviewed and negative
**Constitutional:** Reports: no symptoms

---

GLENDALE MEMORIAL HOSPITAL AND HEALTH CENTER
Patient: GARCIA,PENELOPY E
PT Acct#:GA0241785490                                    MR#: GM01068096
                    Room:
0721-0480                                                Page: 1 of 3
Dictated By: KIRAKOSIAN, LENA M RNP

                                        EMERGENCY DEPARTMENT REPORT

**EENTM:** Reports: no symptoms
**Eyes:** Reports: no symptoms
**Ear:** Reports: no symptoms
**Nose:** Reports: no symptoms
**Mouth:** Reports: no symptoms
**Throat:** Reports: no symptoms
**Respiratory:** Reports: no symptoms
**Cardiovascular:** Reports: no symptoms
**Gastrointestinal:** Reports: no symptoms
**Genitourinary:** Reports: no symptoms
**Musculoskeletal:** Reports: no symptoms
**Skin:** Reports: no symptoms
**Psychiatric/Neurological:** Reports: no symptoms reported
**Endocrine:** Reports: no symptoms
**Hematologic/Lymphatic:** Reports: no symptoms

## Physical Exam
**Vital Signs**

Vital Signs

| Date Time | Temp | Pulse | Resp | B/P | Pulse Ox | O2 Delivery | O2 Flow Rate | FiO2 |
|-----------|------|-------|------|------|----------|-------------|--------------|------|
| 7/21/15 17:40 | 98.8 | 111 | 32 | 96/50 | 98 | Room Air | | |

**Vital Signs Interpretation:** Normal
**General Appearance:** WD/WN, no apparent distress, active, playful, cheerful
**HEENT:** head inspection normal, fontanelle closed/normal, PERRL, TMs normal, nose normal, pharynx normal
**Neck:** normal inspection, non-tender, supple, no lymphadenopathy
**Respiratory:** normal breath sounds, no respiratory distress, no accessory muscle use, chest non-tender
**Cardiovascular/Chest:** regular rate, rhythm, normal heart sounds, normal peripheral pulses, no edema
**Abdominal Exam:** normal bowel sounds, non tender, soft, no organomegaly
**Genital/Rectal:** normal genital exam (external exam WNL), normal rectal exam (external exam WNL), other (hymen intact)
**Extremities:** non-tender, normal range of motion, no evidence of injury
**Neuro Exam:** alert, no motor/sensory deficits, normal mood/affect
**Skin:** normal color, warm/dry
**Lymphatic:** no adenopathy

## Course in the Department
**Comments**
Social worker came and assessed the child and mother

## Respiratory Status
**Respiratory Status :**
  **Oxygen Delivery Method:** Room Air

## Dictation/Report given to
**ED MD/PA/NP Consult:** MD agrees with Plan

## Depart
**Impression**
Impression:

---

GLENDALE MEMORIAL HOSPITAL AND HEALTH CENTER
Patient: GARCIA,PENELOPY E
PT Acct#:GA0241785490                        MR#: GM01068096
                        Room:
0721-0480                                        Page: 2 of 3
Dictated By: KIRAKOSIAN, LENA M RNP

                                        EMERGENCY DEPARTMENT REPORT

**Primary Impression:** Child abuse by father

**Depart- See Depart Info in EMR**
**Disposition:** HOME, SELF-CARE
**Condition:** Stable

KIRAKOSIAN,LENA M                                          Jul 21, 2015 18:00

KIRAKOSIAN, LENA M RNP
**Dictated By:** _____

<Electronically signed by SHAHRAM TABIB M.D.>
**Signed By:** _____
TABIB, SHAHRAM M.D. 07/21/15 1938

**Dictated For   :**  TABIB,SHAHRAM M.D.

*

**Co - Signed By:** _____
<Electronically signed by SHAHRAM TABIB M.D.>  07/21/15 1938

GLENDALE MEMORIAL HOSPITAL AND HEALTH CENTER
Patient: GARCIA,PENELOPY E
PT Acct#:GA0241785490                        MR#: GM01068096
                         Room:
0721-0480                                          Page: 3 of 3
Dictated By: KIRAKOSIAN, LENA M RNP

EMERGENCY DEPARTMENT REPORT

```
DATE: 07/26/15 @ 0030                    Glendale Memorial EDM ** LIVE **                         PAGE 1
USER: AENJILY                                Patient Audit Trail
```

| Patient: | GARCIA,PENELOPY X | Acct No.: | GA0241785480 | Unit No.: | GM01068096 |
|---|---|---|---|---|---|
| ED Physician: | KIRAKOSIAN,LENA M | Age/Sex: | 4Y 06M/F | Loc: | SUBWAITING |
| Chief Cmplnt: | Pediatric General Complaints | Status: | DEP ER | | |

| Occurred Date/Time/User | Recorded Date/Time/User | Event |
|---|---|---|
| | 07/21/15 1716 ANASHEH ENJILY | Arrival Date/Time Edited |
| None-->07/21/15 1715 | | |
| | 07/21/15 1716 ANASHEH ENJILY | Location Changed |
| None-->Triage | | |
| | 07/21/15 1716 ANASHEH ENJILY | Reason for Visit Edited |
| None-->"ABUSE" | | |
| 07/21/15 1715 ANASHEH ENJILY | 07/21/15 1716 ANASHEH ENJILY | Status Event Edited |
| None-->Received | | |
| | 07/21/15 1729 ANASHEH ENJILY | Physician Assigned |
| None-->ER-DOC | | |
| 07/21/15 1740 RAYMOND ALMEDA, RN | 07/21/15 1740 RAYMOND ALMEDA, RN | ED 1 Vital Signs: Peds 1-8yrs Documented |
| Temperature (F) 98.8 | | |
| Temperature (Calculated Celsius) 37.11408 | | |
| Source Oral | | |
| Pulse 111 | | |
| Respirations 32 | | |
| Oxygen Delivery Method Room Air | | |
| O2 Sat % 98 | | |
| Blood Pressure (Occurrence #1) | | |
| Systolic 96 | | |
| Diastolic 50 | | |
| Mean 65 | | |
| Location Left Arm | | |
| Source Automatic Cuff | | |
| Position Sitting | | |
| Pain Patient Denies Pain | | |
| | 07/21/15 1740 RAYMOND ALMEDA, RN | Chief Complaint Edited |
| None-->Pediatric General Complaints | | |
| | 07/21/15 1740 RAYMOND ALMEDA, RN | Status Event Edited |
| Received-->Vital Signs | | |
| 07/21/15 1741 RAYMOND ALMEDA, RN | 07/21/15 1747 RAYMOND ALMEDA, RN | ED *Chief Complaint Documented |
| Chief Complaint pt mom wants daugther's genitals checked bec of alleged abuse | | |
| Duration of Symptoms see paper work from lawyers office | | |
| History of Present Illness (if applicable) pt has been on a therapist already and just needs medical exam | | |
| 07/21/15 1741 RAYMOND ALMEDA, RN | 07/21/15 1748 RAYMOND ALMEDA, RN | ED 3 Triage: Peds 1 - 8yrs Documented |
| Arrived From Home | | |
| Accompanied by Parents | | |
| Arrival Mode Car/Walk-in | | |
| Arrival by Walking | | |
| Information Gathered From Parents | | |
| Preferred Language English | | |
| Doctor's Name BOXSTEIN | | |
| Height (Feet) 3 | | |

```
DATE: 07/26/15 @ 0030                         Glendale Memorial EDM ** LIVE **                                    PAGE 2
USER: AENJIIY                                      Patient Audit Trail
```

| Patient: | GARCIA,PENELOPY X | Acct No.: | GA0241785490 | Unit No.: | GMO1068098 |
| ED Physician: | KIRAKOSIAN,LENA M | Age/Sex: | 4X 08M/F | Loc: | SUBWAITING |
| Chief Cmplnt: | Pediatric General Complaints | Status: | DEP ER | | |

| Occurred Date/Time/User | Recorded Date/Time/User | Event |
|---|---|---|
| Height (Inches) 3<br>Centimeters 99.1<br>Weight (Kilograms) 15<br>Weight (Calculated Grams) 15000.000<br>Immunizations UTD Y<br>Per Parent/Guardian<br>Is there a suspicious delay in seeking treatment? Y<br>Is the patient's behavior age-appropriate? Y<br>Is the patient's interaction with caregiver age-appropriate? Y<br>Is a sibling blamed for the patient's illness/injury? N<br>Carseat Y<br>Is caregiver aware of carseat law? Y | | |
| 07/21/15 1741 RAYMOND ALMEDA, RN<br>Travelled to risk area or contact w/ traveller to risk area N | 07/21/15 1748 RAYMOND ALMEDA, RN | Ebola Viral Disease Screening Documented |
| 07/21/15 1741 RAYMOND ALMEDA, RN<br>Face No Particular Expression<br>Legs Normal Position/Relaxed<br>Activity Lying Quietly<br>Cry No Cry (Awake or Asleep)<br>Consolability Content/Relaxed<br>FLACC Pain Scale Numeric Score 0 | 07/21/15 1749 RAYMOND ALMEDA, RN | ED 4 FLACC Pain Scale Documented |
| 07/21/15 1741 RAYMOND ALMEDA, RN<br>Chief Complaint ALLEGED ABUSE PER PT'S MOTHER<br>Onset of Symptoms see paper work from lawyers office | 07/21/15 1749 RAYMOND ALMEDA, RN | ED 2 Peds General Complaints Documented |
| 07/21/15 1741 RAYMOND ALMEDA, RN<br>Meets Criteria N | 07/21/15 1749 RAYMOND ALMEDA, RN | Pediatric Sepsis Screening Documented |
| 07/21/15 1741 RAYMOND ALMEDA, RN<br>Vital Signs-->Triaged | 07/21/15 1748 RAYMOND ALMEDA, RN | Status Event Edited |
| None-->Less Urgent | 07/21/15 1750 RAYMOND ALMEDA, RN | Priority Edited |
| Triage-->ED 2 | 07/21/15 1750 RAYMOND ALMEDA, RN | Location Changed |
| 07/21/15 1752 REYNALYN FLORES, RN<br>1750-Paged Sally Gonzalez, SW. | 07/21/15 1753 REYNALYN FLORES, RN | Note Entered |
| 07/21/15 1754 REYNALYN FLORES, RN<br>Return call from Sally. Made aware regarding ED visit. States will be here in<br>about an hour. | 07/21/15 1756 REYNALYN FLORES, RN | Note Entered |
| 07/21/15 1756 REYNALYN FLORES, RN<br>818-868-1433 | 07/21/15 1756 REYNALYN FLORES, RN | Note From 07/21/15 1752 - Amendment #1 Added |
| ER-DOC-->KIRAKOSIAN,LENA M, AMS | 07/21/15 1800 LENA KIRAKOSIAN, AMS | Physician Assigned |

```
DATE: 07/26/15 @ 0030                    Glendale Memorial EDM ** LIVE **                              PAGE 3
USER: AENJILY                                Patient Audit Trail
```

| Patient: | GARCIA,PENELOPY E | Acct No.: | GA024178E490 | Unit No.: | GM01068096 |
| ED Physician: | KIRAKOSIAN,LENA M | Age/Sex: | 4Y 08M/F | Loc: | SUBWAITNG |
| Chief Cmplnt: | Pediatric General Complaints | Status: | DEP ER | | |

| Occurred Date/Time/User | Recorded Date/Time/User | Event |
|---|---|---|
| Triaged-->Seen by MD/PA | 07/21/15 1800 LENA KIRAKOSIAN, AHS | Status Event Edited |
| ED 2-->Sub Waiting Area | 07/21/15 1800 JESSICA CRUZ, RN | Location Changed |
| None-->Sub Waiting 2 | 07/21/15 1800 JESSICA CRUZ, RN | Room Changed |
| Seen by MD/PA-->In Room | 07/21/15 1800 JESSICA CRUZ, RN | Status Event Edited |
| None-->JESSICA CRUZ, RN | 07/21/15 1844 JESSICA CRUZ, RN | Nurse Assigned |
| None-->Stable | 07/21/15 1854 LENA KIRAKOSIAN, AHS | Condition Edited |
| None-->HOME, SELF-CARE | 07/21/15 1854 LENA KIRAKOSIAN, AHS | Disposition Edited |
| Child abuse by father | 07/21/15 1854 LENA KIRAKOSIAN, AHS | Primary Impression Edited |
| | 07/21/15 1854 LENA KIRAKOSIAN, AHS<br>Child abuse by father | Clinical Impressions Edited |
| 07/21/15 1930 JESSICA CRUZ, RN<br>social work at bedside. | 07/21/15 2002 JESSICA CRUZ, RN | Note Entered |
| 07/21/15 1940 JESSICA CRUZ, RN<br>Pulse 109<br>Respirations 21<br>Oxygen Delivery Method Room Air<br>O2 Sat % 99<br>Pain Reassesment Patient Denies Pain<br>Comfort Measures Provided  Juice | 07/21/15 2001 JESSICA CRUZ, RN | ED *Peds Reassessment 1-8y Documented |
| | 07/21/15 1951 LENA KIRAKOSIAN, AHS<br>Please schedule a follow-up appointment with your primary<br>physician within 48 hours of your Emergency Department visit.  If<br>you do not have a primary physician, please call our Doctor<br>Finder Service at (818) 502-BEST (2378) for assistance.<br><br>If your condition worsens, please return to the Emergency<br>Department. | Additional Instructions Edited |
| None-->ENGLISH | 07/21/15 1951 LENA KIRAKOSIAN, AHS | Patient Language Edited |
| | 07/21/15 1951 LENA KIRAKOSIAN, AHS | Patient Discharge Instructions Edited |

```
DATE: 07/26/15 @ 0030                        Glendale Memorial EDM ** LIVE **                              PAGE 4
USER: AENJILY                                    Patient Audit Trail
```

| Patient: | GARCIA,PENELOPY X | Acct No.: | GA0241785490 | Unit No.: | GM01068096 |
|---|---|---|---|---|---|
| ED Physician: | KIRAKOSIAN,LENA M | Age/Sex: | 4Y 08M/F | Loc: | SUBWAITING |
| Chief Cmplnt: | Pediatric General Complaints | Status: | DEP ER | | |

| Occurred Date/Time/User | Recorded Date/Time/User | Event |
|---|---|---|
| | Child Abuse, Suspected | |
| | 07/21/15 1951 LENA KIRAKOSIAN, AHS | Referrals Edited |
| | NOT ON STAFF,PHYSICIAN | |
| | 07/21/15 1951 LENA KIRAKOSIAN, AHS | Marked Ready to Depart |
| | 07/21/15 1951 LENA KIRAKOSIAN, AHS | Status Event Edited |
| In Room-->Ready For Departure | | |
| | 07/21/15 1951 LENA KIRAKOSIAN, AHS | Departure Packet Printed |
| None-->07/21/15 1951 | | |
| 07/21/15 2002 JESSICA CRUZ, RN | 07/21/15 2002 JESSICA CRUZ, RN | ED Discharge Documented |
| Pain Patient Denies Pain | | |
| Discharged to Home | | |
| Was follow up care ordered for the patient? N | | |
| Was a PHS printed/downloaded for the patient? N | | |
| Verbal/Written Instructions to Parent | | |
| Verbalized Understanding Y | | |
| Learning Barrier Addressed Y | | |
| Readiness To Learn Assessed Y | | |
| Accompanied By Driver Y | | |
| Condition on Discharge Stable | | |
| Mode Of Departure Walk | | |
| Focussed assessment completed prior to departure Y | | |
| Pt general condition at the time of departure  no acute distress. | | |
| | 07/21/15 2002 JESSICA CRUZ, RN | Event Departed |
| | 07/21/15 2002 JESSICA CRUZ, RN | Room Changed |
| Sub Waiting 2-->None | | |
| | 07/21/15 2002 JESSICA CRUZ, RN | Status Event Edited |
| Ready For Departure-->Patient Left Dept | | |
| | 07/21/15 2002 | Disposition Edited |
| None-->HOME, SELF-CARE | | |
| | 07/25/15 0005 EDMBKGJOB | Status Event Edited |
| Patient Left Dept-->Please Do Not Use This Event | | |

```
DATE: 07/26/15 @ 0030        Glendale Memorial EDM ** LIVE **              PAGE 1
USER: AENJILY                  **ED Summary Archive Report
```

Patient: GARCIA,PENELOPY E            Age/Sex: 4Y 08M/F          Acct No: GA0241785490
ED Provider: KIRAKOSIAN,LENA M                                   Unit No: GM01068096

```
1429 N COLUMBUS AVE
GLENDALE, CA 91202
310-975-4240
Insurance: BC PRUDENT BUYER          PCP: NOT ON STAFF,PHYSICIAN
Next of Kin: ULIKHANOVA,LUCY         Family Doctor:
  Relation: MOTHER                   Referring:
  Phone: 310-975-4240
```

### Chief Complaint

```
ED Physician: KIRAKOSIAN,LENA M, AHS     Arrival Date/Time: 07/21/15 - 1715
Practitioner:                            Triage Date/Time: 07/21/15 - 1740
Nurse: JESSICA CRUZ, RN                  Date of Birth: 11/05/2010

Stated Complaint: "ABUSE"
Chief Complaint: Pediatric General Complaints      Priority: L
```

### Mode of Arrival

*07/21/15 1741 RAYMOND ALMEDA*
Arrival Mode Car/Walk-in

Vital Signs

| Date/Time | Systolic | Diastolic | Pulse | Respirations | O2 Sat % | Temperature (F) | User |
|-----------|----------|-----------|-------|--------------|----------|-----------------|------|
| 07/21/15 1740 | 96 | 50 | 111 | 32 | 98 | 98.8 | RA... |

### Nursing Documentation

*07/21/15  1741    ED 2 Peds General Complaints*                    *RAYMOND ALMEDA, RN*
**Chief Complaint:** Chief Complaint ALLEGED ABUSE PER PT'S MOTHER; Onset of Symptoms
see paper work from lawyers office

### Departure Information

```
Primary Impression:
Child abuse by father
Secondary Impressions:
Disposition: HOME, SELF-CARE             Departure Date/Time: 07/21/15 - 2002
Comment:
Condition: Stable

Notes
```

```
Occurred                                 Recorded
Date    Time User                        Date    Time User
07/21/15 1752 REYNALYN FLORES, RN        07/21/15 1753 REYNALYN FLORES, RN
  1750-Paged Sally Gonzalez, SW.
  Amended by REYNALYN FLORES, RN on 07/21/15 at 1756
  818-868-1433
```

```
Occurred                                 Recorded
Date    Time User                        Date    Time User
07/21/15 1754 REYNALYN FLORES, RN        07/21/15 1756 REYNALYN FLORES, RN
  Return call from Sally. Made aware regarding ED visit. States will be here in about an
  hour.
```

Patient: GARCIA,PENELOPY E

```
DATE: 07/26/15 @ 0030        Glendale Memorial EDM ** LIVE **              PAGE 2
USER: AENJILY                    **ED Summary Archive Report
```

Patient: GARCIA,PENELOPY E                Age/Sex: 4Y 08M/F          Acct No: GA0241785490
ED Provider: KIRAKOSIAN,LENA M                                       Unit No: GM01068096

```
Occurred                                Recorded
Date    Time User                       Date    Time User
07/21/15 1930 JESSICA CRUZ, RN          07/21/15 2002 JESSICA CRUZ, RN
 social work at bedside.


Occurred                                Recorded
Date    Time User                       Date    Time User
07/21/15 1957 SALLY GONZALEZ            07/21/15 2018 SALLY GONZALEZ
```

SW paged and requested to come in to evaluate pt due to suspected sexual abuse. SW met with
pt and pt's mother, Lucy Ulikhanova 310-975-4240 who stated that pt's father has been
harassing and threatening pt's mother. Prior to pt being admitted to Glendale Memorial
Hospital pt's mother made a report to glendale police department and per police department
advised pt to admit pt to hospital and request a genital exam due to history (approximately
1 year ago) of suspected sexual abuse. According to pt's mother, pt has not seen father for
more than a year. Pt's mother reported that a DCFS case was made 1 year ago and case was
closed. Judge assigned to case and ruled that full custody be given to pt's mother and
father may only have monitored visitation rights. ED physician report
indicated that there is no evidence of ruptured vagina. When pt's mother was asked if she
took pt to hospital when sexual abuse took place, pt's mother stated that she did not due
to no one advising her and having other concerns arising at the same time. According to
pt's mother, pt is now verbal and is reporting what her father did to her (daddy
bit me in my bobo "vagina area"). According to pt's mother, the pt and she are receiving
therapy. SW attempted to speak with DCFS worker but line was busy and was asked to leave
contact name and number (call reference number 0721-008). SW will wait to receive a call
back but at this time SW feels that there is no need to proceed with DCFS report due to
pt's mother claiming that a DCFS report was made a year ago and case was closed due to
judge's determination (mother granted full custody and father right to monitored visitation
rights).
-----------------------------------------------------------------------------
Addendum: 07/21/15 at 2031 by SALLY GONZALEZ
-----------------------------------------------------------------------------
Call received from Evonne Molina (DCFS SW) and report made. Pending reference number in
order to proceed with final report.

Patient: GARCIA,PENELOPY E

```
DATE: 07/26/15 @ 0030          Glendale Memorial EDM ** LIVE **                    PAGE 1
USER: AENJILY                     EDM Patient Record
```

Patient  GARCIA,PENELOPY E                        Account No. GA0241785490
Age/Sex  4Y 08M/F                                 Unit No. GM01068096

```
  ──ER Caregivers──                                Arrival Date  07/21/15
Physician      KIRAKOSIAN,LENA M                           Time  1715
Practitioner                                       Triage Date  07/21/15
Nurse          JESSICA CRUZ                                Time  1740
PCP            NOT ON STAFF,PHYSICIAN            Date of Birth  11/05/2010

Stated Complaint "ABUSE"
Chief Complaint  Pediatric General Complaints
       Priority  L

Primary Impression
Child abuse by father
Secondary Impressions

Departure Disposition  HOME, SELF-CARE           Departure Date  07/21/15
Departure Comment                                          Time  2002
Departure Condition    Stable
```

### Allergies

```
  Allergy or Adverse Reaction              Type     Severity      Date      Ver
peanut                                     Allergy  Unknown      07/21/15    N
```

### Assessments

ED 1 Vital Signs: Peds 1-8yrs

By RAYMOND ALMEDA, RN                                on 07/21/15 at 1740

```
Temperature
    Temperature (F)              98.8 (degrees F)
    Source                       Oral

Pulse
    Pulse                        111 (bpm)

Respirations
    Respirations                 32 (breaths/min)
    Oxygen Delivery Method       Room Air
    O2 Sat %                     98
    Oxygen Flow Rate
    FiO2

Blood Pressure
  Occurrence #1
    Systolic                     96 (mm Hg)
    Diastolic                    50 (mm Hg)
    Mean                         65 (mm Hg)
    Location                     Left Arm
    Source                       Automatic Cuff
    Position                     Sitting
```

```
DATE: 07/26/15 @ 0030          Glendale Memorial EDM ** LIVE **                    PAGE 2
USER: AENJILY                        EDM Patient Record
```

| Patient | GARCIA, PENELOPY E | Account No. | GA0241785490 |
|---|---|---|---|
| Age/Sex | 4Y 08M/F | Unit No. | GM01068096 |

**Comment**
*Vital Signs Comment*

**Pain**
*Pain*                                    Patient Denies Pain

**Reassessment**
*Reassessment Due at*

**ED *Chief Complaint**

**By RAYMOND ALMEDA, RN**                                    on 07/21/15 at 1741

**Chief Complaint**
*Chief Complaint*                    pt mom wants daugther's genitals checked bec of alleged
                                    abuse
*Duration of Symptoms*               see paper work from lawyers office
*History of Present Illness (if applicable)*
                                    pt has been on a therapist already and just needs
                                    medical exam

**Signs and Symptoms of Stroke**
*Signs and Symptoms of Stroke*
*At Baseline State*

**Onset of Stroke Symptoms**
*Date of Onset of Symptoms*
*Time of Onset of Symptoms*
*Symptom Onset Unknown*

**or Baseline Assessment**
*End of Baseline Date*
*End of Baseline Time*

**ED 3 Triage: Peds 1 - 8yrs**

**By RAYMOND ALMEDA, RN**                                    on 07/21/15 at 1741

**Arrival**
*Arrived From*                       Home
*Accompanied by*                     Parents
*Arrival Mode*                       Car/Walk-in
*Arrival by*                         Walking
*Fire Department/EMS*
*Rescue Ambulance Number*

**Primary Language**
*Information Gathered From*           Parents
*Preferred Language*                 English
*Interpreter*
*Interpreter's Name*

```
DATE: 07/26/15 @ 0030        Glendale Memorial EDM ** LIVE **              PAGE 3
USER: AENJILY                    EDM Patient Record
```

| Patient  GARCIA,PENELOPY E | Account No  GA0241785490 |
|---|---|
| Age/Sex  4Y 08M/F | Unit No  GM01068096 |

**Primary Care Physician**
*Doctor's Name*                BOXSTEIN

**Treatment Prior to Arrival**
*Treatment*
*Treatment Description*
*Blood Glucose*

**Length**
*Height (Feet)*                3 (feet)
*Height (Inches)*              3 (inches)
*Centimeters*                  99.1 (cm)

**Weight**
*Weight (Kilograms)*           15 (Kg)

**Immunizations**
*Immunizations UTD*            Yes
*Per*                          Parent/Guardian

**Social**
*Attending Day Care*
*Recent Exposure to Infectious Disease*
*Hx Smoking Exposure*

**Abuse Screening**
*Is there a suspicious delay in seeking treatment?*
                               Yes
*Is the history consistent with the illness/injury?*
*Is the patient's behavior age-appropriate?*
                               Yes
*Is the patient's interaction with caregiver age-appropriate?*
                               Yes
*Is a sibling blamed for the patient's illness/injury?*
                               No
*Is abuse or neglect suspected?*

**Safety**
*Carseat*                      Yes
*Is caregiver aware of carseat law?*
                               Yes

**Fall Risk**
*Mobility*
*Mental State*
*Toileting*
*History of Falls*
*Medication*
*Fall Risk Score*
*Interventions*

**Ebola Viral Disease Screening**

By RAYMOND ALMEDA, RN                              on 07/21/15 at 1741

20 of 37

```
DATE: 07/26/15 @ 0030        Glendale Memorial EDM ** LIVE **              PAGE 4
USER: AENJILY                   EDM Patient Record
```

Patient  GARCIA,PENELOPY E                        Account No  GA0241785490
Age/Sex  4Y 08M/F                                 Unit No  GM01068096

**Screening**
    *Travelled to risk area or contact w/ traveller to risk area*
                             No
    *Symptoms*
    *Patient's exposure risk*

**ED 4 FLACC Pain Scale**

By RAYMOND ALMEDA, RN                                        on 07/21/15 at 1741

**FLACC Pain Scale**
    *Face*                      No Particular Expression
    *Legs*                      Normal Position/Relaxed
    *Activity*               Lying Quietly
    *Cry*                       No Cry (Awake or Asleep)
    *Consolability*          Content/Relaxed
    *FLACC Pain Scale Numeric Score*  0 (Pain Rating)
    *Notes*

**ED 2 Peds General Complaints**

By RAYMOND ALMEDA, RN                                        on 07/21/15 at 1741

**Chief Complaint**
    *Chief Complaint*            ALLEGED ABUSE PER PT'S MOTHER
    *Onset of Symptoms*         see paper work from lawyers office

**General Appearance**
    *General Appearance*
    *Skin Appearance*
    *General Appearance Comment*

**Neurological Assessment**
    *Activity*
    *Neurological Comment*

**Cardiovascular Assessment**
    *Pulse Rhythm*
    *Pulse Strength*
    *Capillary Refill*
    *Cardiovascular Comment*

**Respiratory Assessment**
    *Respiratory Effort Description*
    *Type of Retractions*
    *Depth of Respiration*
    *Breathing Pattern*
    *Respiratory Comment*

**Auscultation**

```
DATE: 07/26/15 @ 0030          Glendale Memorial EDM ** LIVE **                    PAGE 5
USER: AENJILY                       EDM Patient Record
```

| Patient  GARCIA,PENELOPY E | Account No. GA0241785490 |
|---|---|
| Age/Sex  4Y 08M/F | Unit No. GM01068096 |

    Occurrence #
       *Side*
       *Lung Location*
       *Phase*
       *Breath Sounds*
       *Auscultation Comment*

**Skin Assessment**
       *Skin Turgor*
       *Skin Symptoms*
       *Skin Assessment Comment*

**Feeding**
       *Appetite*
       *Fluid Tolerance*
       *Last Oral Intake*
       *Mucous Membranes*
       *Feeding Comment*

**Elimination**
       *Last Void Time*
       *Number of Wet Diapers Today*
       *Date of Last Bowel Movement*
       *Stool Description*
       *Elimination Comment*

**Additional Findings**
       *Notes*

**Pediatric Sepsis Screening**

By RAYMOND ALMEDA, RN                                    on 07/21/15 at 1741


**Presenting History**
       *Presenting History*

**Additional Criteria**
       *Additional Criteria*

**Age Specific Assessment Parameters**
       *Less than 1 week*
       *One Week to One Month*
       *One Month to One Year*
       *One Year to Five Years*
       *Five Years to 12 Years*
       *12 Years to 18 Years*

**Meets Criteria**
       *Meets Criteria*                        No

**Interventions**
       *Interventions*

```
DATE: 07/26/15 @ 0030        Glendale Memorial EDM ** LIVE **           PAGE 6
USER: AENJILY                    EDM Patient Record
```

Patient  GARCIA, PENELOPY E                           Account No  GA0241785490
Age/Sex  4Y 08M/F                                     Unit No  GM01068096

**Notification**
    *Name of Provider Notified*
    *Date Provider Notified*
    *Time Provider Notified*

**ED Discharge**

By JESSICA CRUZ, RN                                  on 07/21/15 at 2002


**Vital Signs**
    *Temperature (F)*
    *Temperature Source*
    *Pulse*
    *Respirations*
    *O2 Sat*

**Blood Pressure**
  *Occurrence #*
    *Blood Pressure Systolic*
    *Blood Pressure Diastolic*

**Pain**
    *Pain*                       Patient Denies Pain
    *Pain Intensity*
    *Pain Comment*

**IV Fluids Utilized**
    *Normal Saline 1000 ml*
    *Normal Saline 500 ml*
    *Normal Saline 250 ml*
    *Normal Saline 100 ml*
    *Normal Saline 50 ml*
    *D5 Normal Saline 1 liter*
    *D5 1/2 NS 1 liter*
    *D5 Lactated Ringers 1 liter*
    *Lactated Ringers 1 liter*
    *D5W 250 ml*
    *D5W 50 ml*

**IV Discontinued**
    *Date IV Site(s) Removed*
    *Time IV Site(s) Removed*
    *Complications*
    *IV Removed By*
    *IV Removal Reason*
    *Catheter Intact*

**Foley Catheter**
    *Leg Bag Applied and Patient Teaching Performed*
    *Date Catheter Discontinued*
    *Time Catheter Discontinued*

**Discharge Information**

```
DATE: 07/26/15 @ 0030        Glendale Memorial EDM ** LIVE **                PAGE 7
USER: AENJILY                    EDM Patient Record
```

| | |
|---|---|
| Patient  GARCIA,PENELOPY E | Account No.  GA0241785490 |
| Age/Sex  4Y 08M/F | Unit No.  CM01088096 |

```
    Discharged to                 Home
    Was follow up care ordered for the patient?
                                  No
    Was a PHS printed/downloaded for the patient?
                                  No
    Verbal/Written Instructions to Parent
    Rx Given to
    Verbalized Understanding       Yes
    Learning Barrier Addressed     Yes
    Readiness To Learn Assessed    Yes
    Accompanied By Driver          Yes
    Condition on Discharge         Stable
    Mode Of Departure              Walk
    Left AMA/LWBS
    Discharge Comment
```

**Admission Information**
```
    Patient Admitted to
    Report Given to
    Time Report Given
    Total Skin Risk Score
    IV Site Remains Intact
    Transported by
    Transported via
    Transported with
    Clothing List Completed
    Valuables Envelope Serial Number
    Pharmacy Security Bag Serial Number
    Admission Comment
```

**Transfer Information**
```
    Transferred to
    Report Called To
    Transport Treatment/Equipment
    Transfer Documentation Completed
    IV Site Intact Upon Transfer
    Level of Transport
    Transport Company
    Transfer Comment
```

**Departure Assessment**
```
    Focussed assessment completed prior to departure
                                  Yes
    Pt general condition at the time of departure

                          no acute distress.
```

**Patient Notes**

**By: REYNALYN FLORES, RN                            On: 07/21/15 - 1752**
```
    1750-Paged Sally Gonzalez, SW.

    AMENDMENT  REYNALYN FLORES, RN - 07/21/15 - 1756
```

```
DATE: 07/26/15 @ 0030        Glendale Memorial EDM ** LIVE **              PAGE 8
USER: AENJILY                     EDM Patient Record
```

| Patient  GARCIA, PENELOPY E | Account No  GA0241785490 |
|---|---|
| Age/Sex  4Y 08M/F | Unit No  GM01068096 |

*818-868-1433*

**By: REYNALYN FLORES, RN**            **On: 07/21/15 - 1754**
   Return call from Sally. Made aware regarding ED visit. States will be here in
about an hour.

**By: JESSICA CRUZ, RN**            **On: 07/21/15 - 1930**
   social work at bedside.

---

**Treatments**

**ED *Peds Reassessment 1-8y**

**By JESSICA CRUZ, RN**            **on 07/21/15 at 1940**

**Temperature**
   *Temperature (F)*
   *Source*

**Pulse**
   *Pulse*            109 (bpm)

**Respirations**
   *Respirations*            21 (breaths/min)
   *Oxygen Delivery Method*     Room Air
   *O2 Sat %*            99
   *Oxygen Flow Rate*
   *FiO2*

**Blood Pressure**
   <u>Occurrence #</u>
   *Systolic*
   *Diastolic*
   *Mean*
   *Location*
   *Source*
   *Position*

**Comment**
   *Vital Signs Comment*

**Cardiac Rhythm**
   *Cardiac Rhythm*
   *Cardiac Rhythm Comment*

**Pain**
   *Pain Reassessment*        Patient Denies Pain
   *Pain Reassessment Score*
   *Pain Scale Used*
   *Pain Comment*

**Elimination**

```
DATE: 07/26/15 @ 0030        Glendale Memorial EDM ** LIVE **              PAGE 9
USER: AENJILY                    EDM Patient Record
```

| Patient   GARCIA,PENELOPY E | Account No  GA0241785490 |
|---|---|
| Age/Sex   4Y 08M/F | Unit No  GM01068096 |

```
    Elimination
    Elimination Comment

Comfort Measures
    Comfort Measures Provided        Juice
    Other

Reassessment
    Reassessment Findings
    Reassessment Due at
```

### Diagnoses

```
V71.5        OBSERV FOLLOWING RAPE
V71.5        OBSERV FOLLOWING RAPE
```

### Patient Instructions

Child Abuse, Suspected

### Additional Instructions

Please schedule a follow-up appointment with your primary
physician within 48 hours of your Emergency Department visit.  If
you do not have a primary physician, please call our Doctor
Finder Service at (818) 502-BEST (2378) for assistance.
If your condition worsens, please return to the Emergency
Department.

### Referrals

GARCIA,PENELOPY E has been referred to the below for follow up care:

    NOT ON STAFF,PHYSICIAN
    Fax: 111-111-1111

```
 Age/Sex: 4Y 08M F              GARCIA,PENELOPY E(DEP ER)              Page: 1
  Unit #: GM01068096                     GED-                  Printed 07/24/15 at 0115
Account#: GA0241785490                                   Period ending 07/24/15 at 0115
Admitted:                        Glendale Memorial PCS ** LIVE **     PATIENT CARE NOTES
```

| Occurred Date Time | Recorded Date Time By | Notes: All Categories Category |
|---|---|---|

07/21/15 1752 07/21/15 1753 RAF                    Emergency Room Nurse
1750-Paged Sally Gonzalez, SW.

Addendum: 07/21/15 at 1756 by RFLORES002

818-868-1433
07/21/15 1754 07/21/15 1756 RAF                    Emergency Room Nurse
Return call from Sally. Made aware regarding ED visit. States will be here in
about an hour.
07/21/15 1930 07/21/15 2002   JC                   Emergency Room Nurse
social work at bedside.

| Occurred Date Time | Recorded Date Time By | Notes: All Categories Category |
|---|---|---|

07/21/15 1957 07/21/15 2018 SG                           Social Work
SW paged and requested to come in to evaluate pt due to suspected sexual abuse. SW met with
pt and pt's mother, Lucy Ulikhanova 310-975-4240 who stated that pt's father has been
harassing and threatening pt's mother. Prior to pt being admitted to Glendale Memorial
Hospital pt's mother made a report to glendale police department and per police department
advised pt to admit pt to hospital and request a genital exam due to history (approximately
1 year ago) of suspected sexual abuse. According to pt's mother, pt has not seen father for
more than a year. Pt's mother reported that a DCFS case was made 1 year ago and case was
closed. Judge assigned to case and ruled that full custody be given to pt's mother and
father may only have monitored visitation rights (6 hrs a week). ED physician report
indicated that there is no evidence of ruptured vagina. When pt's mother was asked if she
took pt to hospital when sexual abuse took place, pt's mother stated that she did not due to
no one advising her and having other concerns arising at the same time. According to pt's
mother, pt is now verbal and is reporting what her father did to her 1 year ago (daddy bit
me in my bobo "vagina area"). According to pt's mother, the pt and she are receiving
therapy. SW attempted to speak with DCFS worker but line was busy and was asked to leave
contact name and number (call reference number 0721-008). SW will wait to receive a call
back but at this time SW feels that there is no need to proceed with DCFS report due to pt's
mother claiming that a DCFS report was made a year ago and case was closed due to judge's
determination (mother granted full custody and father right to monitored visitation rights).

Addendum: 07/21/15 at 2031 by SALLY GONZALEZ

Call received from Evonne Molina (DCFS SW) and report made. Pending reference number in
order to proceed with final report.
07/22/15 0732 07/22/15 0734 SG                           Social Work
Call received last night (7/21/15) from DCFS representative providing reference number
0721-0391-7016-3065075. SW attempted to make DCFS report but was unable to do so. System did
not permit this SW to enter report. SW contacted DCFS and was informed to retry in 2 hours.
SW to come in on 7/22/15 and attempt to place report.
07/22/15 0734 07/22/15 0743 SG                           Social Work
APS report filled this morning and DCFS county SW to follow up to assist with further
investigation.

Addendum: 07/22/15 at 0746 by SALLY GONZALEZ

Your Referral Number is: 0727-0391-7016-3065075

Your Tracking Number is: CNAWG-SRGVB-073532

```
Age/Sex: 4Y 08M F              GARCIA,PENELOPY E(DEP ER)                        Page: 2
 Unit #: GM01068096                    GED-                      Printed 07/24/15 at 0115
Account#: GA0241785490                                   Period ending 07/24/15 at 0115
Admitted:                      Glendale Memorial PCS ** LIVE **      PATIENT CARE NOTES
```

| Monogram | Initials | Name | Care Provider Type | User Key |
|----------|----------|------|--------------------|----------|
| JC | JCRUZ001 | JESSICA CRUZ | RN | |
| RAF | RFLORES002 | REYNALYN FLORES | RN | |
| SG | SGONZA017 | SALLY GONZALEZ | SW | |



## CONDITIONS OF ADMISSION

### (For Use for Inpatients Outpatients and Emergency Department Patients)

---

**Terms Used in this Form**

**"Hospital"** means: Glendale Memorial Hospital and Health Center
**"Patient"** means the person identified in the registration block.
**"Patient's legal representative"** can be the Patient's parent, guardian, conservator, or any other person authorized to sign this document for the Patient's, such as an agent under an advanced directive.
**"You" or "Your"** refers to the person signing this document and can be the Patient or the Patient's legal representative.
**"We" or "us"** or **"our"** refers to the Hospital.
**"Insurance company"** means a HMO, health plan, indemnity plan, government plan or insurance company.
**"Full charges"** means the Hospital's published rates (called the chargemaster), prior to any discounts or reductions.

---

By signing this form, you agree to all of the following provisions:

**1. Consent to Medical and Surgical Procedures**
You consent to the procedures that may be performed during this Hospital stay or provided as an outpatient. These may include emergency treatment or services, laboratory procedures, X-ray examinations, medical or surgical treatment or procedures, anesthesia, or other hospital services provided to the Patient under the general and special instructions of the doctor. Some treatment or services may be provided through telemedicine. You agree that the Hospital and doctors may access and use your non-hospital pharmacy records in connection with this Hospital stay or visit. You understand that the practice of medicine and surgery is not an exact science. You understand that diagnosis and treatment may involve risks of injury or even death. You acknowledge that We make no guarantees to You about the result of examination or treatment in this Hospital. If the Patient delivers an infant(s) at this Hospital, You agree that these same Conditions of Admission apply to the infant(s).

**2. Consent to Electronic Recording**
You consent to our use of photography, audio or video recording or other electronic imaging as required for diagnosis or treatment of the Patient and for other internal Hospital purposes. We will not use the Patient's image for marketing or fundraising unless we get Your separate authorization in writing. We may take the Patient's picture to confirm and protect his/her identity.

**3. General Duty Nursing Care**
The Hospital provides only general nursing care and services ordered by the doctor(s). If You want a private duty nurse and the doctor agrees, You agree to make the arrangements at the Patient's expense. The Hospital is not responsible for not providing a private duty nurse. You release the Hospital from any and all liability from the use of a private duty nurse or the fact that the Hospital does not provide this additional care.

**4. Participation of Residents and Health Care Students**
We may participate in programs to teach resident doctors, medical students, student nurses, and/or other health care students. These persons may observe or participate in the Patient's care under the supervision of doctors, nurses and other professionals on the Hospital's staff.

**5. Legal Relationship between Hospital and Doctors** *Patient/Legal Representative Initials:*
Doctors and surgeons providing services to the Patient, including the radiologist, pathologist, emergency doctors, hospitalist, anesthesiologist, intensive care doctors and others, are not employees or agents of the Hospital. They have been granted the privilege of using the hospital for the care and treatment of their patients, but they are not employees. ***You will receive a separate bill from the doctors for their services.***

---



**Dignity Health™**
**Glendale Memorial Hospital and Health Center**

**CONDITIONS OF ADMISSION AND TREATMENT**

X-GM-120 (01/13)

Page 1 of 4

GARCIA,PENELOPY E
MR: GM01068096  Acct: GA0241785490

DOB:11/05/2010 4Y 08M F
Admit:

Glendale Memorial Hospital

    

You understand that the Patient is under the care and supervision of the attending doctor. The Hospital and its staff are responsible for carrying out the doctor's instructions. Your doctor or surgeon is responsible for obtaining Your informed consent, when required, for medical or surgical treatment, special diagnostic or therapeutic procedures, or Hospital services provided to You under your doctor's general and special instructions.

### 6. Release of Information
You will be given a Notice of Privacy Practices that explains how the hospital may use information about the Patient. The Notice of Privacy Practices is available on the Hospital's website under *Patient Privacy Notice*. The Notice of Privacy Practices explains that we will obtain Your written authorization to release information about the Patient, unless We are allowed or required by law to disclose the information without authorization.

### 7. Personal Belongings
You should leave personal items at home. The Hospital has a fireproof safe for the safekeeping of money and valuables. The Hospital is not liable for the loss or damage to any money, jewelry, documents or other articles not placed in the safe. Hospital liability for loss of any property given to the Hospital for safekeeping is limited by law to five hundred dollars ($500) unless You receive a written receipt for a greater amount.

### 8. Financial Agreement; Assignment of Benefits/Appeal Rights
**a. Insured Patients.** We will bill the patient's insurance company for all the services provided during this stay. Co-payments, co-insurance and deductibles required by the insurance company must be paid by the Patient. Payment may be requested before or at the time of service. If the insurance company or benefit plan denies all or part of the payment, the Patient agrees to be responsible to pay any amounts due to the Hospital under the law. The Patient also assigns all the Patient's rights under the Employee Retirement Income Security Act ("ERISA") or any other applicable state or federal law to Hospital to appeal the denial or underpayment and to seek all legal remedies on behalf of the Patient in any forum against any entity. Some common reasons an insurance company may deny payment are:

- The service is not covered
- The hospital is not in the insurance company's network
- Advance authorization from the insurance company was required and not obtained
- The insurance company determines the service is not medically necessary

By signing this form, You authorize us to submit a claim for payment to the Patient's insurance company or benefit plan for the services provided to the Patient. You authorize us to dispute any denials or underpayments to, or legally pursue legal remedies against, the Patient's insurance company or benefit plan. You authorize and direct the insurance company or benefit plan to make direct payments to us for such services, and to accept and adjudicate appeals from the Hospital on your behalf. You appoint Hospital as the Patient's personal representative to pursue all benefit rights. You also agree the Patient is financially responsible as allowed by law for any charges not paid by the insurer or benefit plan.

**b. Uninsured Patients.** Patients without insurance must pay for services at full charges, unless other discounts apply. Uninsured patients may qualify for government programs or financial assistance. Financial assistance may include a discount from the Hospital's full charges, free care, interest free payment plans or other assistance. Patients asking for government or financial assistance must complete an application (see Paragraph 9).



**Dignity Health™**
**Glendale Memorial Hospital and Health Center**

**CONDITIONS OF ADMISSION AND TREATMENT**

X-GM-120 (01/13)          Page 2 of 4

Glendale Memorial Hospital
DOB:11/05/2010 4Y 08M F
Admit:
MR: GMO1060096  Acct: GAO241785490
GARCIA, PENELOPY E



**c. Additional Terms.** (i) **We may disclose your information to other agencies or firms as needed, for the sole purpose of getting a standard credit report on the undersigned. That credit report may include investigations of personal credit history, employment and other financial situations.** (ii) All past due accounts will be charged interest at the legal rate. If we send the Patient's account to a collection agency or an attorney, the Patient agrees to pay the Hospital's reasonable attorneys' fees, costs and collection expenses. (iii) If a person other than You (or the Patient's estate) agrees to pay for the services provided to the Patient during this stay, that person must sign the Financial Responsibility Agreement below.

**d. Title to Property Used in Services.** Title to all tangible items delivered to or used in providing services ("medical supplies", which excludes durable medical equipment) to Medicare patients will pass to the Patient on the first date the medical supplies are used in treating the Patient. Any warranty for that property is limited to the manufacturer's warranty, if any. Patient consents to the Hospital's disposal of any medical waste as required by law.

**9.  Financial Assistance**
We can help uninsured patients enroll in government health care programs, such as Medi-Cal. If the Patient is uninsured and does not qualify for government programs, financial assistance may be available under Dignity Health's Patient Financial Assistance Policy. To get assistance under this policy, You must complete an application and give certain financial information. You will be given a brochure that explains our billing process and our financial assistance programs. You may ask to talk to financial counseling staff at any time.

**10.  Third Party Liability**
If We are treating the Patient for injuries caused by the actions of others, We may have the right to additional payments if the Patient recovers money from the person or entity that caused the injury. If allowed by law, We may make a claim against any award of money to the Patient. We may recover an amount equal to the difference between full charges and the amount the Patient or the Patient's insurance company paid for the Hospital services. You agree to provide us the name of any person that may have caused the Patient's injuries, the name of the person's insurance company, the name of the Patient's lawyer and any other information that may help us exercise our rights.

**11.  Patient Certification:**  *By signing this form, You certify that:*
· *You have read this form*
· *You have received a copy of the form*
· *You were given the opportunity to ask questions*
· *You understand what it means*
· *You are the Patient or the Patient's Legal Representative*
· *You have received the Hospital Billing Process brochure.*
· *You have received information informing You of your Patient Rights and Responsibilities.*
· *You have received information advising You of the Hospital's policy for implementation of defined Advance Directives.*

Notice to consumers: Medical doctors are licensed and regulated by the Medical Board of California (800) 633-2322 www.mbc.ca.gov and Physician Assistants are licensed and regulated by the Physician Assistant Committee (916) 561-8780 www.pac.ca.gov



**Dignity Health.**
**Glendale Memorial Hospital**
**and Health Center**

**CONDITIONS OF ADMISSION**
**AND TREATMENT**

X-GM-120 (01/13)          Page 3 of 4

Patient Label

Signature: _____ Date: 7/21/15 0540 Time: _____ A.M./P.M.
[Patient or Patient's Legal Representative]

Name: _____ Relationship to the Patient: Self
[Print Name] Mother

Witness Signature: _____

**Financial Responsibility Agreement by Person Other than the Patient or Patient's Legal Representative:**
I agree to accept financial responsibility for services given to the Patient. In particular, I accept the terms of the
Financial Agreement, Assignment of Insurance Benefits, and Third Party Liability provisions as stated above.

Signature: _____ Date: _____ Time: _____ A.M./P.M.
[Financially Responsible Party]

Name: _____ Relationship to the Patient: _____
[Print Name]

Witness Signature: _____

**For Hospital Use Only: Compliance with Advance Directive Policies**
*Hospital representative must check one and sign:*

❑ The Patient is incapacitated or otherwise unable to communicate, the advance directive information has
been provided to the patient's family or surrogate in accordance with Federal and State law.

❑ The Patient is unable to receive information regarding advance directives at this time and is not
accompanied by a legal representative. A referral will be made to the Hospital Department responsible for
follow-up.

☑ The Patient has been given written information about his/her right under state laws to make advance
directives and written Hospital policies regarding the Hospital's implementation of such right.
*Also select from below:*
    ❑ The Patient has a written advance directive about health care decisions and:
        ❑ A copy has been given to the Hospital.
        ❑ A copy has not been given to the Hospital, but the Patient has been informed of Patient's
        responsibility to give a copy to the Hospital.
                **OR**
☑ The Patient does not have a written advance directive about health care decisions and:
    ❑ Wants information, a follow-up referral will be made.
    ☑ Does not wish further information now.

Completed by: _____ Date: 7/21/15 Time: 0540 PM

✿ **Dignity Health™**
**Glendale Memorial Hospital
and Health Center**

**CONDITIONS OF ADMISSION
AND TREATMENT**

X-GM-120 (01/13)        Page 4 of 4

GARCIA, PENELOPY E
MR: GM01068096   Acct: GA0241785490
DOB:11/05/2010 4Y 08M F
Admit:
Glendale Memorial Hospital





## PATIENTS RIGHTS AND RESPONSIBILITIES
*You have the right to:*

1. Considerate and respectful care, and to be made comfortable. You have the right to respect for your cultural, psychosocial, spiritual, and personal values, beliefs, and preferences.
2. Have a family member (or other representative of your choosing) and your own physician notified promptly of your admission to the hospital.
3. Know the name of the physician who has primary responsibility for coordinating your care and the names and professional relationships of other physicians and non-physicians who will see you.
4. Receive information about your health status, diagnosis, prognosis, course of treatment, prospects for recovery and outcomes of care (including unanticipated outcomes) in terms you can understand. You have the right to effective communication and to participate in the development and implementation of your plan of care. You have the right to participate in ethical questions that arise in the course of your care, including issues of conflict resolution, withholding resuscitative services, and forgoing or withdrawing life-sustaining treatment.
5. Make decisions regarding medical care, and receive as much information about any proposed treatment or procedure as you may need in order to give informed consent or to refuse a course of treatment. Except in emergencies, this information shall include a description of the procedure or treatment, the medically significant risks involved, alternate courses of treatment or non-treatment and the risks involved in each, and the name of the person who will carry out the procedure or treatment.
6. Request or refuse treatment, to the extent permitted by law. However, you do not have the right to demand inappropriate or medically unnecessary treatment or services. You have the right to leave the hospital even against the advice of physicians, to the extent permitted by law.
7. Be advised if the hospital/personal physician proposes to engage in or perform human experimentation affecting your care or treatment. You have the right to refuse to participate in such research projects.
8. Reasonable responses to any reasonable requests made for service.
9. Appropriate assessment and management of your pain, information about pain, pain relief measures and to participate in pain management decisions. You may request or reject the use of any or all modalities to relieve the pain, including opiate medication, if you suffer from severe chronic intractable pain. The doctor may refuse to prescribe opiate medication, but if so, must inform you that there are physicians who specialize in the treatment of severe chronic pain with methods that include the use of opiates.
10. Formulate advance directives. This includes designating a decision maker if you become incapable of understanding a proposed treatment or become unable to communicate your wishes regarding care. Hospital staff and practitioners who provide care in the hospital shall comply with these directives. All patient rights apply to the person who has legal responsibility to make decisions regarding medical care on your behalf.
11. Have personal privacy respected. Case discussion, consultation, examination and treatment are confidential and should be conducted discreetly. You have the right to be told the reason for the presence of any individual. You have the right to have visitors leave prior to an examination and when treatment issues are being discussed. Privacy curtains will be used in semi-private rooms.
12. Confidential treatment of all communications and records pertaining to your care and stay in the hospital. You will receive a separate "Notice of Privacy Practices" that explains your privacy rights in detail and how we may use and disclose your protected health information.

*I do hereby acknowledge that I have received copies of my rights and Responsibilities as a patient at Glendale Memorial Hospital and of the rules and regulations governing my conduct and responsibilities as a patient.*

_____   _____   _____
(Date/Time)                              (Witness)

_____
(Patient Signature/Patient Representative)

GARCIA, PENELOPY E
MR: GM01068096   Acct: GA0241785490

DOB: 11/05/2010 4Y 08M F
Admit:

Glendale Memorial Hospital

Dignity Health.
Glendale Memorial Hospital
and Health Center

01-141 MRR 4/09     PATIENT'S RESPONSIBILITIES
AND
RIGHTS ACKNOWLEDGMENT

  

13. Receive care in a safe setting, free from mental, physical, sexual or verbal abuse and neglect, exploitation or harassment. You have the right to access protective and advocacy services including notifying government agencies of neglect or abuse.

14. Be free from restraints and seclusion of any form used as a means of coercion, discipline, convenience or retaliation by staff.

15. Reasonable continuity of care and to know in advance the time and location of appointments as well as the identity of the persons providing the care.

16. Be informed by the physician, or a delegate of the physician, of continuing health care requirements and options following discharge from the hospital. You have the right to be involved in the development and implementation of your discharge plan. Upon your request, a friend or family member may be provided with this information also.

17. Know which hospital rules and policies apply to your conduct while a patient.

18. Designate visitors of your choosing, if you have decision-making capacity, whether or not the visitor is related by blood or marriage, unless:
   • No visitors are allowed.
   • The facility reasonably determines that the presence of a particular visitor would endanger the health or safety of a patient, a member of the health facility staff or other visitor to the health facility, or would significantly disrupt the operations of the facility.
   • You have told the health facility staff that you no longer want a particular person to visit.
However, a health facility may establish reasonable restrictions upon visitation, including restrictions upon the hours of visitation and number of visitors.

19. Have your wishes considered, if you lack decision-making capacity, for the purposes of determining who may visit. The method of that consideration will be disclosed in the hospital policy on visitation. At a minimum, the hospital shall include any persons living in your household.

20. Examine and receive an explanation of the hospital's bill regardless of the source of payment.

21. Exercise these rights without regard to sex, race, color, religion, ancestry, national origin, age, disability, medical condition, marital status, sexual orientation, educational background, economic status or the source of payment for care.

22. File a grievance. If you want to file a grievance with this hospital, you may do so by bringing your concerns firths to the attention of:
   a) Your care provider such as your nurse and/or the person in charge of the department where the concern is, has taken place.
   b) If your issue is not resolved, then your are encouraged to please contact Glendale Memorial Hospital and Health Center's Patient Representative at (818) 409-7664.
   c) The Patient Representative will forward issues that can not be resolved at this level to the Chair of the Grievance Committee.

   The grievance committee will review each grievance and provide you with a written response within 7 days. The written response will contain the name of a person to contact at the hospital, the steps taken to investigate the grievance, the results of the grievance process, and the date of completion of the grievance process. Concerns regarding quality of care or premature discharge will also be referred to the appropriate Utilization and Quality Control Peer Review Organization (PRO). If after contacting us, you feel we still have not adequately addressed your concerns about patient safety and/or quality of care standards, please feel free to contact *the Joint Commission using the contact information below. The Joint Commission, Office of Quality Monitoring; One Renaissance Blvd.; Oakbrook Terrace, IL 60181; Phone: (800) 994-6610; Fax : (630) 792-5636 E-mail: complaint@jointcommission.org*

23. File a complaint with the state *Department of Health Services regardless of whether you use the hospital's grievance process. The state Department of Health Service's ph ˑ number and address is: California Department of Public Health Licensing and Certification; 5555 Ferguson ˑ ˑˑ Commerce, California 90022;Phone: (323) 869-8207Fax: (323) 890-8751*



**Dignity Health**
Glendale Memorial Hospital
and Health Center

01-141 MRR 4/09

**PATIENT'S RESPONSIBILITIES
AND
RIGHTS ACKNOWLEDGMENT**

LABEL



## Dignity Health.
### Glendale Memorial Hospital and Health Center

## <u>Joint Notice of Privacy Practices for Health Information (NPP)</u>
## <u>Acknowledgment Form</u>

Effective April 14, 2003, the law requires that Glendale Memorial Hospital give to a patient a copy of its Notice of Privacy Practices for Health Information. We will give you a copy at the time of first treatment and, if we change our notice, thereafter at the next treatment visit. By signing below, you acknowledge receipt of such as the patient, the patient's personal representative, the patient's authorized agent, or an individual involved in the patient's medical care.

Patient Name: _____

GARCIA, PENELOPY E   Acct: GA0241785490
MR: GM01068096
DOB:11/05/2010 4Y 08M F
Admit:
Glendale Memorial Hospital

Acknowledgment Signature: _____   Date: 7/21/15

Print Name: _____   Relationship to patient: Mother
(if signed by someone other than patient)

---

### For Official Hospital Use

I provided a copy of the NPP to the patient (or personal representative) but was unable to obtain his or her written acknowledgment of receipt of such for the following reasons:

☐True emergency      ☐ Patient confused/disoriented
☐Patient non responsive      ☐ Patient sedated    _____

I have attempted to provide to the patient (or personal representative) a copy of the NPP, but was unable to do so for the following reasons:

☐True emergency      ☐ Patient confused/disoriented
☐Patient non responsive      ☐ Patient sedated    _____

Signature of Hospital Representative: _____ Date: _____

Print Name: _____   Department: _____

NPP Version: April 14, 2003
13-123 MRR 4/03

35 of 37



**Dignity Health**
Glendale Memorial Hospital
and Health Center

## Smoking Cessation Advice

The Advice/counseling has been given in the materials provided to the patient.

- ☒ Yes

- o   No (please mark the reason why)
    - o   Patient Refused
    - o   Medical Condition
    - o   Other _____

(mother)

Patient/Patient Representative Signature _____

Date: ___7/21/16___   / Time: ___0540___ AM/PM

Staff initial _____

GARCIA,PENELOPY E
MR: GM01068096   Acct: GA0241785490

DOB:11/05/2010 4Y 08M F
Admit:

Glendale Memorial Hospital

14-773 R. 04/09

## Visitation Guidelines

☑ **English:**

I (or my representative) have received a written copy of the hospital's visitation guidelines.

☐ **Armenian:**

Ես (կամ իմ ներկայացուցիչը) ստացել եմ հիվանդանոցի այցելության կանոնների գրավոր օրինակը:

☐ **Spanish:**

Yo (o mi representante) he (hemos) recibido una copia escrita de las pautas de visitas del hospital.

☐ **Korean:**

본인(또는 본인의 대리인)은 병원 방문 지침의 서면 사본을 받았습니다.

Name or # of Translator Used: _____

Patient/Patient Representative Signature: X _____

Հիվանդի / հիվանդի ներկայացուցչի ստորագրությունը`
Firma del paciente/representante del paciente
환자/환자 대리인 서명

| Date: | Time: | AM/PM |
|---|---|---|
| Ամսաթիվը` _____ | ժամը _____ | |
| Fecha: _____ | Hora: _____ | |
| 날짜: _____ | 시간: _____ | 오전/오후 |

Staff Signature: _____

Date: 7/24/15 Time: 0540 AM/PM

**✿ Dignity Health.**
Glendale Memorial Hospital
and Health Center

C01-203 R. 1/12

Patient: GARCIA, PENELOPY E
MR: GM01068096  Acct: GA0241785490
DOB:11/05/2010 4Y 08M F
Admit:
Glendale Memorial Hospital