1  Liana Serobian, Esq. (SBN 235466)
2  Serobian Law, Inc.
   100 N. Brand Blvd., Suite 600
3  Glendale, CA 91203
   (818) 539-2249
4  L.Serobian@yahoo.com

5

6  Attorneys for Plaintiffs, Ulikhanova and Minor P.G.

7             **UNITED STATES DISTRICT COURT**

8             **CENTRAL DISTRICT OF CALIFORNIA**

9

10  LUCY ULIKHANOVA, *et al.*,              Case No. 2:17-CV-9193-FMO-E

11                Plaintiffs,               Hon. Fernando M. Olguin (Dist. Judge)
                                            Hon. Charles F. Eick (Mag. Judge)
12          v.
                                            **STATEMENT OF UNCONTROVERTED
13  COUNTY OF LOS ANGELES, *et al.*,        FACTS**

14                Defendants.               Complaint Filed: December 23, 2017
                                            FAC Filed: April 19, 2018
15                                          SAC Filed: May 18, 2018
                                            TAC Filed: July 2, 2018
16

17          PLEASE TAKE NOTICE:

18          Plaintiffs Ulikhanova and P.G. hereby submit their Joint Appendix of

19  Undisputed and Disputed Facts, pursuant to the Court's order on summary judgment

20  motions (ECF No. 19 ¶ 7.)

21

| No. | Fact | Evidence | Response | Evidence |
|-----|------|----------|----------|----------|
| 1. | Parents of P.G. are Ulikhanova and Brian G. | PJA Ex. 3, 1 | Undisputed. | |

24

25

26

27

28

| No. | Fact | Evidence | Response | Evidence |
|---|---|---|---|---|
| 2. | Defendant Stephen Carey ("Carey") is a Children's Social Worker (CSW) employed by the Los Angeles County Department of Children and Family Services (DCFS). | | Undisputed. | |
| 3. | Defendant Maral Helwajian ("Helwajian") is a CSW employed by DCFS. | | Undisputed. | |
| 4. | Carey is a Dependency Investigator CSW. | | Undisputed. | |
| 5. | Helwajian is a Continuing Services CSW. | | Undisputed. | |
| 6. | Dr. David Boxstein is a general pediatrician. | PJA Ex. 35 (Boxstein Dep.) | Undisputed. | |
| 7. | Dr. Boxstein was P.G.'s primary pedestrian before she was removed from Ulikhanova's care. | PJA Ex. 35 (Boxstein Dep.) | Undisputed, on the assumption that "pedestrian" is a typo for "pediatrician." | |

2

*Plaintiffs' Statement of Uncontroverted Facts*

| No. | Fact | Evidence | Response | Evidence |
|---|---|---|---|---|
| 8. | On October 4, 2015, an anonymous caller made a child neglect referral to the Department of Children and Family Services (DCFS) regarding Plaintiff Ulikhanova, alleging that while she was not a threat to herself or others, nor needed an involuntary hospitalization, she should be assessed for mental health issues and the impact on her child P.G. | (PJA Ex 2, p. 32, Ex. 4, p. 55.) | Disputed (conflicting evidence presented). | Declaration of Ryan A. Graham, Esq. ("Graham Declaration"), Ex. 13 (DCFS records), at COLA_003225 (caller not anonymous, identified himself as law enforcement from Glendale PD); *accord* Graham Declaration, Ex. 32 (police records), COLA_004109 (officer noting call to DCFS). |

3

| No. | Fact | Evidence | Response | Evidence |
|---|---|---|---|---|
| 9. | The referral was substantiated by DCFS and P.G. removed from Ulikhanova by way of a warrant for removal in January 2016 on the ground that mother was making statements that did not make sense, kept P.G. from father, and made false accusations of sexual abuse of P.G. against father. | (PJA, Ex. 1, pp. 12-30.) | Disputed (unsupported by evidence cited, conflicting evidence presented). | Graham Decl., Ex. 14 (Authorization for Removal), COLA_000033 (finding probable cause to remove P.G. because she required medical care, was in danger of physical/sexual abuse, etc.). |
| 10. | The application for the warrant did not disclose that per the existing Family Law court orders, Ulikhanova was the sole legal and physical custodian of P.G. and Brian had monitored visits due to the finding that he sexually abused P.G. | (PJA, Ex. 1, pp. 12-30.) | Disputed (conflicting evidence presented). | Graham Decl., Ex. 14 (Statement of Cause), COLA_000037 ("there is a Family Law order that grants the father monitored visits"), COLA_000055 ("mother went to family law court and obtained full custody of the child") |

4

| No. | Fact | Evidence | Response | Evidence |
|---|---|---|---|---|
| 11. | On January 19, 2016, DCFS filed a dependency petition with the juvenile court under Welfare and Institutions Code section 300, subdivision (b) alleging that P.G.'s father, Brian G., had an unresolved substance abuse problem and criminal history of driving under the influence of drugs/alcohol and mother had mental and emotional problems making it difficult to provide regular care for P.G. | (PJA, Ex. 3, 46-48.) | Undisputed. | |
| 12. | DCFS filed a detention report with the juvenile court requesting to detain P.G. from her parents. | (PJA, Ex. 4, p. 82.) | Disputed (unsupported by evidence cited). | The detention report's recommendation (PJA, Ex. 4, p. 84–86) make no such request. |
| 13. | DCFS did not attach to this detention report the existing Family Court orders governing the family. | (PJA, Ex. 4, p. 84.) | Undisputed. | |

| No. | Fact | Evidence | Response | Evidence |
|---|---|---|---|---|
| 14. | On January 19, 2016, the juvenile court found that prima facie evidence supported the emergency temporary detention of P.G. from parents and continued the matter for another detention hearing the next day. | (PJA, Ex. 5, pp. 109-110.) | Disputed (unsupported by evidence cited). | The minute order does not state it was detaining P.G. temporarily (PJA, Ex. 5, at 110 ¶ 11), it merely states that P.G.'s placement was temporary (PJA, Ex. 5, at 109 ¶ 8). |
| 15. | On January 20, 2016, the juvenile court maintained its temporary detention of P.G. and set the matter for a hearing on the petition. | (PJA, Ex. 6, 112-115.) | Undisputed. | |
| 16. | At the detention hearing on January 20, 2019, Mother was present and represented by counsel, who complained that none of the DCFS reports to the court reflected the previous Family Law orders and findings with respect to father sexually abusing P.G. | (PJA, Ex. 10, 143-144.) | Disputed (unsupported by evidence cited). | PJA, Ex. 10, 144:17–18 (Mr. Amazan complains that sexual abuse finding not reflected in a single report, not "none of the DCFS reports"), 145:3–5 (Garcia's counsel providing context that "report" refers to the dependency petition). |

6

| No. | Fact | Evidence | Response | Evidence |
|-----|------|----------|----------|----------|
| 17. | At the detention hearing on January 20, 2019, the juvenile court ordered DCFS to provide to the court the family court's orders governing the family and the visitation orders made by the family court in case number BD582295. | (PJA, Ex. 10, 147.) | Undisputed. | |
| 18. | At the detention hearing on January 20, 2019, the juvenile court stated that if the Family Law court made findings as to sexual abuse, the court should be made aware as well as the Department should file an appropriate amended petition if needed. | (PJA, Ex. 10, 147.) | Disputed (unsupported by evidence cited). | Ex. 10, 147:4–10 (juvenile court stating that, because it had ordered the family court file, "if, in fact, findings have been made, the court should be aware as well as [DCFS] if there were substantiated claims"). |
| 19. | Plaintiff Ulikhanova wrote emails to Defendants Helwajian and Carey objecting to P.G. being vaccinated February 12, 2016 to June 2016. | (PJA Ex. 7, 118-122; Ex. 12, p. 171, Ex. 16, Ex. 19, 230-231.) | Undisputed. | |

7

| No. | Fact | Evidence | Response | Evidence |
|---|---|---|---|---|
| 20. | On February 12, 2016, Ulikhanova attached three documents in her email to Defendant Helwajian that allowed her to previously enroll P.G. to a licensed daycare, St. Marks, without being immunized: Refusal to Vaccinate signed by P.G.'s pediatrician Dr. Boxstein dated November 13, 2012, and Personal Beliefs Exemption to Required Immunization and St. Mark's Physician's Report signed by Dr. Boxstein, both dated September 25, 2014. The same forms were send again to Defendants Carey on April 6, 2016. | (PJAEx. 7, 118-122; Ex. 16, p. 213-216.) | Disputed, in part. (1) The proposition that all three forms allowed Ulikhanova to enroll P.G. in St. Marks in unsupported by the evidence cited; (2) The proposition that St. Marks is a licensed daycare is unsupported by the evidence cited; (3) The proposition that the "refusal to vaccinate" form is signed by Dr. Boxstein conflicts with evidence presented; | PJA, Ex. 7, 121 ("Refusal to Vaccinate" form only signed by parent and witness); Graham Decl., Ex. 1 (Ulikhanova Dep.), 51:7–11 (P.G. never enrolled in daycare before being removed), 91:24–25 ("Again, Saint Mark's Day School is a pre-K. Pre-Kindergarten."), 233:22–234:4 (witness to "Refusal to Vaccinate" form was nurse in pediatrician's office). |

| No. | Fact | Evidence | Response | Evidence |
|-----|------|----------|----------|----------|
| 21. | On February 9, 2016, Defendant Maral Helwajian filed an Ex Parte Request with the juvenile court to have P.G. immunized over mother's objection, claiming that father, who had legal rights, wanted her immunized. | (PJA, Ex. 8, 127-128.) | Disputed (unsupported by evidence cited). | PJA, Ex. 8 at 127 (Helwajian does not request that P.G. affirmatively be vaccinated, but rather writes that "DCFS would like to ask the Court to make a recommendation/order regarding the minor being immunized."). |
| 22. | On February 25, 2019, the juvenile court held a hearing on the ex parte request to immunize and denied it on the grounds that it had not yet taken jurisdiction over P.G. and mother, as the sole legal custodian, had the decision-making rights as to both immunization and forensic examination. | (PJA, Ex. 10, 157.) | Disputed (conflicting evidence presented) | PJA, Ex. 10, 157:21–22 (juvenile court decides to defer, not deny, order on vaccination because copy of family court case file not received yet—not because of jurisdiction issues or Ulikhanova's claim to be sole decisionmaker). |

9

| No. | Fact | Evidence | Response | Evidence |
|---|---|---|---|---|
| 23. | For the first time in the juvenile case for P.G., on March 14, 2016, Defendant Carey attached for the court's review the Family Law Court's December 18, 2014, order making findings after a contested hearing at which father testified, that Minor P.G. was indeed sexually abused by father. | (PJA, Ex. 14, 190-192.) | Disputed, in part: (1) The proposition that this was the first time Carey attached the family court's Dec. 2014 order in unsupported by the evidence cited; (2) The proposition that the Dec. 2014 family court order makes findings that P.G. was sexually abused by Garcia conflicts with evidence presented. | PJA, Ex. 14, 191 ¶ 8 ("The Court finds that sexual abuse of the minor did occur," but not finding that it occurred by Garcia). |
| 24. | For the first time in the juvenile case for P.G., on March 14, 2016, Defendant Carey attached for the court's review the Family Court's existing custody orders granting mother sole legal and physical custody of P.G. and father monitored visits by a professional monitor. | (PJA, Ex. 14, 190-192.) | Undisputed. | |

*Plaintiffs' Statement of Uncontroverted Facts*

| No. | Fact | Evidence | Response | Evidence |
|-----|------|----------|----------|----------|
| 25. | Defendant Carey made no mention of the sexual abuse findings against father by the Family Law Court in the body of its jurisdiction report itself, but said that the only neutral party was a Glendale City police detective who did not charge father. | PJA, Ex. 14, 187 | Disputed (unsupported by evidence). | Cited evidence makes no reference to charging decisions, let alone by a Glendale City police detective. |
| 26. | In his jurisdiction report, Defendant Carey explained away father not visiting his daughter P.G. for two years stating he had no money to pay for visits. | PJA, Ex. 14, 187 | Undisputed. | |
| 27. | On March 28, 2016, the juvenile court ordered DCFS to file an amended petition to include sexual abuse and an amended report for amended petition. | (PJA, Ex. 13, p. 173, see also Ex. 10, 143-144.) | Disputed (unsupported by evidence cited). | Cited evidence includes no instruction to DCFS to include sexual abuse in any petition. |

*Plaintiffs' Statement of Uncontroverted Facts*

| No. | Fact | Evidence | Response | Evidence |
|-----|------|----------|----------|----------|
| 28. | On April 12, 2016, DCFS filed a First Amended Petition alleging among other things that Brian sexually abused P.G. and suffered from a Bipolar Disorder, and that mother had emotional problems and coached P.G. to make sexual abuse allegations against father. | (PJA, Ex. 15, 205-209.) | Disputed (unsupported by evidence cited). | |
| 29. | In a supplemental report for the June 9, 2016 hearing on the amended petition, Defendant Carey requested that the court set a hearing to immunize P.G. over mother's objection so that she could enroll in school. (PJA Ex 17, 222.) | (PJA Ex 17, 222.) | Undisputed. | |
| 30. | Defendant Carey failed to attach to the June 9, 2016, supplemental report to the court what mother previously emailed him - the Refusal to Vaccinate and the Personal Beliefs form, or the St. Marks Vaccination Exemption signed by P.G.'s pediatrician Dr. Boxstein. | (PJA Ex 17, 219-224) | Disputed (unsupported by evidence cited). | No support for assertion that forms were emailed to Defendant Carey. |

*Plaintiffs' Statement of Uncontroverted Facts*

| No. | Fact | Evidence | Response | Evidence |
|-----|------|----------|----------|----------|
| 31. | The June 9, 2016, hearing was continued to June 10, 2016. | (PJA Ex 20, 233-234.) | Undisputed. | |
| 32. | On June 10, 2016, over mother's objection, the court granted DCFS' requested order for P.G. to be immunized so that she could attend school and to salvage her placement. | (PJA Ex 21, p, 247.) | Undisputed. | |
| 33. | On June 10, 2019, the court issued a temporary restraining order against mother to protect the paternal aunt after mother placed a recording device in P.G.'s doll. That order expired on July 11, 2016. | (PJA Ex 21, p, 245-246.) (PJA Ex 22, p. 252.) | Disputed (likely typo). | The TRO was issued in 2016, not 2019. |
| 34. | For the doll incident, the criminal court granted mother a diversion and dismissed all charges on June 17, 2016, in lieu of the three-year restraining order to protect the paternal aunt. | (PJA Ex 34, 330-336.) | Disputed (unsupported by evidence cited). | |

13

| No. | Fact | Evidence | Response | Evidence |
|-----|------|----------|----------|----------|
| 35. | The juvenile court held the jurisdictional hearing on the amended petition on August 16, 2016, when mother and father waived their right to trial and pled no contest. The court dismissed all of the original allegation and sustained an amended count that their conflict caused the child harm. | (PJA, Ex 23, 255-256.) (PJA Ex. 15, 207-209.) | Undisputed. | |
| 36. | The juvenile court held the disposition hearing on October 17, 2016, when the juvenile court declared P.G. a dependent of the court and removed her from Ulikhanova's custody. The juvenile court ordered Ulikhanova and Brian to complete a case plan to reunify with P.G. | (PJA Ex. 24, 259-260 | Undisputed. | |

14

| No. | Fact | Evidence | Response | Evidence |
|-----|------|----------|----------|----------|
| 37. | Defendants Helwajian and Carey testified during their depositions that all along the dependency case, Brian was not compliant with the juvenile court case plan and tested positive for methamphetamine or missed scheduled drug tests. Brian was only permitted monitored contact with P.G. throughout the dependency case. | (PJA Ex. 36, 502-503; Ex. 37, 637-639.) | Disputed (compound fact, unsupported by evidence, in part). | |
| 38. | Defendant Helwajian testified at her deposition that Brian threatened social workers or visitation monitors, including Helwajian, that she would regret this, that he was not going down without a fight, and that there would be "guns a-blazing" and harm. | (PJA Ex. 36, 503-505.) | Disputed (compound fact, unsupported by evidence, in part). | |

*Plaintiffs' Statement of Uncontroverted Facts*

| No. | Fact | Evidence | Response | Evidence |
|-----|------|----------|----------|----------|
| 39. | Initially, P.G. was placed in the home of her paternal great aunt, who Ulikhanova suspected allowed Brian unauthorized access to P.G. since she didn't believe that the sexual abuse occurred. | (PJA, Ex. 36, p. 552-557.) | Undisputed. | |
| 40. | Shortly before Christmas 2016, DCFS removed P.G. from the paternal aunt's home. | (PJA, Ex. 36, 552-558.) | Undisputed. | |
| 41. | Helwajian testified at her deposition that all along the dependency case, Ulikhanova complied with the juvenile court case plan and successfully reunified with her daughter P.G. | (PJA, Ex. 36, 501-502.) | Disputed (unsupported by evidence cited). | Cited testimony does not state Ulikhanova was compliant in any particular duration or degree. |
| 42. | In May 2017, P.G. was returned to her mother Ulikhanova under the court's supervision of family maintenance. | (PJA, Ex. 36, 501-502.) | Undisputed. | |
| 43. | Ulikhanova obtained a medical exemption which permanently permitted P.G. to be enrolled in a public school without further immunizations due to the family history of autoimmune disease. | (PJA, Ex. 36, 545-546.) | Disputed (unsupported by evidence cited). | Cited testimony does not concern autoimmune diseases. |

16

*Plaintiffs' Statement of Uncontroverted Facts*

| No. | Fact | Evidence | Response | Evidence |
|-----|------|----------|----------|----------|
| 44. | in December 2017, the court terminated its jurisdiction over P.G. with family law exit orders mirroring the ones that existed before the juvenile court case started – sole legal and physical custody to Ulikhanova over P.G. and monitored visits to Brian. | (PJA, Ex. 14, 190-192; Ex. 28, 293.) | Disputed (compound, not supported by evidence cited). | Juvenile court order does not disclose the terms of P.G.'s custody upon termination of jurisdiction. |
| 45. | Defendant Helwajian admitted at her deposition that mother requested to be present during P.G.'s medical appointments, including the vaccination, but Helwajian denied this request, explaining there was a conflict between the paternal aunt and mother. Mother was not given the date, time or place of these appointments. | (PJA Ex. 36, pp. 548-550.) | Disputed (not supported by evidence). | Helwajian does not testify as to request made by Ulikhanova. |
| 46. | Defendant Helwajian acknowledged that mother could have easily gone with a monitor if permitted to P.G.'s medical appointements in lieu of the aunt. | (PJA Ex. 36, pp. 548-550.) | Disputed (not supported by evidence cited). | Helwajian does not testify as to it being "easy." |

17

| No. | Fact | Evidence | Response | Evidence |
|-----|------|----------|----------|----------|
| 47. | Both Defendants Helwajian and Carey testified at depositions that they did not ask mother, who still retained education rights, if she wanted to skip or enroll P.G. in public school although acknowledged that the right was that of a parent to skip kindergarten. | (PJA, Ex. 36, 506-507; Ex. 37, 603-605.) | Disputed, in part: proposition that Helwajian acknowledged that it was right of a parent to skip kindergarten is not supported by the evidence cited. | Ex. 36, 506:21–24 (Helwajian refers to school generally, not public school). |

18

| 48. | Both Defendants Helwajian and Carey testified at their depositions that DCFS provided them with no training as to the parents' medical and education decision making rights and they had no idea what the grandfather's clause meant. | (PJA, Ex. 36, 544, 567; Ex. 37, 603-605, 607-610, 633-634.) | Disputed, in part:<br><br>(1) proposition that Helwajian testified that she had no idea what the "grandfather's clause" meant is unsupported by evidence cited;<br><br>(2) proposition that Carey testified that DCFS did not provide trainings on educational rights is unsupported by evidence cited;<br><br>(3) proposition that Helwajian testified that DCFS did not provide trainings on educational rights is unsupported by evidence cited;<br><br>(4) proposition that Carey testified that medical decisionmaking was not subject of training is unsupported by evidence cited;<br><br>(5) proposition that Helwajian testified that DCFS did not provide | |

*Plaintiffs' Statement of Uncontroverted Facts*

| No. | Fact | Evidence | Response | Evidence |
|-----|------|----------|----------|----------|
|  |  |  | trainings on medical decisionmaking is unsupported by the evidence cited. |  |
| 49. | Defendant Helwajian's deposition reflects this dialogue: "Q.· ·But as for you, you have not been called to attend a training for past or present vaccination laws of the State of California?· · · ·A.· ·No, no training on vaccinations, ever." | (PJA, Ex. 36, pp. 544, 567.) | Undisputed. |  |
| 50. | Defendant Carey had been a social worker for 24 years and Helwajian for 10 years. | (PJA, Ex. 36, p. 499; Ex. 37, 603-604.) | Undisputed. |  |
| D51. | Helwajian, in her February 2016 Ex Parte Application filed with the juvenile court, only referred to school twice: "as of 1/1/2016 the new law says that every child in a school/daycare setting needs immunizations" and "The Father would like the child to be able to attend school, but Mother refuses school until age 6." | (PJA, Ex. 8, 127.) |  |  |

*Plaintiffs' Statement of Uncontroverted Facts*

| No. | Fact | Evidence | Response | Evidence |
|-----|------|----------|----------|----------|
| D52. | Carey, in his June 2016 Supplemental Report, stated the following regarding school: "Penelope needs to be enrolled in school, but since she is not immunized, she cannot enroll in school. The home school closest to [Reisch] is already full." | (PJA, Ex. 17, 222.) | | |
| D53. | At the January 20, 2016 detention hearing, Judge Arakaki "indicate[d] that the parents do remain the educational rights holders and developmental decision makers for [P.G.]" | PJA, Ex. 10, 146:26–28 | | |
| D54. | At the February 25, 2016 hearing, Judge Arakaki ordered the "parents are still the educational rights holders and developmental decision makers." | PJA, Ex. 10, 157:16-18 | | |

21

| No. | Fact | Evidence | Response | Evidence |
|-----|------|----------|----------|----------|
| D55. | The juvenile court never took away Brian Garcia's rights to make educational decisions on behalf of P.G. | Declaration of Ryan A. Graham in Opposition to Plaintiff's Summary Judgment Motion ¶¶ 7–8, Ex. 3, RFA No. 45 (deemed admissions due to untimely response by Plaintiffs). | | |
| D56. | During the June 10, 2016 juvenile court hearing, DCFS' counsel stated that P.G. needed to be enrolled in school because she "needs to be socialized" and receive services a school can provide. | (PJA, Ex. 21, 241:13–18.) | | |

*Plaintiffs' Statement of Uncontroverted Facts*

| No. | Fact | Evidence | Response | Evidence |
|-----|------|----------|----------|----------|
| D57. | On April 12, 2016, Carey filed a Supplemental Report with the juvenile court, noting that various documents denominated as exhibits lettered A through F were attached. | Defendants' Joint Evidentiary Appendix, Ex. 16, COLA_001104–05. | | |
| D58. | Exhibit E to Carey's April 12, 2016 Supplemental Report contained three documents related to vaccination that were emailed from Ulikhanova to various social workers. | Defendants' Joint Evidentiary Appendix, Ex. 17. | | |
| D59. | With respect to Reisch, DCFS pursued the vaccination in order to salvage P.G.'s placement with Reisch. | PJA, Ex. 21, 4:4–12 | | |
| D60. | Beginning in January 2016, Ulikhanova's visitation with P.G. was limited to occurring at the DCFS Pasadena office in the presence of a DCFS-approved monitor. | PJA, Ex. 21, 248:18–19; Helwajian Decl. ¶ 10. | | |

*Plaintiffs' Statement of Uncontroverted Facts*

| No. | Fact | Evidence | Response | Evidence |
|-----|------|----------|----------|----------|
| D61. | At the June 10 juvenile court hearing, Judge Arakaki refused to remove any restrictions on Ulikhanova's visitations. | PJA, Ex. 21, 248:28–249:2. | | |
| D62 | At the June 10 juvenile court hearing, Judge Arakaki reaffirmed that Ulikhanova's visits with P.G. were to be "monitored by a DCFS approved monitor and DCFS approved setting." | PJA, Ex. 21, 248:28–249:2. | | |
| D63. | At the June 10 juvenile court hearing, Judge Arakaki stated that, regarding visitation, "based on all of the information that's been provided, if [DCFS] is requiring those visits to occur in the DCFS office based on the current situation, again [DCFS] has been given that discretion to allow visits to occur in a setting that they deem appropriate and that will remain the order." | PJA, Ex. 21, 249:2–8. | | |

24

*Plaintiffs' Statement of Uncontroverted Facts*

| No. | Fact | Evidence | Response | Evidence |
|-----|------|----------|----------|----------|
| D64 | At the June 10, 2016 juvenile court hearing, Judge Arakaki granted a temporary restraining order, prohibiting Ulikhanova from having any contact at all with Reisch, her husband, and her children. | PJA, Ex. 21, 245:11 | | |
| D65. | The juvenile court authorized the vaccination on June 10, 2016. | PJA, Ex. 21, 247:15–18 | | |
| | | | | |

25

Case No. 2:17-CV-9193-FMO-E

# PROOF OF SERVICE

STATE OF CALIFORNIA, County of Los Angeles:

LIANA SEROBIAN states: that I am and at all times herein mentioned have been a citizen of the United States and a resident of the County of Los Angeles, over the age of eighteen years and not a party the within action; that my business address is 100 North Brand Blvd., Suite 600, Glendale, County of Los Angeles, State of California.

That on the 23rd day of May 2019, I served the attached Plaintiffs' Statement of Uncontroverted Facts, and accompanying Plaintiffs' Motion for Summary Judgement and Plaintiffs Joint Evidentiary Appendix Exhibits 1 to 41, (per the stipulated deadline of May 7, 2019) upon the interested parties listed below by electronic service via email addressed as follows:

• Avi Burkwitz; Esq., ABurkwitz@pbbllp.com
  Ryan A. Gra am, Esq., rgraham@bbllg.com
  PETERN · RADFORD · BURKWITZ
  100 North First Street, Suite 300
  Burbank, California 91502

I declare under penalty of perjury that the foregoing is true and correct. Executed this 23rd day of May 2019, at Glendale, California.

/s/ Liana Serobian
LIANA SEROBIAN, ESQ.

*Plaintiffs' Statement of Uncontroverted Facts*