**SEROBIAN LAW, INC.**

# DEPOSITION OF
# STEPHEN CAREY

# EXHIBIT 2

*Lucy Ulikhanova, et al. v. County of Los Angeles, et al.*
(C.D. Cal. 2:17-CV-9193-FMO-E)

Atkinson-Baker, Inc.
www.depo.com

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3                  - - -

4

LUCY ULIKHANOVA, et al.,          )

5                                  )     **CERTIFIED COPY**

                    Plaintiffs,  )

6                                  )

        vs.                        )     Case No.

7                                  )

COUNTY OF LOS ANGELES, et al.,    )     2:17-CV-9193-FMO-E

8                                  )

                    Defendants.  )

9                                  )

10

11

12

13

14

15              DEPOSITION OF

16              STEPHEN CAREY

17           GLENDALE, CALIFORNIA

18         FRIDAY, MARCH 29, 2019

19

20

21

22   ATKINSON-BAKER, INC.
     (800) 288-3376
23   www.depo.com

24   REPORTED BY:  MARY FERGUSON, CSR NO. 8769

25   FILE NO.:  AD03529

Atkinson-Baker, Inc.
www.depo.com

1              UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3                      - - -

4

LUCY ULIKHANOVA, et al.,          )

5                                 )

                      Plaintiffs,  )

6                                 )

       vs.                        )   Case No.

7                                 )

COUNTY OF LOS ANGELES, et al.,    )   2:17-CV-9193-FMO-E

8                                 )

                      Defendants.  )

9                                 )

10

11

12

13

14

15

16   Deposition of STEPHEN CAREY, taken on behalf of

17   Plaintiffs, at 100 North Brand Boulevard, Suite 600,

18   Glendale, California, commencing at 1:35 p.m., Friday,

19   March 29, 2019, before Mary Ferguson, CSR No. 8769.

20

21

22

23

24

25

```
 1                 A P P E A R A N C E S

 2


 3    FOR PLAINTIFFS ULIKHANOVA AND MINOR P.G.:

 4    SEROBIAN LAW, INC.
      BY:  LIANA SEROBIAN, ESQUIRE
 5    100 North Brand Boulevard
      Suite 600
 6    Glendale, California  91203
      (818) 539-2249
 7    l.serobian@yahoo.com


 8


 9    FOR THE DEFENDANTS:

10    PETERSON BRADFORD BURKWITZ
      BY:  AVI BURKWITZ, ESQUIRE
11    100 North First Street
      Suite 300
12    Burbank, California  91502-1845
      (818) 562-5800
13    aburkwitz@pbbllp.com

14

15

16

17

18

19

20

21

22

23

24

25
```

1                    I N D E X

2

3   WITNESS:   STEPHEN CAREY

4   EXAMINATION                                    PAGE

5        BY MS. SEROBIAN                             5

6

7

    EXHIBITS
8
                        PLAINTIFFS'
9   NUMBER        DESCRIPTION                       PAGE

10  1      E-mail from Mr. Carey to
           Ms. Ulikhanova, dated March 31st,
11         2016, regarding vaccination, 2 pages     25

12  7      E-mail from Stephen Carey to Ronald
           Funk, et al., dated 6/4/2016, 3 pages    -
13
    9      Letter, May 23, 2017, To Whom It May
14         Concern, from Dr. Tara Zandvliet, 2
           pages                                    -
15
    11     E-mail dated March 23, 2017, from
16         Ms. Helwajian to Ms. Ulikhanova, 13
           pages                                    -
17
    13     Minute order for adjudication
18         hearing, 3 pages                         10

19         (Skipped exhibit numbers intentionally omitted.)

20

21  QUESTION WITNESS WAS INSTRUCTED NOT TO ANSWER:

22                  PAGE 13   LINE 10

23

24  INFORMATION TO BE SUPPLIED:

25                    (NONE)

```
 1                    STEPHEN CAREY,

 2           having been first duly sworn, was

 3           examined and testified as follows:

 4

 5                    EXAMINATION

 6   BY MS. SEROBIAN:

 7      Q.    Good afternoon, Mr. Carey.  Thank you for

 8   coming in.

 9      A.    Uh-huh.

10      Q.    Could you please, for the record, state and

11   spell your full name.

12      A.    Stephen Carey.  S-T-E-P-H-E-N, C-A-R-E-Y.

13      Q.    What is your position with the County of

14   Los Angeles?

15      A.    I am a Children's Social Worker 3.

16      Q.    How long have you been in that position?

17      A.    I have been a Children's Social Worker for 24

18   years and a Children's Social Worker 3 for, I am

19   guessing, at least 15 to 20 years.

20      Q.    What does that entail, to be a Children's

21   Social Worker 3; what duties do you have?

22      A.    Well, there are a number of different

23   assignments to Children's Social Worker 3.  My current

24   assignment is as a dependency investigator.

25           Are you asking me what my role is in my
```

1   current assignment, or in general as a Children's Social

2   Worker 3?

3        Q.   First question is in general, and then I will

4   ask you regarding your role in this case.

5        A.   Okay.

6             So, in general, as a social worker, depending

7   on the assignment -- well, I guess it does depend on

8   the assignment.

9        Q.   And what was your assignment in this

10  particular case?

11            For the record, the case is brought against

12  you and co-defendant Maral Helwajian by Plaintiffs Lucy

13  Ulikhanova and her minor child Penelopy.

14            Are you familiar with these parties?

15       A.   Yes.

16       Q.   What was your role in their dependency case?

17       A.   I was the dependency investigator on that case.

18       Q.   For what period of time were you the dependency

19  investigator in this case?

20       A.   I was assigned to the case shortly or

21  immediately after the detention hearing, and I continued

22  to be the dependency investigator until the judge made

23  its jurisdiction and disposition rule on the

24  allegations.

25       Q.   Can you please tell us the date associated with

Atkinson-Baker, Inc.
www.depo.com

1    the detention hearing around also the jurisdiction and

2    disposition hearing that you just mentioned?

3        A.   Without reviewing the legal file, I don't know

4    those dates.

5        Q.   You don't recall when the detention hearing

6    took place?

7        A.   I don't know the specific date of the detention

8    hearing or the specific date of the -- there are several

9    jurisdiction disposition hearings.

10       Q.   You said when the judge made the ruling,

11   correct?  So can't be several rulings made.

12           There could be continuances, but one date

13   generally when the ruling is made; is that correct?

14       A.   Well, there is a jurisdiction ruling on the

15   allegations, and then there is a disposition.

16   Sometimes they are the same day; other times they are

17   different.

18           In this case, I don't recall if both were on

19   the same date or not.

20       Q.   As far as the detention hearing, do you

21   remember the month and the year without the date,

22   specifically?

23       A.   I don't remember the month.  I want to say

24   2016.

25       Q.   How about for the jurisdiction and/or

1   disposition hearing; do you remember the month and the

2   year?

3       A.   It would have been maybe sometime in June of

4   2016, perhaps, somewhere around there, but honestly, I

5   don't recall.

6       Q.   So you think jurisdictional findings or

7   disposition were made in June 2016?

8       A.   I honestly don't recall; I am guessing.

9       Q.   Did you review the file in this case prior to

10  coming here today?

11      A.   I reviewed some documents of the legal file.

12      Q.   What documents did you review?

13      A.   I reviewed some e-mails; I reviewed a

14  supplemental report, a few pages of a supplemental

15  report, reviewed an attachment to one of the reports,

16  which was the MAT summary of findings.

17           I can't recall the other documents that I saw.

18      Q.   Did you review the procedural history of the

19  case, where it would tell you when the detention took

20  place, when the jurisdiction took place, when the

21  disposition took place and when the case closed?

22           Did you review the procedural history?

23      A.   I am not familiar with the term "procedural

24  history."

25      Q.   Just basically the term "procedure,"

Atkinson-Baker, Inc.
www.depo.com

1    procedural history timeframe.

2        A.   I remember getting instructions, "Don't review

3    the case.  Don't review the case.  Only review things

4    that we provide you, and don't talk to anybody about the

5    case," and I stuck to that.

6            I was provided a few documents that I reviewed

7    and that I can remember, I spoke to about this.

8        Q.   I see.

9            Well, if you didn't review the case completely,

10   do you know what happened to the case; do you know how

11   it ended?

12       A.   I know -- I know roughly how it ended.

13       Q.   What is your understanding?

14       A.   At least -- I need to clarify.

15           When you say "ended," I am only -- I only know

16   what happened up to the point of my assignment, when

17   that ended, which was the point of disposition.

18       Q.   And you don't know --

19       A.   So I do recall the general details of what

20   happened there.

21       Q.   So because you were told to review certain

22   items and not to review others, but you were assigned

23   up to the disposition, correct?

24       A.   Yes.

25       Q.   When -- at least did you review when your

Atkinson-Baker, Inc.
www.depo.com

1   assignment ended?

2       A.   Are you asking do I know specific dates?

3       Q.   No, month is fine.  General month and year.

4            When did your assignment end in this case,

5   general month and year?

6       A.   I don't know the -- I don't recall.  I don't

7   know that.

8            MR. BURKWITZ:  You were told to give an

9   estimate.  So if you can give an approximation?  If you

10  can say a month and year or you can even give a season,

11  that's fine.

12           THE WITNESS:  You know, I recall there was a

13  June of 2016 date, that that was the date that there

14  was a continuance date.  I saw one of them on my reports

15  with that date on it, so it must have been at least that

16  date or longer, sometime in or after June of 2016.

17           MS. SEROBIAN:  In that case, let me refer you

18  to Plaintiffs's Exhibit 13.

19           (Plaintiffs' Exhibit 13 was marked for

20  identification.)

21  BY MS. SEROBIAN:

22      Q.   Can you please review this document that I have

23  provided and tell us what you think it is.

24      A.   This appears to be a minute order for an

25  adjudication hearing.

Atkinson-Baker, Inc.
www.depo.com

1          Because it is an adjudication hearing and not

2     a disposition hearing, I would assume the court has not

3     yet ruled on the allegations.

4          But in this particular minute order dated

5     June 10th of 2016, the court -- looks like it issues a

6     temporary restraining order against the mother.

7          It extends the temporary restraining order to

8     the following hearing, which is July 11 of 2016.

9          Continues the matter to July 11, 2016, and

10    continued for further adjudication on August 16th of

11    2016.

12         The court authorizes immunization, over the

13    mother's objection.

14    Q.   Thank you; let me stop you there.

15    A.   Okay.

16    Q.   You said there's a restraining order, temporary

17    one, issued against the mother.

18         And do you know who it is meant to protect?

19    A.   Yes.

20    Q.   Can you please tell us?

21    A.   The relative caregiver, her business, her

22    property and, I believe, her other family members.

23         Let's see.  It says:

24              "Persons protected are the

25              paternal great aunt, paternal great

1          uncle and the paternal cousins."

2     Q.    In other words, people living in the residence,

3    and that's why they were included?

4     A.    I believe so, yes.

5     Q.    At the continued hearing for the temporary

6    restraining order, do you know if a permanent one was

7    issued by the general clerk?

8     A.    I don't recall.

9     Q.    As far as -- you mentioned there was a

10   continuance adjudication hearing to August 16, 2016.

11        Is that correct?

12    A.    That's what this minute order indicates.

13    Q.    Are you reading that under the title named,

14   "Continuance," line 13?

15    A.    Yes.

16    Q.    What does that tell you when the adjudication

17   hearing was continued and not held at this hearing?

18    A.    That line says that the adjudication of the

19   allegations is continued to that date of August 16th.

20    Q.    So what does that tell you?

21        Does that mean that no findings are made on

22   the allegations that the Department made against the

23   mother and/or father in this case?

24    A.    I believe so.

25    Q.    Does that also tell you that the disposition

Atkinson-Baker, Inc.
www.depo.com

1   hearing had not yet taken place at least as of June 10,

2   2016?

3       A.   Yes.

4       Q.   What is your understanding, does the

5   disposition hearing take place after the adjudication

6   hearing?

7       A.   Yes.

8       Q.   Generally what findings would the court be

9   making; what is your understanding as to what findings

10  would the court be making at the disposition hearing

11  following the adjudication hearing?

12      A.   Are you asking me in general or specific to

13  this case?

14      Q.   In general.

15      A.   In general, the court disposition rulings have

16  to do -- they follow from the adjudication awards.

17           So depending on what the court found true in

18  the petition, they would then determine the

19  disposition.

20      Q.   Let's say, hypothetically, that the court

21  sustains one or more of the allegations in the petition

22  and the case then goes on to the disposition hearing.

23           What would the court need to do to start making

24  orders for the child and/or parent in that case?

25      A.   Are you asking me what would the court --

Atkinson-Baker, Inc.
www.depo.com

1    Q.   Need to do?

2    A.   -- need to do?

3    Q.   Yes, so it could have authority to start making

4  orders for the care of the child and, you know, case

5  file of the parent in that case.

6    A.   Okay, I guess I need clarification.  I don't

7  know what the court needs to do, because I am not a

8  member of the court.

9         I understand that, based on the court's

10 findings in the jurisdictional issues, the court then

11 has to make orders about issues like placement and

12 issues like visitation, issues of services that need to

13 be ordered for parents and children and parties.

14        But as far as your question, what does the

15 court need to do, I don't know.

16   Q.   Let me give you terminology you may have heard

17 and are familiar with.

18        Does the court need to take legal jurisdiction

19 over the minor at that disposition hearing in order to

20 have authority to make the orders of placement and

21 visitation and case plan and so forth; what is your

22 understanding?

23   A.   Yes.

24   Q.   So as of June 10, 2016, you testified that,

25 from reviewing this minute order, the court had not

Atkinson-Baker, Inc.
www.depo.com

1  yet -- did not yet hold the disposition hearing, so,

2  therefore, the court must not have taken legal

3  jurisdiction of this minor; is that correct?

4         MR. BURKWITZ:  Misstates the evidence.

5         MS. SEROBIAN:  Let me rephrase.

6      Q.   You testified that, from your review of this

7  June 10, 2016 minute order, line 13, it is apparent that

8  the juvenile court did not yet hold the adjudication

9  and/or disposition hearing; is that correct?

10     A.   They did not -- to my understanding, they did

11 not meet or make findings of the allegation, and they

12 did not make a disposition ruling, since they hadn't

13 made findings on allegations.

14     Q.   As of June 10, 2016, do you know if the mother

15 in this case, Ms. Ulikhanova, retained her educational

16 rights?

17     A.   I need to clarify something, if I may.

18     Q.   Sure.

19     A.   The issues that we were just speaking about --

20 and I don't recall if this happened -- but the court

21 can --

22     Q.   There is no question pending.  I am sorry.

23         I will ask you or your attorney may come back

24 and ask you for things to clarify, but there is no

25 question pending at this time.

1        A.    They may have made --

2        Q.    Please, there is no question pending at this

3    time.

4              MR. BURKWITZ:  She doesn't want you to clarify.

5    Please do it later; that's fine.

6              THE WITNESS:  Okay.

7              MS. SEROBIAN:  I don't know what you are trying

8    to clarify or if you're going to just speak on your own

9    as to whatever issues you want to speak to.  Your

10   attorney can ask questions, and then you can clarify.

11             Okay?

12             THE WITNESS:  That's fine.

13   BY MS. SEROBIAN:

14       Q.    I am asking you whether you know, as of

15   June 10, 2016, if the mother in this case, Ms. Lucy

16   Ulikhanova, retained her educational rights.

17       A.    I don't recall.  Or I don't remember what

18   rulings had been made about educational rights to that

19   point.

20       Q.    Do you know if, during your assignment to this

21   case, if mother's educational rights were ever limited?

22       A.    I don't think they were during my assignment.

23   I don't recall.  I don't think so.

24       Q.    You don't think so, okay.

25             Generally, not particular to this case, but in

Atkinson-Baker, Inc.
www.depo.com

1   general, as part of your practice as a social worker,

2   what would you need to do to limit a parent's

3   educational rights in a dependency court?

4       A.   I would need to establish that the parent was

5   not acting in the child's best interests for the court

6   to take that action.

7       Q.   So it's not something that would be within your

8   discretion to do, take away a parent's educational

9   rights.

10          You would actually need to petition to the

11  court to limit those rights; is that correct?

12      A.   Are you asking me if I, as a social worker, or

13  a dependency investigator, can limit a parent's

14  educational rights?

15      Q.   Without a court order, correct; that's what I

16  am asking you.

17      A.   No.

18      Q.   No, you can't?

19      A.   I cannot.

20      Q.   You cannot do that.

21          So if you were to believe in that particular

22  case you want to, for example, limit a certain parent's

23  educational rights, then you would petition the juvenile

24  court to do so; is that correct?

25      A.   That is correct.

Atkinson-Baker, Inc.
www.depo.com

1    Q.   And in order to prove your point, you said you

2    would need to establish that the parent is not acting in

3    the child's best interests, is that correct, or are

4    there other factors that need to be established --

5    A.   There are other factors.  If a parent was

6    unavailable.  If a current caregiver -- if the child

7    needed, required educational services that the

8    caregiver needed to participate in or act on behalf of.

9    Q.   There are other criteria.

10   A.   Right, but certainly it would still require a

11   court order to do so.

12   Q.   And you do not -- do you recall if ever during

13   this dependency case, even after your assignment was

14   completed, if mother's educational rights were limited?

15   A.   I don't know about after.  I don't believe they

16   were before.

17   Q.   Did you ever ask the mother if she wanted to

18   skip kindergarten for her child?

19   A.   Did I ask the mother if she wanted to skip

20   kindergarten for the child?

21   Q.   Yes.

22   A.   I don't believe I asked her that question.

23   Q.   You said you have been a social worker for 25

24   years, correct?

25   A.   24 years.

Atkinson-Baker, Inc.
www.depo.com

1    Q.    24 years.  Close to retiring, right?  Must be

2    happy.

3          During that timeframe, have you participated in

4    any trainings regarding -- by your employer, the County

5    of Los Angeles, regarding what it is -- what does it

6    mean for a parent to have educational rights?

7    A.    That is a very broad question.

8          Have I ever received any training at any point

9    in my --

10   Q.    Let me limit the timeframe.

11         The last five years, for example.

12         Within the last five years, including when this

13   case was initiated, did you receive any training

14   regarding what do educational rights of parents entail;

15   what do they mean?

16   A.    Certainly a number of trainings have touched

17   on, have mentioned parental rights and what that means.

18   Q.    I am talking specifically about educational

19   rights.

20   A.    I am not aware of any specific educational

21   rights' trainings offered to social workers.

22   Q.    Do you know what is the state of law in

23   California as to when the child needs to be involved in

24   school?

25   A.    I believe in the State of California, children

Atkinson-Baker, Inc.
www.depo.com

1  need to be enrolled in school in the first grade.

2     Q.   Is it your understanding that parents have a

3  right to skip kindergarten?

4     A.   I believe that's true.

5     Q.   So, hypothetically, if you knew of a parent who

6  had skipped kindergarten but social workers prefer the

7  child to be in kindergarten, the parent still retains

8  the right to skip kindergarten?

9     A.   Yes -- sorry, you went a little fast.  I

10  couldn't follow.

11     Q.   Of course, of course.

12         I am saying hypothetically, for example, you

13  have a child who is at an age who may be enrolled in

14  kindergarten.

15         However, the parent prefers to skip

16  kindergarten.

17         In that case, a social worker can't really

18  accuse the parent of being neglectful or not being

19  appropriate, because they have a right to skip

20  kindergarten under California law; is that correct?

21         MR. BURKWITZ:  It is overbroad the way it's

22  phrased, but you can answer.

23         THE WITNESS:  If that is the only issue --

24  BY MS. SEROBIAN:

25     Q.   Yes, being the only issue.

Atkinson-Baker, Inc.
www.depo.com

1     A.    Then that's correct.  As far as I understand,

2   that's correct.

3     Q.    It would not be considered neglect of

4   educational rights?

5     A.    If a parent chose to not enroll their child in

6   kindergarten, that's correct.

7     Q.    That's correct, okay.

8           Turning to vaccinations and immunizations of

9   children, what is your understanding of the current law

10  in California as to when the child needs to be

11  vaccinated or immunized?

12    A.    It's my understanding children are required to

13  be immunized in order to participate in public schools.

14    Q.    Do you recall if there was any change of law

15  recently?

16    A.    Yes, I believe in 2016, that law changed.  It

17  was not a -- it was not a requirement by law, but it was

18  strongly recommended.  But it was not a legal

19  requirement.  Then it became a legal requirement in

20  2016.

21    Q.    After 2016?

22    A.    Okay.  I don't recall exactly when it started,

23  but it was around that time.

24    Q.    Around that time.

25          Do you recall the date when the change of law

Atkinson-Baker, Inc.
www.depo.com

1    took place?

2        A.    No.

3        Q.    Or the month?

4        A.    No.

5        Q.    But it was sometime within 2016?

6        A.    It was somewhere around then.

7        Q.    Somewhere around.

8            So your understanding of the previous law was

9    that it was strongly recommended but not required for

10   the children to be immunized when they were enrolled in

11   public school prior to the change of law.

12           Is that correct?

13       A.    I believe so.

14       Q.    Then following the change of law, sometime in

15   2016, there was a requirement for the children enrolled

16   in public school to be immunized?

17       A.    Yes.

18       Q.    Do you know if there were any -- I will break

19   it down.

20           You don't remember the exact time the new law

21   took effect sometime in 2016.  Therefore, I am going to

22   ask you more prior to the change of law and after the

23   change of law.  My questions are going to be phrased

24   with that distinction.

25           Now, prior to the change of law, what did the

1   parent need to do to refuse or exempt their child from

2   being immunized when they were still involved in a

3   public school?

4       A.   I don't know.

5       Q.   After the change of law and probably effective

6   still, presently, what do parents -- could still do to

7   refuse or exempt their child from being immunized; do

8   you know?

9       A.   I honestly don't know exactly what is required.

10  I haven't run into that.

11      Q.   We talked about your employer, County of

12  Los Angeles, training you with regards to the parents'

13  educational right and what it meant, within the last

14  five years at least, and you testified you did not

15  recall any such training, correct, with respect to

16  educational --

17      A.   With respect to specific parental educational

18  rights, correct.

19      Q.   Now my question is going to be similar, but

20  except with the parental right to refuse or excuse

21  their child from being immunized.  So I am going to

22  break it down in two ways again, prior to the change of

23  law and after the change of law.

24           Prior to the change of law regarding

25  immunization sometime within 2016, what type of

1    training did you receive by your employer, County of

2    Los Angeles, regarding the parents' right to refuse or

3    excuse their child from being immunized?

4        A.   No specific training.

5        Q.   Now the question is going to be as related to

6    after the change of law, including the present, because

7    once the law changed, is it your understanding that it

8    is presently the same law after the change in 2016?

9             Let me clarify.  It was a very -- you know,

10   kind of a difficult question.

11            Is it your understanding that once the change

12   of law took place sometime in 2016 regarding requiring

13   children to be immunized if enrolled in public school,

14   that that law remains in place now, that that is the

15   same law; is that your understanding?

16       A.   Yes.

17       Q.   So my question now relates to the new law and

18   present law.

19            What type of training has your employer, County

20   of Los Angeles, done to inform you and other social

21   workers regarding the present law immunization and

22   vaccination of children and the parents' rights to

23   excuse or refuse to do so?

24       A.   I don't recall any specific trainings.  There

25   may have been information -- policy information and new

Atkinson-Baker, Inc.
www.depo.com

1    laws trainings that inform us of these laws.  I am -- I

2    am --

3        Q.    You are not positive?

4        A.    I am not positive, but that is how the County

5    often provides that information to the workers.

6        Q.    But you also testified now that you do not know

7    what those present laws are and how a parent can exempt

8    their child from being immunized presently; right now,

9    you do not know that, correct?

10       A.    I don't know all the details of -- I don't know

11   all the details of the law; that's correct.

12       Q.    Have you heard about when the law took effect

13   sometime in 2016, that there was a grandfather clause

14   permitting parents to continue to refuse immunization if

15   they had done so previously for at least a year; do you

16   know about that --

17       A.    I don't know about that specific one.  I have

18   heard that there are some exceptions.  I don't know the

19   details of those.

20           MS. SEROBIAN:  I am going to turn to

21   Plaintiffs' Exhibit 1.

22           (Plaintiffs' Exhibit 1 was marked for

23   identification.)

24   BY MS. SEROBIAN:

25       Q.    Please take a look at this exhibit and tell me

1   what type of e-mail communication is this, who are the

2   parties, the date and the subject.

3        A.   This appears to be an e-mail from me to

4   Ms. Ulikhanova, dated March 31st of 2016, regarding

5   vaccination.

6        Q.   Can you read that one paragraph line that you

7   wrote in this e-mail, please.

8        A.   "I spoke to Marylou yesterday.

9             Penelopy has not been vaccinated."

10       Q.   What were you responding to in this e-mail?  It

11   seemed like you were responding to something.

12       A.   There's an e-mail thread below this.  It

13   appears to be an e-mail from Lucy Ulikhanova, dated

14   March 30th of 2016.

15       Q.   And is it an e-mail from -- can you tell us who

16   it is from?

17       A.   It appears to be from Lucy Ulikhanova,

18   addressed to Maral, who was the social worker assigned

19   at this time.

20       Q.   But you responded as well, so could it be that

21   you were also copied on this e-mail?

22       A.   It appears that I was copied, but I don't have

23   those details, and I don't know if this was a greater

24   e-mail thread.  I am only provided with these -- with

25   this single page, so I don't know the context.

1      Q.    But you responded with information that

2   Penelopy has not been vaccinated, correct?

3      A.    That's what this appears to be.

4      Q.    So do you remember if your interactions with

5   the mother, Lucy Ulikhanova, that she -- this was a hot

6   topic for her; she objected to her child being

7   vaccinated?

8      A.    Yes.

9      Q.    And did she inform you of this very early on in

10   the case?

11      A.    I don't know about very early on, but yes, she

12   informed us of this when this became an issue.

13      Q.    Did she provide you with any documents to show

14   that she had previously refused vaccinations and that

15   she had enrolled her child in a school with documents

16   showing that she refused under her personal beliefs and

17   also signed off by the pediatrician for her child, did

18   she --

19      A.    I believe so, yes.

20      Q.    Before moving on to those documents, I would

21   like you to read, if possible, from this e-mail.  It's

22   one of the last paragraphs, and it starts with, "I'm

23   concerned..."

24            Could you please read that?

25      A.    Yes.

1    Q.    Please read that paragraph.

2    A.     "I'm concerned my authority as

3          mother has been undermined.  I have

4          my own valid reasons not to

5          vaccinate Penelopy at this time,

6          and the only thing I can assume

7          possibility why she has been sick

8          for so long and first time in this

9          manner could be from a possible

10         side effect by a vaccination."

11   Q.    Just focusing on the first sentence where she

12   says, "I am concerned my authority as mother has been

13   undermined," why do you think she feels this way?

14         MR. BURKWITZ:  Calls for speculation.

15         You want him to guess?

16   BY MS. SEROBIAN:

17   Q.    Did she express to you over the telephone,

18   verbally or in other e-mails, why she feels that her

19   authority as mother has been undermined?

20   A.    I -- I can speculate.

21   Q.    Do you recall -- I mean, did you have

22   conversations with her regarding these issues?

23   A.    I did not ask her about -- specifically about

24   feeling undermined.

25   Q.    Did she tell you why she felt that she was

1    undermined?

2        A.    I am sure she did on many occasions.

3        Q.    But you just don't recall the details or do you

4    recall the details?

5        A.    It's very difficult to recall the details.

6    There were many, many e-mails with many, many

7    attachments, and it was very difficult to stay on top

8    of any single issue.

9            But this issue, I do recall.  She was clear she

10   did not want her child vaccinated.

11       Q.    Now, moving on to Exhibit 3, which was

12   previously marked and provided to counsel and the

13   reporter.

14           Could you please take a look at this exhibit,

15   not the forward to me but the body.

16           Take a look at the body of the e-mail, who is

17   the recipient, if you are copied on it, the date and the

18   subject of this e-mail.

19       A.    I am reading the top -- from the top, "From

20   Lucy Ulikhanova."  The subject is, "Second e-mail

21   warning to Stephen Carey."

22       Q.    I would like you to read not the forward part,

23   not where it's forwarded to me, but the forwarded

24   message, itself.

25       A.    So I -- I am a little -- it's going to take me

Atkinson-Baker, Inc.
www.depo.com

1    a minute.  I am a little confused.  I don't understand.

2         This top part is the forwarded -- everything

3    under "Sent from my iPhone --"

4    Q.   Yes.

5    A.   -- is something she forwarded to you, and

6    that's what that top line is?

7    Q.   Correct.

8         Then the forwarded e-mail would start beneath

9    where it says "Begin forwarded message."

10   A.   So on April 6th of 2016, Lucy Ulikhanova sent

11   an e-mail to myself and cc'd an attorney and a Rachel

12   Raymond.  The subject was, "Waiver vaccine."

13           "Don't know why if it's any use,

14         but here's a vaccine waiver I

15         signed when I took Penelopy to

16         pre-K St. Marks private school."

17   Q.   Is there an attachment to this e-mail?

18   A.   Yes.

19   Q.   Please take a look at the attachment and tell

20   us how many pages those are.

21   A.   One page looks like -- sorry, hold on.

22         There's a physician's report for child care

23   centers.  It appears to be two pages.

24   Q.   What is the title of the second page, please?

25   A.   The title of the second page, "Refusal to

Atkinson-Baker, Inc.
www.depo.com

1 | Vaccinate."

2 | Q.    What is the title of the third page, please?

3 | A.    "Personal Beliefs Exemption to Required

4 | Immunizations."

5 | Q.    Looking at the third page where it says,

6 | "Personal Beliefs Exemption to Required Immunizations,"

7 | do you believe this to be a California standard form?

8 | A.    It appears to be.

9 | Q.    Can you please read on the top, what does it

10 | say?

11 | A.    "State of California Health and Human Services

12 | Agency."

13 | Q.    And then there's another --

14 | A.    On the other side, "California Department of

15 | Social Services Community Care Licensing."

16 | Q.    Have you ever seen a form like this before?

17 | A.    Aside of this case, I don't believe I have.

18 | Q.    So when you received this document, what did

19 | they mean to you?

20 | A.    This means to me that it appears that she had

21 | a -- she completed these forms declining to vaccinate

22 | her daughter and submitted these forms to the school,

23 | as required by the school, as far as I understand it.

24 | Q.    And did you -- do you know if the child was

25 | able to go to the school once the mother had submitted

Atkinson-Baker, Inc.
www.depo.com

1   these forms to St. Marks?

2       A.   I don't know what the requirements were, but I

3   do believe she was attending St. Marks School.

4       Q.   How about the next page, where it says,

5   "Refusal to Vaccinate," second page of the attachment.

6            Does this appear to be a standard form, to

7   you, as well?

8       A.   It appears to be.

9       Q.   Can you read the date at the bottom?

10      A.   At the bottom, it says, "American Academy of

11   Pediatrics."

12      Q.   What does this tell you?

13      A.   It appears to be a form related to the American

14   Academy of Pediatrics.

15      Q.   Do you think that this form allowed physicians

16   to have a signed waiver or refusal to vaccinate on

17   file?

18           MR. BURKWITZ:  Calls for speculation, no

19   foundation.

20   BY MS. SEROBIAN:

21      Q.   What do you think this form means?

22           MR. BURKWITZ:  Calls for speculation.

23   BY MS. SEROBIAN:

24      Q.   Just reading from the title, what do you think

25   this form means?

Atkinson-Baker, Inc.
www.depo.com

1           MR. BURKWITZ:   No foundation.

2    BY MS. SEROBIAN:

3       Q.   Can you read the title for us, please.

4       A.   The title is "Refusal to Vaccinate."

5       Q.   Read for us who are the parties, the child and

6    parent's name.

7       A.   The child's name is Penelopy Estelle Garcia,

8    parent's name Lucy Ulikhanova.

9       Q.   Is there also a doctor's name?

10      A.   Dr. Boxtein.

11      Q.   Do you see signatures at the bottom?

12      A.   I do see signatures at the bottom.

13      Q.   Could you please tell us what you see?

14      A.   I can't make out either of the signatures, but

15   there are two signatures, a parent's signature, and it

16   does look like "Lucy" is the first name, dated

17   11/13/12.  I cannot make out the witness signature

18   dated 11/13/12.

19      Q.   When you received these forms attachment sent

20   to you by the mother Lucy Ulikhanova, did you submit

21   these forms to the juvenile court?

22      A.   I don't recall.  I don't -- I submitted most

23   everything that she submitted in an e-mail attachment,

24   which was extensive.  I don't specifically recall if I

25   attached this or not.

1    Q.   Moving on to top of Exhibit 5, previously

2  marked.  Counsel should have Exhibit 5.

3        MR. BURKWITZ:  I do.

4  BY MS. SEROBIAN:

5    Q.   Could you please tell us the e-mail

6  communications, from, to, subject and date, please?

7    A.   E-mail from Stephen Carey, subject:  Lucy

8  Ulikhanova set on hearing on 6/9/16."  June 9th, 2016.

9        The date of this e-mail is June 3, 2016.

10   Q.   Who did you send this e-mail to, please?

11   A.   This e-mail was sent to -- it appears to be

12 R. Funk -- I think Ronald Funk is his name -- and Lucy

13 Ulikhanova and cc'd to Maral Helwajian.

14   Q.   Could you please tell us what was the intent of

15 this e-mail?

16   A.   The intent of this e-mail was to provide

17 written notice of a hearing to address two issues for

18 an ex parte walk-on hearing -- I don't know if it's

19 ex parte -- a walk-on hearing requesting an order from

20 the court regarding first that the court issue a

21 temporary order restraining the mother from paternal

22 aunt and family members living at the residence, her

23 residence and her business.

24       The second issue was the court order Penelopy

25 be vaccinated so that she could attend school.

1     Q.   Do you remember if you prepared a report for

2  this hearing?

3     A.   Yes.

4     Q.   Do you remember if you attached to this report

5  the documents the mother provided to you earlier in her

6  April 2016 e-mail?

7     A.   I don't recall if I did or not.

8     Q.   Do you think it would have been important for

9  the court to know that the mother had signed a waiver or

10  refusal to vaccinate her child and, you know, have a

11  doctor's signature on it as well, before having the

12  court decide on the issue of vaccinating Penelopy?

13     A.   So at this point in the case -- I'm sorry; can

14  you repeat the question?

15     Q.   Sure.

16         Can you read it back, please.

17         (Record read.)

18         THE WITNESS:  Sure.

19  BY MS. SEROBIAN:

20     Q.   And is there a reason that you did not attach

21  those documents to your report for this June 9, 2016

22  hearing?

23     A.   I don't know that I did not attach it.  I can

24  think -- if it was not attached, I can think of a few

25  issues about why that may not have been attached.

Atkinson-Baker, Inc.
www.depo.com

1          Would you like me to explain those?

2     Q.   Yes, please tell us your issues.

3     A.   So my specific role as a dependency

4  investigator is to conduct an investigation as to the

5  allegations in the petition and to make recommendations

6  based on those allegations.  That is the scope of my

7  assignment.

8          Maral's -- the case carrying social workers are

9  responsible for services-related issues on any assigned

10  case.  The issue of -- the issue of immunization is a

11  services-related issue.

12          The issue of -- the issue of -- the restraining

13  order is both a services-related issue and related to

14  the allegations in the petition.

15          So the issue of the vaccination is an issue

16  that I was involved with only peripherally.

17     Q.   Okay, I understand that part.

18          However, it would make more sense to me, had

19  you not sent this e-mail noticing the mother and her

20  attorney about the hearings specifically set to decide

21  on the issue of vaccination.  So you are the one

22  noticing; it's sent from you, not Maral.  And you

23  testified that you also wrote a report for this

24  hearing.

25     A.   Uh-huh.

Atkinson-Baker, Inc.
www.depo.com

1    Q.   A little more than just very limited

2  involvement.  You noticed them for the ex parte or

3  special hearing, and you also wrote a report for that

4  hearing.

5         That's why I am asking what would be the reason

6  of not including this state-provided forms that mother

7  have previously signed excusing or exempting her child

8  from being vaccinated to the juvenile court for

9  consideration?

10    A.   The only reason I can think of is it is not

11  something -- the issue is not something that was

12  particularly on my radar, and that it is not an issue

13  that is in my scope of responsibility, and that it was

14  not specifically related to the allegations in the

15  petition.

16         And the purpose of the hearing was -- and that

17  they were noticed -- the purpose of this was to notice

18  them of the hearing.

19    Q.   Were you present in that hearing on June 9th?

20    A.   I don't know if I was present or not.

21    Q.   Do you know if the hearing took place that day

22  or was it continued?

23    A.   I believe it was continued, but I don't know

24  that for sure.

25    Q.   I believe I gave you the exhibit previously,

1    Exhibit 13.

2             If you could take a look back again.

3             This is for the June 10, 2016 hearing.

4        A.   Yes.

5        Q.   Please read line 9 for me on page 2, line 9.

6        A.   Line 9, page 2:

7                  "The court authorizes the

8             immunization over the mother's

9             objection."

10       Q.   Is it fair to say that maybe the June 9th

11   hearing was continued to June 10th, and orders were made

12   on June 10th?

13       A.   Yes.

14       Q.   Could you please read from page 1 of this

15   exhibit under "Parties," could you please tell us where

16   it says, "Also present," could you please read the also

17   present line and then the line after it?

18       A.    "Also present in court are the

19             paternity grandparents, father's

20             significant other and two

21             witnesses."

22       Q.   Do you think you were one of two witnesses not

23   named?

24       A.   No.

25             The only reason I say that is I think if the

1    dependency investigator were present, they would specify

2    the dependency investigator as present.

3        Q.   But you are not certain?  It does say two

4    witnesses, and there's no name.

5             Do you remember being present at this hearing?

6        A.   I don't recall being present in this hearing,

7    but I am a legal party to the hearing, and they would

8    have named me.

9        Q.   Moving on to Exhibit 7, previously marked,

10   counsel has it.

11            Can you please tell us who is the e-mail from,

12   if you were copied, the date on it and the general

13   contact.  Then I will ask you to read certain portions

14   of it.

15       A.   Could you please repeat the question?  There

16   were many parts to that.

17       Q.   From, to, date, subject line, if you could

18   please read those things for me.

19       A.   From Lucy Ulikhanova to @ --" it's my county

20   e-mail.  The date is Saturday, June 4th of 2016.

21       Q.   What is the subject line?  It's at the top

22   here.

23       A.   Oh, the title on top says, "Vaccines Regarding

24   Lucy Ulikhanova Set on Hearing on 6/9/16."

25       Q.   So would this be Lucy's response to your notice

Atkinson-Baker, Inc.
www.depo.com

```
 1   regarding the hearing?

 2       A.   It appears so.

 3       Q.   Could you please read for me the second

 4   paragraph where it starts with, "You know..."

 5       A.   Okay, I do see a line -- a skipped line break

 6   where it begins, "You know..."

 7            Is that where you are --

 8       Q.   Yes, please.

 9       A.   It says:

10            "You know that this subject

11            touches close to me.  You know my

12            father was a pioneer leader in

13            alternative healthcare in this

14            country, to attempt this what she's

15            not even legal age to go to school

16            and is not in jurisdiction shows

17            you are antagonist."

18       Q.   Let me ask you a question.

19            What does she mean here saying "... she is not

20   even legal age to go to school ..."?

21            What does the mother mean when she says that?

22            MR. BURKWITZ:  Calls for speculation.

23   BY MS. SEROBIAN:

24       Q.   What is your understanding?

25            MR. BURKWITZ:  You can answer.
```

Atkinson-Baker, Inc.
www.depo.com

```
 1            THE WITNESS:  Okay.  I -- I don't know.  She's
 2   not legal age to go to school --
 3   BY MS. SEROBIAN:
 4       Q.   What is the legal age to go to school?
 5       A.   Five years old.  My understanding is five years
 6   old.
 7       Q.   Did you testify earlier that the legal age to
 8   go to school is first grade?
 9            MR. BURKWITZ:  Misstates the evidence.
10   BY MS. SEROBIAN:
11       Q.   What is your understanding under California
12   law?
13            When are the children legally required to go
14   to school?
15       A.   Legally required, first grade.
16       Q.   First grade.
17            Is five years old first grade?
18            MR. BURKWITZ:  Calls for speculation,
19   overbroad.
20   BY MS. SEROBIAN:
21       Q.   What age, generally, the child needs to be to
22   be enrolled in the first grade?
23            MR. BURKWITZ:  Lacks foundation, overbroad,
24   speculation.
25            You can answer.
```

1    BY MS. SEROBIAN:

2        Q.    Do you know the California law that applies to

3    how old a child needed to be to be enrolled in first

4    grade?

5        A.    I don't know the specific cut-off times.    It

6    could be five or six years old.

7        Q.    So when the child is five years old, they could

8    be enrolled in the first grade; is that your

9    understanding?

10       A.    I don't know what the cut-off ages are.

11       Q.    Do you know the cut-off for the County of

12   Los Angeles?

13       A.    No, I don't know the specific date of the

14   cut-off of Los Angeles Unified School District.

15       Q.    If I tell you that the child needs to be six

16   years old before September 1st of that academic year to

17   enroll in first grade, would that sound right?

18       A.    That could be fine, sure.

19       Q.    What does the mother mean when she says here,

20   "... and is not in jurisdiction..."?

21             What does that mean to you?

22             MR. BURKWITZ:    Calls for speculation what the

23   mother means or what she is meaning.

24             THE WITNESS:    If I take this line and look at

25   this line in the context of what we are discussing now,

Atkinson-Baker, Inc.
www.depo.com

1  she is talking about -- and this is only based on

2  questions you have asked me leading me to this point.

3  BY MS. SEROBIAN:

4      Q.   Yes.

5      A.   That, again, based on your question saying

6  that the court has not made its dispositional ruling,

7  that that's what she is talking about.

8      Q.   That's your understanding?

9      A.   That is my understanding now, after you have

10  asked your questions leading into this point, yes.

11          At the time, I would not have understood that.

12     Q.   Can you then read the next paragraph following

13  the one you just read, where it starts with, "There..."

14     A.   Yes.

15              "There are support groups teams

16          out there thousands of mothers,

17          fathers against this.  My father

18          healed children who were sick on

19          vaccines, suffered side effects and

20          autism."

21     Q.   Does this tell you that mother had a personal

22  knowledge or experience with children affected

23  negatively after vaccinations?

24     A.   No.

25     Q.   What does it tell you?

1    A.   It tells me that her father healed children

2  who were sick on vaccines, suffered side effects of

3  autism.

4    Q.   Does it also tell you that there are thousands

5  of other parents and support groups complaining of this

6  issue?

7    A.   Yes.

8    Q.   Can you then read the paragraph, skipping the

9  one in between, that says, "You will not..."

10    A.   Yes.

11    Q.   And then the sentence afterwards, please.

12    A.   "You will not force vaccination

13          on my child.  I will be the decider

14          of that and what vaccine it will

15          be."

16    Q.   What is mother trying to enforce here; what do

17  you think?

18    A.   She is trying to enforce that she does not want

19  her child vaccinated.

20    Q.   Do you think she is trying to enforce her right

21  as a parent to decide whether her child is going to be

22  vaccinated or not?

23    A.   Certainly.

24    Q.   Did you have discussions with the mother

25  regarding her personal experience with side effects of

Atkinson-Baker, Inc.
www.depo.com

```
 1   an immunizing as a child or vaccinated?
 2      A.   I don't recall.
 3      Q.   Looking back to the same exhibit to the
 4   paragraph I asked you to skip, where it starts with,
 5   "I, myself..."
 6           Could you please read that?
 7      A.    "I, myself, my brother brought me
 8           up on vaccines by my mother.  We
 9           didn't know at the time the
10           ingredients.  I have nothing but
11           health issues, allergic reactions.
12           Once my father switched me to an
13           organic lifestyle, those started to
14           fade."
15      Q.   Does this kind of shine a light on her own
16   personal negative experience with vaccinations?
17           MR. BURKWITZ:  Calls for speculation, no
18   foundation.
19   BY MS. SEROBIAN:
20      Q.   What is she trying to convey to you here in
21   that paragraph?
22           MR. BURKWITZ:  Calls for speculation.
23           You can answer.
24           THE WITNESS:  I think my hesitancy is that --
25   well, first of all, I don't make any sense of those
```

Atkinson-Baker, Inc.
www.depo.com

1   two -- of those two lines, I don't understand anything

2   she is saying.  It is a completely incoherent sentence.

3   BY MS. SEROBIAN:

4        Q.   It might have typos, but it does say something.

5   It does have typos.  Not that she needs to speak perfect

6   English or write perfect English?

7             MR. BURKWITZ:  Don't answer the question.

8             You are just arguing with him.  Next question.

9   It's ridiculous.

10  BY MS. SEROBIAN:

11       Q.   Do you deal with people of different

12  ethnicities and backgrounds as a social worker?

13       A.   Yes.

14       Q.   Are there people who speak less English than

15  you?

16       A.   Yes.

17       Q.   Are there people who write less of an English

18  than you?

19       A.   Yes.

20       Q.   Do you assume that they are all incoherent when

21  they are writing you most typos?

22       A.   No.

23       Q.   Do you judge them based on the way they speak

24  English?

25       A.   No.

Atkinson-Baker, Inc.
www.depo.com

1    Q.   Did you ever consider maybe speaking to mother

2  or looking into getting a medical exemption for child

3  Penelopy before enrolling her in school?

4            MR. BURKWITZ:  Lacks foundation.

5            MS. SEROBIAN:  I am asking if he considered.

6            MR. BURKWITZ:  It lacks foundation that it

7  existed.

8            You can answer.

9  BY MS. SEROBIAN:

10    Q.   Did you consider, you, you consider seeking a

11  medical exemption for child Penelopy?

12            MR. BURKWITZ:  Lacks foundation.

13            THE WITNESS:  No.

14  BY MS. SEROBIAN:

15    Q.   Did you not consider because you did not know

16  it existed?

17    A.   No.

18    Q.   I don't understand the "no."  Can you please

19  explain what the "no" means?

20            Did you know that medical exemption existed?

21    A.   I was not aware of all of the medical

22  exemptions.  I knew that there were medical exemptions.

23  I understood that there were exemptions.

24            Did I consider a medical exemption for

25  Penelopy?  The answer is no.

Atkinson-Baker, Inc.
www.depo.com

1          MS. SEROBIAN:  I am going to refer you to

2     Exhibit 9, previously marked.

3          Counsel has it.

4          Take a moment to read this and tell us who is

5     the author of this exhibit, the date and the subject of

6     this.

7      A.    This appears to be a letter from South Park

8     doctor.  Looks like at the bottom, it says, "Dr. Tara

9     Zandvliet," dated May 23, 2017.

10     Q.    Can you please read for yourself and then tell

11     us what this means, this letter?

12     A.    All right.

13     Q.    What is this letter telling you?

14     A.    Well, it appears to be a doctor giving medical

15     reasons why this doctor feels Penelopy is at high risk

16     of an adverse reaction to vaccines.

17     Q.    Do you know if such a medical exemption is

18     sufficient to enroll a child in a public school and skip

19     immunization under the current law?

20     A.    No.

21     Q.    You don't know or it's not sufficient?

22     A.    I don't know it.

23     Q.    Would it surprise you to learn that the child

24     presently is enrolled in Glendale Unified and no longer

25     required to be immunized, based on this medical

Atkinson-Baker, Inc.
www.depo.com

1    exemption?

2        A.    Okay.

3        Q.    Would it surprise you to know that?

4        A.    No.

5        Q.    But you were not aware of such an option?

6        A.    No.

7        Q.    You were not trained on the similar options by

8    your employer, County of Los Angeles?

9        A.    I don't believe so.

10       Q.    Turning to previously marked Exhibit 11, can

11   you please tell us the parties to this e-mail, the

12   date, subject line, and then if it has an attachment or

13   not.

14       A.    So it is from Maral Helwajian, subject is,

15   "Medical information," and it is sent on March 23, 2017

16   to Lucy Ulikhanova.

17       Q.    Does it have an attachment?

18       A.    It is unclear to me, based on this, if this --

19   it looks like there was a previous e-mail and a thread

20   that had an attachment.

21       Q.    Can you please read the line written by sender

22   Maral Helwajian?

23       A.     "This is all the medical info

24              I have on Penelopy.  Hope this

25              document helps."

1      Q.   Can you turn to the document and please tell
2   us the title of the document?
3      A.   Confidential Health and Education Passport.
4      Q.   Are you familiar with this type of documents?
5      A.   Yes.
6      Q.   What does this document represent to you?
7      A.   This is a document that social workers and
8   nurses input information regarding the children's health
9   and education.
10      Q.   Is it a standard document that the Department
11   of Children and Family Services uses to document the
12   healthcare received by the children in their care?
13      A.   Yes.
14      Q.   Turning to pages 4 and 5 under,
15   "Immunizations."
16      A.   Yes.
17      Q.   What would this line of information tell you,
18   under "Immunizations"?
19      A.   That all immunizations waived dated 11/13/2012.
20           Source of information, Dr. Boxtein.
21      Q.   Then following that date, what are the entries?
22      A.   Looks like a series of vaccinations, "IPV, date
23   given, 10/06/2016."
24      Q.   I will ask in a general.  You don't have to
25   read each one, but looking at pages 4 and 5 under the

Atkinson-Baker, Inc.
www.depo.com

1   topic "Immunizations" following the line where it says

2   "All immunizations waived."

3           How many immunizations do you see?

4       A.   Appears to be roughly 18.

5       Q.   Are there any current dates associated with the

6   immunizations?

7       A.   Any?

8       Q.   Common dates.  It looks like --

9       A.   Oh, yes.  It appears I see three or four.  It

10  looks like June 10, 2016, August 9, 2016, January 19 of

11  2017, and it looks like there's another, October 6 of

12  2016.

13      Q.   Did you inform the mother prior to this

14  appointment that the immunizations were going to be

15  taking place?

16      A.   No.

17      Q.   Did you ever invite her to attend --

18      A.   No.  Sorry.

19      Q.   No problem.  Just for a clear record.

20          Did you ever invite her to attend any of these

21  appointments with Penelopy?

22      A.   No.

23      Q.   Did she ask you to be present at any of

24  Penelopy's medical appointments?

25      A.   Who is "she"?

1    Q.   "She" being the mother; I am sorry.

2    A.   I don't believe so.

3    Q.   Did you maybe make a statement to her --

4  Ms. Maral Helwajian told us previously that there was a

5  conflict, that therefore the mother was denied entry to

6  this appointment, a conflict with the paternal aunt.

7         Did you ever tell the mother that there's a

8  conflict with the paternal aunt, and she cannot be at

9  the medical appointment?

10   A.   I don't recall.

11   Q.   Did you ever authorize the father of the child

12 to be present at the medical appointments?

13        MR. BURKWITZ:  Lacks foundation.

14 BY MS. SEROBIAN:

15   Q.   Do you recall?

16   A.   No.  I didn't have anything to do with those

17 appointments.

18   Q.   So it would be part of the servicing social

19 worker's duties?

20   A.   Yes.

21   Q.   Did you investigate the father in this case as

22 part of the dependency investigator?

23   A.   Yes.

24   Q.   Did he test positive for methamphetamine while

25 you were on the case?

Atkinson-Baker, Inc.
www.depo.com

1    A.   I don't recall if he tested positive for

2  methamphetamines prior to adjudication or after

3  adjudication.

4         I know that he did test positive for

5  methamphetamine.

6    Q.   Did he miss any court-ordered drug test while

7  you were on the case?

8    A.   I don't recall.

9    Q.   Was he ordered to do drug tests while you were

10 the investigator on the case?

11   A.   I believe so, but I don't know for certain.  I

12 don't recall.

13   Q.   Do you know if the child was eventually removed

14 from the foster placement of the paternal aunt?

15   A.   Can you clarify your question?

16   Q.   Do you know if the child was eventually

17 removed from the foster placement of the paternal aunt?

18   A.   I don't know.

19   Q.   Do you know if the child was ever returned to

20 the mother's custody?

21   A.   I believe she was returned to the mother's

22 custody.

23   Q.   Do you know of the exit orders when the child

24 was returned to the mother's custody?

25   A.   No.

Atkinson-Baker, Inc.
www.depo.com

1        Q.    Do you know if jurisdiction is terminated in

2    this case?

3        A.    I believe it's terminated.

4        Q.    But you do not know who is the custodial

5    parent?

6        A.    No.

7        Q.    Do you know who was the custodial parent prior

8    to the beginning of the case?

9        A.    Yes.

10       Q.    Who was that?

11       A.    The mother.

12       Q.    Do you know if mother also has sole legal

13   custody rights?

14       A.    I believe so, yes.

15       Q.    Do you know what type of visitation father was

16   permitted prior to the dependency case being initiated?

17       A.    I believe he had monitored visits.

18       Q.    And do you think that remains so for the

19   remainder of the case?

20       A.    Yes.

21       Q.    And do you think that remains so why the case

22   closed?

23       A.    I don't know what the exit orders were.  I

24   assume so.

25       Q.    Do you know if the father was in compliance

Atkinson-Baker, Inc.
www.depo.com

1  with the court's orders?

2      A.    I don't believe he was, but I don't know that

3  for a fact.

4      Q.    I'm going to turn to Exhibit 17, previously

5  marked.

6            Please take a look at this document and tell us

7  what it is and where it's from.  The last page will help

8  you find that information.

9      A.    Okay.

10     Q.    Great, can you please tell us where is this

11 document from and what is this document?

12     A.    I honestly -- it appears to be medical

13 records.

14     Q.    Maybe the last page would help, the last page

15 of the document.

16     A.    The last page at the bottom says, "Burbank

17 Pediatric Affiliates."

18     Q.    Who is the patient in this case -- I mean, the

19 medical chart?

20     A.    Penelopy Garcia.

21     Q.    Turning your attention to page 4 of this

22 medical chart for Penelopy.

23           Can you please tell us the date?

24     A.    This 4 of 8 as indicated in the bottom

25 right-hand corner?

1    Q.   Yes.

2    A.   What is the question?

3    Q.   You already told us the name of the patient,

4  Penelopy, but can you tell us the date of the visit for

5  which these notes were taken?

6    A.   December 6th of 2016 is the office visit.

7    Q.   Can you please read the paragraph under the

8  line that says "subjective"?

9    A.    "This 6-year, 1-month-old female

10        presents with father and Nathan

11        (supervisor) for evaluation of the

12        following problems:  Had a cough for

13        two weeks resolved for one week.

14        Cough returned three days ago.

15        Sounds croupy.  Has been afebrile,

16        has a low-grade temp right now,

17        also gets congested, couch gets

18        worse in the evening."

19    Q.   Did you permit the father to attend this

20  medical appointment?

21        MR. BURKWITZ:  Lacks foundation.

22  BY MS. SEROBIAN:

23    Q.   Do you recall permitting the father to attend

24  this medical appointment for Penelopy?

25        MR. BURKWITZ:  Lacks foundation.

Atkinson-Baker, Inc.
www.depo.com

```
 1              THE WITNESS:  Yes.
 2   BY MS. SEROBIAN:
 3       Q.   Do you know who Nathan is, titled
 4   "Supervisor"?
 5       A.   I don't recall Nathan.
 6       Q.   Do you recall Nathan being one of the monitors
 7   by the Department?
 8       A.   Honestly, I don't recall.
 9       Q.   Do you know if father was permitted to attend
10   the medical appointments for the child?
11       A.   I don't know.
12       Q.   Do you know if Plaintiff here, mother,
13   Ulikhanova, was concerned that father was having
14   unauthorized contact with the child while in the care
15   of the paternal?
16              MR. BURKWITZ:  Objection, calls for
17   speculation.
18   BY MS. SEROBIAN:
19       Q.   Did the mother ever express to you this
20   concern?
21       A.   Yes.
22       Q.   On how many occasions did she express to you
23   this concern?
24       A.   Several.
25       Q.   It was her continued concern that the father
```

1    was having unmonitored or unauthorized contact with

2    Penelopy while the child was placed in the home of her

3    paternal aunt?

4        A.   Yes.

5        Q.   Could that have been one of the reasons the

6    child was removed from the home of the paternal aunt?

7        A.   I am unaware of the child being removed from

8    the paternal aunt, so I don't understand your question.

9        Q.   If I tell you that the child was removed from

10   the home of the paternal aunt sometime in December of

11   2016, would that surprise you?

12       A.   Yes.

13            I had never heard of that.

14       Q.   You did not review any of the notes following

15   the disposition hearing to know that the removal took

16   place?

17       A.   No, I did not.

18       Q.   Did you share mother's concern that maybe

19   father was having unauthorized contact in the home of

20   the paternal aunt?

21            MR. BURKWITZ:  Lacks foundation, overbroad.

22            Go ahead.

23            THE WITNESS:  It was certainly something I

24   took into consideration and certainly listened to the

25   mother's concern and discussed with the social worker.

Atkinson-Baker, Inc.
www.depo.com

1          Yes, there is a concern that we were aware of

2     and discussed.

3     BY MS. SEROBIAN:

4          Q.   Did the father in this case make any threats

5     against you?

6          A.   I don't recall if he made threats against me,

7     but I would not be surprised if he had.

8          Q.   Do you know if the father in this case made

9     threats against other servicing social workers like

10    Maral or monitors?

11         A.   I don't recall specifics.  I do recall that he

12    made threats.

13         Q.   Do you know of the Department's actions to

14    protect the employees against those threats, if any?

15         A.   I don't recall.

16         Q.   What is the standard procedure to protect

17    social workers against threats, do you know?

18              MR. BURKWITZ:  Overbroad, calls for

19    speculation.

20    BY MS. SEROBIAN:

21         Q.   Does the Department have policies to protect

22    their social workers against threats or practice --

23    policy or practice?

24         A.   I don't know that there is anything that anyone

25    can do to protect anyone from a threat, other than,

1  once a threat is made, to then take appropriate measures

2  to make sure that all parties are safe after something

3  like that happens.

4      Q.   Sure.

5          What are those appropriate measures that the

6  Department would take in a circumstances where a threat

7  is made?

8          MR. BURKWITZ:  It's overbroad.

9          THE WITNESS:  Can you be more specific?  Give

10  me a more specific scenario.

11          MS. SEROBIAN:  Sure.

12      Q.   Hypothetically speaking, for example, if a

13  parent on a case makes a threat against a social worker

14  and/or a monitor and uses terminology such as "guns" or

15  "violence."

16          What would be the next step the Department

17  would take to protect those employees?

18      A.   Okay, so it would be up to a social worker

19  whether they wanted to file a police report or not.

20          But certainly I would want any future contacts

21  to be conducted -- at least any kind of face-to-face

22  contact to be conducted at the office and alerting the

23  security guard of the circumstances.

24      Q.   Would there at least be an incident report

25  taken?

Atkinson-Baker, Inc.
www.depo.com

1      A.   It would certainly -- it should be noted in the

2    case notes, I would think.

3           We don't really have incident reports in our

4    system to do something like that, other than document in

5    the case file, or with our supervisors.

6           That's another thing we would do, we would also

7    inform our supervisor and possibly our administrator if

8    it was a serious threat.

9           We would certainly want to inform the

10   administrator so that they are aware of any need to

11   form any extra precautions.

12     Q.   Have you ever been trained as a social worker

13   regarding the steps to take when you are, you know,

14   being threatened with violence, for example, filing an

15   incident report, calling the police, taking certain

16   action.

17          Are there any trainings regarding these issues?

18     A.   It was a long time ago that I was in training,

19   and I don't recall if there were specific trainings

20   about what to do if you were threatened with harm.

21          I know in the course of my job, there have been

22   times when I have been threatened, and I informed my

23   supervisors, and I was given instructions about what to

24   do, if necessary.

25          I know that we hear about other -- if something

Atkinson-Baker, Inc.
www.depo.com

1   like that happens, we sometimes hear about it in the

2   office.  It does not happen often but occasionally.

3        Q.   So there's no process to document it; there is

4   no set procedure or practice to document things that

5   are --

6        A.   The common procedure that I am aware of is to

7   document the case note, especially if it's -- especially

8   if it is in the presence of children, that would

9   definitely be an important issue to document in the case

10  notes and to inform the supervisor.

11          If there's any threat to a social worker or any

12  employee, the safety of the social workers and employees

13  are important, also.

14          MS. SEROBIAN:  I think that's it for me.

15          MR. BURKWITZ:  I have no questions.

16          Same stipulation?

17          MS. SEROBIAN:  Yes.

18          Within seven days, I will get the original,

19  correct?

20          MR. BURKWITZ:  Correct.

21          Same stipulation.

22          (Previous stipulation as follows:

23          (MR. BURKWITZ:  I will propose the following

24  stipulation.

25          (We will have an agreement to relieve the court

Atkinson-Baker, Inc.
www.depo.com

1    reporter of her duties under the Code.

2              (She will forward the transcript directly to

3    the witness, who will provide her office location off

4    the record to the court reporter.

5              (The transcript will go directly to the

6    witness.

7              (I will advise Ms. Serobian within seven days

8    of her receipt of those transcripts if there's any

9    changes to the transcript.

10             (I will maintain the original transcript, but if

11   for whatever reason -- and I will produce it for

12   whatever purpose, law and motion, trial, whatever.

13             (And an unsigned, certified copy can be used

14   in lieu thereof, regardless.

15             (Good?

16             (MS. SEROBIAN:  Good, unless -- should I order

17   my own transcript, too?

18             (MR. BURKWITZ:  Yeah, unless you want to

19   maintain the copy of the original, and I will order the

20   transcript, whatever you want.

21             (You want to keep the copy of the original?

22   That way, you won't have to order it.

23             (MS. SEROBIAN:  Sure.

24             (MR. BURKWITZ:  So we will just amend the

25   stipulation that I will provide the original transcript

1   back to Plaintiff's counsel, and I will order a copy of

2   the transcript.

3          (And Ms. Serobian will have the transcript and

4   will produce it, if necessary.

5          (MS. SEROBIAN:  Perfect.  So stipulated.)

6          (Ending time:  3:00 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Atkinson-Baker, Inc.
www.depo.com

```
1   STATE OF CALIFORNIA            )
                                   )  SS.
2   COUNTY OF LOS ANGELES          )

3

4

5

6

7        I, the undersigned, declare under penalty of

8   perjury that I have read the foregoing transcript,

9   and I have made any corrections, additions or

10  deletions that I was desirous of making; that the

11  foregoing is a true and correct transcript of my

12  testimony contained therein.

13        EXECUTED this _____, day of _____,

14  20 ____, at _____, _____.
                        (City)                    (State)

15

16

17

18

19

20

21

22       _____

23                   STEPHEN CAREY

24

25
```

1          REPORTER'S CERTIFICATE

2

3          I, MARY FERGUSON, CSR No. 8769, Certified

4     Shorthand Reporter, certify;

5          That the foregoing proceedings were taken before

6     me at the time and place therein set forth;

7          That the testimony, if any, of witnesses, the

8     questions propounded, and all objections and statements

9     made at the time of the proceedings were recorded

10    stenographically by me and were thereafter transcribed;

11         That the foregoing is a true and correct

12    transcript of my shorthand notes so taken.

13         I further certify that I am not a relative or

14    employee of any attorney of the parties, nor financially

15    interested in the action.

16         I declare under penalty of perjury under the laws

17    of California that the foregoing is true and correct.

18    Dated this 19th day of April , 20 19 .

19

20

21    _____

22

23         MARY FERGUSON, RPR
           C.S.R. No. 8769

24

25

Atkinson-Baker, Inc.
www.depo.com

Index: 1..allergic

## Exhibits

**AD03529B_Exhibit-01** 4:10
25:21,22

**AD03529B_Exhibit-07** 4:12
39:9

**AD03529B_Exhibit-09** 4:13
48:2

**AD03529B_Exhibit-11** 4:15
49:10

**AD03529B_Exhibit-13** 4:17
10:18,19 38:1

## 1

**1** 25:21,22 38:14

**1-month-old** 56:9

**10** 13:1 14:24 15:7,14 16:15 38:3
51:10

**10/06/2016** 50:23

**10th** 11:5 38:11,12

**11** 11:8,9 49:10

**11/13/12** 33:17,18

**11/13/2012** 50:19

**11th** 66:21

**13** 10:18,19 12:14 15:7 38:1

**15** 5:19

**16** 12:10

**16th** 11:10 12:19

**17** 55:4

**18** 51:4

**19** 51:10

**1st** 42:16

## 2

**2** 38:5,6

**20** 5:19 65:14

**2016** 7:24 8:4,7 10:13,16 11:5,8,
9,11 12:10 13:2 14:24 15:7,14

16:15 21:16,20,21 22:5,15,21
23:25 24:8,12 25:13 26:4,14
30:10 34:8,9 35:6,21 38:3 39:20
51:10,12 56:6 58:11

**2017** 48:9 49:15 51:11

**2019** 66:21

**23** 48:9 49:15

**24** 5:17 18:25 19:1

**25** 18:23

## 3

**3** 5:15,18,21,23 6:2 29:11 34:9

**30th** 26:14

**31st** 26:4

**3:00** 64:6

## 4

**4** 50:14,25 55:21,24

**4th** 39:20

## 5

**5** 34:1,2 50:14,25

## 6

**6** 51:11

**6-year** 56:9

**6/9/16** 34:8 39:24

**6th** 30:10 56:6

## 7

**7** 39:9

## 8

**8** 55:24

**8769** 66:3,25

## 9

**9** 35:21 38:5,6 48:2 51:10

**9th** 34:8 37:19 38:10

## A

**academic** 42:16

**Academy** 32:10,14

**accuse** 20:18

**act** 18:8

**acting** 17:5 18:2

**action** 17:6 61:16 66:17

**actions** 59:13

**additions** 65:9

**address** 34:17

**addressed** 26:18

**adjudication** 10:25 11:1,10
12:10,16,18 13:5,11,16 15:8
53:2,3

**administrator** 61:7,10

**adverse** 48:16

**advise** 63:7

**afebrile** 56:15

**affected** 43:22

**Affiliates** 55:17

**afternoon** 5:7

**age** 20:13 40:15,20 41:2,4,7,21

**Agency** 31:12

**ages** 42:10

**agreement** 62:25

**ahead** 58:22

**alerting** 60:22

**allegation** 15:11

**allegations** 6:24 7:15 11:3
12:19,22 13:21 15:13 36:5,6,14
37:14

**allergic** 45:11

Stephen Carey
March 29, 2019

Atkinson-Baker, Inc.
www.depo.com

Index: allowed..children

**allowed** 32:15

**alternative** 40:13

**amend** 63:24

**American** 32:10,13

**and/or** 7:25 12:23 13:24 15:9 60:14

**Angeles** 5:14 19:5 23:12 24:2, 20 42:12,14 49:8 65:2

**antagonist** 40:17

**apparent** 15:7

**appears** 10:24 26:3,13,17,22 27:3 30:23 31:8,20 32:8,13 34:11 40:2 48:7,14 51:4,9 55:12

**applies** 42:2

**appointment** 51:14 52:6,9 56:20,24

**appointments** 51:21,24 52:12, 17 57:10

**approximation** 10:9

**April** 30:10 35:6 66:21

**arguing** 46:8

**assigned** 6:20 9:22 26:18 36:9

**assignment** 5:24 6:1,7,8,9 9:16 10:1,4 16:20,22 18:13 36:7

**assignments** 5:23

**assume** 11:2 28:6 46:20 54:24

**attach** 35:20,23

**attached** 33:25 35:4,24,25

**attachment** 8:15 30:17,19 32:5 33:19,23 49:12,17,20

**attachments** 29:7

**attempt** 40:14

**attend** 34:25 51:17,20 56:19,23 57:9

**attending** 32:3

**attention** 55:21

**attorney** 15:23 16:10 30:11 36:20 66:16

**August** 11:10 12:10,19 51:10

**aunt** 11:25 34:22 52:6,8 53:14,17 58:3,6,8,10,20

**author** 48:5

**authority** 14:3,20 28:2,12,19

**authorize** 52:11

**authorizes** 11:12 38:7

**autism** 43:20 44:3

**awards** 13:16

**aware** 19:20 47:21 49:5 59:1 61:10 62:6

---

**B**

**back** 15:23 35:16 38:2 45:3 64:1

**backgrounds** 46:12

**based** 14:9 36:6 43:1,5 46:23 48:25 49:18

**basically** 8:25

**Begin** 30:9

**beginning** 54:8

**begins** 40:6

**behalf** 18:8

**beliefs** 27:16 31:3,6

**beneath** 30:8

**body** 29:15,16

**bottom** 32:9,10 33:11,12 48:8 55:16,24

**Boxtein** 33:10 50:20

**break** 22:18 23:22 40:5

**broad** 19:7

**brother** 45:7

**brought** 6:11 45:7

**Burbank** 55:16

**BURKWITZ** 10:8 15:4 16:4 20:21 28:14 32:18,22 33:1 34:3 40:22,25 41:9,18,23 42:22 45:17, 22 46:7 47:4,6,12 52:13 56:21,25 57:16 58:21 59:18 60:8 62:15,20, 23 63:18,24

**business** 11:21 34:23

---

**C**

**C-A-R-E-Y** 5:12

**C.S.R.** 66:25

**California** 19:23,25 20:20 21:10 31:7,11,14 41:11 42:2 65:1 66:19

**calling** 61:15

**calls** 28:14 32:18,22 40:22 41:18 42:22 45:17,22 57:16 59:18

**care** 14:4 30:22 31:15 50:12 57:14

**caregiver** 11:21 18:6,8

**Carey** 5:1,7,12 29:21 34:7 65:22

**carrying** 36:8

**case** 6:4,10,11,16,17,19,20 7:18 8:9,19,21 9:3,5,9,10 10:4,17 12:23 13:13,22,24 14:4,5,21 15:15 16:15,21,25 17:22 18:13 19:13 20:17 27:10 31:17 35:13 36:8,10 52:21,25 53:7,10 54:2,8, 16,19,21 55:18 59:4,8 60:13 61:2,5 62:7,9

**cc'd** 30:11 34:13

**centers** 30:23

**CERTIFICATE** 66:1

**certified** 63:13 66:3

**certify** 66:4,15

**change** 21:14,25 22:11,14,22, 23,25 23:5,22,23,24 24:6,8,11

**changed** 21:16 24:7

**chart** 55:19,22

**child** 6:13 13:24 14:4 18:6,18,20 19:23 20:7,13 21:5,10 23:1,7,21 24:3 25:8 27:6,15,17 29:10 30:22 31:24 33:5 35:10 37:7 41:21 42:3,7,15 44:13,19,21 45:1 47:2, 11 48:18,23 52:11 53:13,16,19, 23 57:10,14 58:2,6,7,9

**child's** 17:5 18:3 33:7

**children** 14:13 19:25 21:9,12 22:10,15 24:13,22 41:13 43:18, 22 44:1 50:11,12 62:8

**children's** 5:15,17,18,20,23 6:1
  50:8

**chose** 21:5

**circumstances** 60:6,23

**City** 65:14

**clarification** 14:6

**clarify** 9:14 15:17,24 16:4,8,10
  24:9 53:15

**clause** 25:13

**clear** 29:9 51:19

**clerk** 12:7

**close** 19:1 40:11

**closed** 8:21 54:22

**co-defendant** 6:12

**Code** 63:1

**common** 51:8 62:6

**communication** 26:1

**communications** 34:6

**Community** 31:15

**complaining** 44:5

**completed** 18:14 31:21

**completely** 9:9 46:2

**compliance** 54:25

**concern** 57:20,23,25 58:18,25
  59:1

**concerned** 27:23 28:2,12 57:13

**conduct** 36:4

**conducted** 60:21,22

**Confidential** 50:3

**conflict** 52:5,6,8

**confused** 30:1

**congested** 56:17

**consideration** 37:9 58:24

**considered** 21:3 47:5

**contact** 39:13 57:14 58:1,19
  60:22

**contacts** 60:20

**contained** 65:12

**context** 26:25 42:25

**continuance** 10:14 12:10,14

**continuances** 7:12

**continue** 25:14

**continued** 6:21 11:10 12:5,17,
  19 37:22,23 38:11 57:25

**Continues** 11:9

**conversations** 28:22

**convey** 45:20

**copied** 26:21,22 29:17 39:12

**copy** 63:13,19,21 64:1

**corner** 55:25

**correct** 7:11,13 9:23 12:11 15:3,
  9 17:11,15,24,25 18:3,24 20:20
  21:1,2,6,7 22:12 23:15,18 25:9,
  11 27:2 30:7 62:19,20 65:11
  66:13,20

**corrections** 65:9

**couch** 56:17

**cough** 56:12,14

**counsel** 29:12 34:2 39:10 48:3
  64:1

**country** 40:14

**county** 5:13 19:4 23:11 24:1,19
  25:4 39:19 42:11 49:8 65:2

**court** 11:2,5,12 13:8,10,15,17,
  20,23,25 14:7,8,10,15,18,25
  15:2,8,20 17:3,5,11,15,24 18:11
  33:21 34:20,24 35:9,12 37:8
  38:7,18 43:6 62:25 63:4

**court's** 14:9 55:1

**court-ordered** 53:6

**cousins** 12:1

**criteria** 18:9

**croupy** 56:15

**CSR** 66:3

**current** 5:23 6:1 18:6 21:9 48:19
  51:5

**custodial** 54:4,7

**custody** 53:20,22,24 54:13

**cut-off** 42:5,10,11,14

---

**D**

**date** 6:25 7:7,8,12,19,21 10:13,
  14,15,16 12:19 21:25 26:2 29:17
  32:9 34:6,9 39:12,17,20 42:13
  48:5 49:12 50:21,22 55:23 56:4

**dated** 11:4 26:4,13 33:16,18
  48:9 50:19 66:21

**dates** 7:4 10:2 51:5,8

**daughter** 31:22

**day** 7:16 37:21 65:13 66:21

**days** 56:14 62:18 63:7

**deal** 46:11

**December** 56:6 58:10

**decide** 35:12 36:20 44:21

**decider** 44:13

**declare** 65:7 66:18

**declining** 31:21

**deletions** 65:10

**denied** 52:5

**Department** 12:22 31:14 50:10
  57:7 59:21 60:6,16

**Department's** 59:13

**depend** 6:7

**dependency** 5:24 6:16,17,18,22
  17:3,13 18:13 36:3 39:1,2 52:22
  54:16

**depending** 6:6 13:17

**desirous** 65:10

**details** 9:19 25:10,11,19 26:23
  29:3,4,5

**detention** 6:21 7:1,5,7,20 8:19

**determine** 13:18

**difficult** 24:10 29:5,7

**directly** 63:2,5

**discretion** 17:8

**discussed** 58:25 59:2

**discussing** 42:25

**discussions** 44:24

**disposition** 6:23 7:2,9,15 8:1,7, 21 9:17,23 11:2 12:25 13:5,10, 15,19,22 14:19 15:1,9,12 58:15

**dispositional** 43:6

**distinction** 22:24

**District** 42:14

**doctor** 48:8,14,15

**doctor's** 33:9 35:11

**document** 10:22 31:18 49:25 50:1,2,6,7,10,11 55:6,11,15 61:4 62:3,4,7,9

**documents** 8:11,12,17 9:6 27:13,15,20 35:5,21 50:4

**drug** 53:6,9

**duly** 5:2

**duties** 5:21 52:19 63:1

---

**E**

**e-mail** 26:1,3,7,10,12,13,15,21, 24 27:21 29:16,18,20 30:8,11,17 33:23 34:5,7,9,10,11,15,16 35:6 36:19 39:11,20 49:11,19

**e-mails** 8:13 28:18 29:6

**earlier** 35:5 41:7

**early** 27:9,11

**education** 50:3,9

**educational** 15:15 16:16,18,21 17:3,8,14,23 18:7,14 19:6,14,18, 20 21:4 23:13,16,17

**effect** 22:21 25:12 28:10

**effective** 23:5

**effects** 43:19 44:2,25

**employee** 62:12 66:16

**employees** 59:14 60:17 62:12

**employer** 19:4 23:11 24:1,19 49:8

**end** 10:4

**ended** 9:11,12,15,17 10:1

**ending** 64:6

**enforce** 44:16,18,20

**English** 46:6,14,17,24

**enroll** 21:5 42:17 48:18

**enrolled** 20:1,13 22:10,15 24:13 27:15 41:22 42:3,8 48:24

**enrolling** 47:3

**entail** 5:20 19:14

**entries** 50:21

**entry** 52:5

**establish** 17:4 18:2

**established** 18:4

**Estelle** 33:7

**estimate** 10:9

**ethnicities** 46:12

**evaluation** 56:11

**evening** 56:18

**eventually** 53:13,16

**evidence** 15:4 41:9

**exact** 22:20

**examination** 5:5 66:10

**examined** 5:3

**exceptions** 25:18

**excuse** 23:20 24:3,23

**excusing** 37:7

**EXECUTED** 65:13

**exempt** 23:1,7 25:7

**exempting** 37:7

**exemption** 31:3,6 47:2,11,20,24 48:17 49:1

**exemptions** 47:22,23

**exhibit** 10:18,19 25:21,22,25 29:11,14 34:1,2 37:25 38:1,15 39:9 45:3 48:2,5 49:10 55:4

**existed** 47:7,16,20

**exit** 53:23 54:23

**experience** 43:22 44:25 45:16

**explain** 36:1 47:19

**express** 28:17 57:19,22

**extends** 11:7

**extensive** 33:24

**extra** 61:11

---

**F**

**face-to-face** 60:21

**fact** 55:3

**factors** 18:4,5

**fade** 45:14

**fair** 38:10

**familiar** 6:14 8:23 14:17 50:4

**family** 11:22 34:22 50:11

**fast** 20:9

**father** 12:23 40:12 43:17 44:1 45:12 52:11,21 54:15,25 56:10, 19,23 57:9,13,25 58:19 59:4,8

**father's** 38:19

**fathers** 43:17

**feeling** 28:24

**feels** 28:13,18 48:15

**felt** 28:25

**female** 56:9

**FERGUSON** 66:3,24

**file** 7:3 8:9,11 14:5 32:17 60:19 61:5

**filing** 61:14

**financially** 66:17

**find** 55:8

**findings** 8:6,16 12:21 13:8,9 14:10 15:11,13

**fine** 10:3,11 16:5,12 42:18

**focusing** 28:11

**follow** 13:16 20:10

Atkinson-Baker, Inc.
www.depo.com

**force** 44:12

**foregoing** 65:8,11 66:5,13,19

**form** 31:7,16 32:6,13,15,21,25
61:11

**forms** 31:21,22 32:1 33:19,21
37:6

**forward** 29:15,22 63:2

**forwarded** 29:23 30:2,5,8,9

**foster** 53:14,17

**found** 13:17

**foundation** 32:19 33:1 41:23
45:18 47:4,6,12 52:13 56:21,25
58:21

**full** 5:11

**Funk** 34:12

**future** 60:20

**G**

**Garcia** 33:7 55:20

**gave** 37:25

**general** 6:1,3,6 9:19 10:3,5 12:7
13:12,14,15 17:1 39:12 50:24

**generally** 7:13 13:8 16:25 41:21

**give** 10:8,9,10 14:16 60:9

**giving** 48:14

**Glendale** 48:24

**good** 5:7 63:15,16

**grade** 20:1 41:8,15,16,17,22
42:4,8,17

**grandfather** 25:13

**grandparents** 38:19

**great** 11:25 55:10

**greater** 26:23

**groups** 43:15 44:5

**guard** 60:23

**guess** 6:7 14:6 28:15

**guessing** 5:19 8:8

**guns** 60:14

**H**

**happen** 62:2

**happened** 9:10,16,20 15:20

**happy** 19:2

**harm** 61:20

**healed** 43:18 44:1

**health** 31:11 45:11 50:3,8

**healthcare** 40:13 50:12

**hear** 61:25 62:1

**heard** 14:16 25:12,18 58:13

**hearing** 6:21 7:1,2,5,8,20 8:1
10:25 11:1,2,8 12:5,10,17 13:1,5,
6,10,11,22 14:19 15:1,9 34:8,17,
18,19 35:2,22 36:24 37:3,4,16,
18,19,21 38:3,11 39:5,6,7,24
40:1 58:15

**hearings** 7:9 36:20

**held** 12:17

**helps** 49:25

**Helwajian** 6:12 34:13 49:14,22
52:4

**hesitancy** 45:24

**high** 48:15

**history** 8:18,22,24 9:1

**hold** 15:1,8 30:21

**home** 58:2,6,10,19

**honestly** 8:4,8 23:9 55:12 57:8

**Hope** 49:24

**hot** 27:5

**Human** 31:11

**hypothetically** 13:20 20:5,12
60:12

**I**

**identification** 10:20 25:23

**immediately** 6:21

**immunization** 11:12 23:25

24:21 25:14 36:10 38:8 48:19

**immunizations** 21:8 31:4,6
50:15,18,19 51:1,2,3,6,14

**immunized** 21:11,13 22:10,16
23:2,7,21 24:3,13 25:8 48:25

**immunizing** 45:1

**important** 35:8 62:9,13

**incident** 60:24 61:3,15

**included** 12:3

**including** 19:12 24:6 37:6

**incoherent** 46:2,20

**info** 49:23

**inform** 24:20 25:1 27:9 51:13
61:7,9 62:10

**information** 24:25 25:5 27:1
49:15 50:8,17,20 55:8

**informed** 27:12 61:22

**ingredients** 45:10

**initiated** 19:13 54:16

**input** 50:8

**instructions** 9:2 61:23

**intent** 34:14,16

**interactions** 27:4

**interested** 66:17

**interests** 17:5 18:3

**investigate** 52:21

**investigation** 36:4

**investigator** 5:24 6:17,19,22
17:13 36:4 39:1,2 52:22 53:10

**invite** 51:17,20

**involved** 19:23 23:2 36:16

**involvement** 37:2

**iphone** 30:3

**IPV** 50:22

**issue** 20:23,25 27:12 29:8,9
34:20,24 35:12 36:10,11,12,13,
15,21 37:11,12 44:6 62:9

**issued** 11:17 12:7

Stephen Carey
March 29, 2019

Atkinson-Baker, Inc.
www.depo.com

**issues** 11:5 14:10,11,12 15:19 16:9 28:22 34:17 35:25 36:2,9 45:11 61:17

**items** 9:22

---

**J**

**January** 51:10

**job** 61:21

**judge** 6:22 7:10 46:23

**July** 11:8,9

**June** 8:3,7 10:13,16 11:5 13:1 14:24 15:7,14 16:15 34:8,9 35:21 37:19 38:3,10,11,12 39:20 51:10

**jurisdiction** 6:23 7:1,9,14,25 8:20 14:18 15:3 40:16 42:20 54:1

**jurisdictional** 8:6 14:10

**juvenile** 15:8 17:23 33:21 37:8

---

**K**

**kind** 24:10 45:15 60:21

**kindergarten** 18:18,20 20:3,6,7, 8,14,16,20 21:6

**knew** 20:5 47:22

**knowledge** 43:22

---

**L**

**lacks** 41:23 47:4,6,12 52:13 56:21,25 58:21

**law** 19:22 20:20 21:9,14,16,17,25 22:8,11,14,20,22,23,25 23:5,23, 24 24:6,7,8,12,14,15,17,18,21 25:11,12 41:12 42:2 48:19 63:12

**laws** 25:1,7 66:19

**leader** 40:12

**leading** 43:2,10

**learn** 48:23

**legal** 7:3 8:11 14:18 15:2 21:18, 19 39:7 40:15,20 41:2,4,7 54:12

**legally** 41:13,15

**letter** 48:7,11,13

**Licensing** 31:15

**lieu** 63:14

**lifestyle** 45:13

**light** 45:15

**limit** 17:2,11,13,22 19:10

**limited** 16:21 18:14 37:1

**lines** 46:1

**listened** 58:24

**living** 12:2 34:22

**location** 63:3

**long** 5:16 28:8 61:18

**longer** 10:16 48:24

**Los** 5:14 19:5 23:12 24:2,20 42:12,14 49:8 65:2

**low-grade** 56:16

**Lucy** 6:12 16:15 26:13,17 27:5 29:20 30:10 33:8,16,20 34:7,12 39:19,24 49:16

**Lucy's** 39:25

---

**M**

**made** 6:22 7:10,11,13 8:7 12:21, 22 15:13 16:1,18 38:11 43:6 59:6,8,12 60:1,7 65:9 66:10

**maintain** 63:10,19

**make** 14:11,20 15:11,12 33:14, 17 36:5,18 45:25 52:3 59:4 60:2

**makes** 60:13

**making** 13:9,10,23 14:3 65:10

**manner** 28:9

**Maral** 6:12 26:18 34:13 36:22 49:14,22 52:4 59:10

**Maral's** 36:8

**March** 26:4,14 49:15

**marked** 10:19 25:22 29:12 34:2 39:9 48:2 49:10 55:5

**Marks** 30:16 32:1,3

**MARY** 66:3,24

**Marylou** 26:8

**MAT** 8:16

**matter** 11:9

**meaning** 42:23

**means** 19:17 31:20 32:21,25 42:23 47:19 48:11

**meant** 11:18 23:13

**measures** 60:1,5

**medical** 47:2,11,20,21,22,24 48:14,17,25 49:15,23 51:24 52:9, 12 55:12,19,22 56:20,24 57:10

**meet** 15:11

**member** 14:8

**members** 11:22 34:22

**mentioned** 7:2 12:9 19:17

**message** 29:24 30:9

**methamphetamine** 52:24 53:5

**methamphetamines** 53:2

**minor** 6:13 14:19 15:3

**minute** 10:24 11:4 12:12 14:25 15:7 30:1

**Misstates** 15:4 41:9

**moment** 48:4

**monitor** 60:14

**monitored** 54:17

**monitors** 57:6 59:10

**month** 7:21,23 8:1 10:3,5,10 22:3

**mother** 11:6,17 12:23 15:14 16:15 18:17,19 27:5 28:3,12,19 31:25 33:20 34:21 35:5,9 36:19 37:6 40:21 42:19,23 43:21 44:16, 24 45:8 47:1 51:13 52:1,5,7 54:11,12 57:12,19

**mother's** 11:13 16:21 18:14 38:8 53:20,21,24 58:18,25

**mothers** 43:16

**motion** 63:12

Stephen Carey
March 29, 2019

Atkinson-Baker, Inc.
www.depo.com

Index: moving..policies

**moving** 27:20 29:11 34:1 39:9

**N**

**named** 12:13 38:23 39:8

**Nathan** 56:10 57:3,5,6

**needed** 18:7,8 42:3

**negative** 45:16

**negatively** 43:23

**neglect** 21:3

**neglectful** 20:18

**note** 62:7

**noted** 61:1

**notes** 56:5 58:14 61:2 62:10 66:14

**notice** 34:17 37:17 39:25

**noticed** 37:2,17

**noticing** 36:19,22

**number** 5:22 19:16

**nurses** 50:8

**O**

**oath** 66:7

**objected** 27:6

**objection** 11:13 38:9 57:16

**objections** 66:9

**occasionally** 62:2

**occasions** 29:2 57:22

**October** 51:11

**offered** 19:21

**office** 56:6 60:22 62:2 63:3

**option** 49:5

**options** 49:7

**order** 10:24 11:4,6,7,16 12:6,12 14:19,25 15:7 17:15 18:1,11 21:13 34:19,21,24 36:13 63:16, 19,22 64:1

**ordered** 14:13 53:9

**orders** 13:24 14:4,11,20 38:11 53:23 54:23 55:1

**organic** 45:13

**original** 62:18 63:10,19,21,25

**overbroad** 20:21 41:19,23 58:21 59:18 60:8

**P**

**p.m.** 64:6

**pages** 8:14 30:20,23 50:14,25

**paragraph** 26:6 28:1 40:4 43:12 44:8 45:4,21 56:7

**paragraphs** 27:22

**parent** 13:24 14:5 17:4 18:2,5 19:6 20:5,7,15,18 21:5 23:1 25:7 44:21 54:5,7 60:13

**parent's** 17:2,8,13,22 33:6,8,15

**parental** 19:17 23:17,20

**parents** 14:13 19:14 20:2 23:6 25:14 44:5

**parents'** 23:12 24:2,22

**Park** 48:7

**part** 17:1 29:22 30:2 36:17 52:18,22

**parte** 34:18,19 37:2

**participate** 18:8 21:13

**participated** 19:3

**parties** 6:14 14:13 26:2 33:5 38:15 49:11 60:2 66:16

**parts** 39:16

**party** 39:7

**Passport** 50:3

**paternal** 11:25 12:1 34:21 52:6, 8 53:14,17 57:15 58:3,6,8,10,20

**paternity** 38:19

**patient** 55:18 56:3

**Pediatric** 55:17

**pediatrician** 27:17

**Pediatrics** 32:11,14

**penalty** 65:7 66:18

**pending** 15:22,25 16:2

**Penelope** 6:13 26:9 27:2 28:5 30:15 33:7 34:24 35:12 47:3,11, 25 48:15 49:24 51:21 55:20,22 56:4,24 58:2

**Penelopy's** 51:24

**people** 12:2 46:11,14,17

**perfect** 46:5,6 64:5

**period** 6:18

**peripherally** 36:16

**perjury** 65:8 66:18

**permanent** 12:6

**permit** 56:19

**permitted** 54:16 57:9

**permitting** 25:14 56:23

**personal** 27:16 31:3,6 43:21 44:25 45:16

**Persons** 11:24

**petition** 13:18,21 17:10,23 36:5, 14 37:15

**phrased** 20:22 22:23

**physician's** 30:22

**physicians** 32:15

**pioneer** 40:12

**place** 7:6 8:20,21 13:1,5 22:1 24:12,14 37:21 51:15 58:16 66:6

**placement** 14:11,20 53:14,17

**Plaintiff** 57:12

**Plaintiff's** 64:1

**Plaintiffs** 6:12

**plaintiffs'** 10:19 25:21,22

**Plaintiffs's** 10:18

**plan** 14:21

**point** 9:16,17 16:19 18:1 19:8 35:13 43:2,10

**police** 60:19 61:15

**policies** 59:21

**policy**  24:25 59:23

**portions**  39:13

**position**  5:13,16

**positive**  25:3,4 52:24 53:1,4

**possibility**  28:7

**possibly**  61:7

**practice**  17:1 59:22,23 62:4

**pre-k**  30:16

**precautions**  61:11

**prefer**  20:6

**prefers**  20:15

**prepared**  35:1

**presence**  62:8

**present**  24:6,18,21 25:7 37:19, 20 38:16,17,18 39:1,2,5,6 51:23 52:12

**presently**  23:6 24:8 25:8 48:24

**presents**  56:10

**previous**  22:8 49:19 62:22

**previously**  25:15 27:14 29:12 34:1 37:7,25 39:9 48:2 49:10 52:4 55:4

**prior**  8:9 22:11,22,25 23:22,24 51:13 53:2 54:7,16

**private**  30:16

**problem**  51:19

**problems**  56:12

**procedural**  8:18,22,23 9:1

**procedure**  8:25 59:16 62:4,6

**proceedings**  66:5

**process**  62:3

**produce**  63:11 64:4

**property**  11:22

**propose**  62:23

**propounded**  66:9

**protect**  11:18 59:14,16,21,25 60:17

**protected**  11:24

**prove**  18:1

**provide**  9:4 27:13 34:16 63:3,25

**provided**  9:6 10:23 26:24 29:12 35:5

**public**  21:13 22:11,16 23:3 24:13 48:18

**purpose**  37:16,17 63:12

**put**  66:7

**Q**

**question**  6:3 14:14 15:22,25 16:2 18:22 19:7 23:19 24:5,10,17 35:14 39:15 40:18 43:5 46:7,8 53:15 56:2 58:8

**questions**  16:10 22:23 43:2,10 62:15 66:9

**R**

**Rachel**  30:11

**radar**  37:12

**Raymond**  30:12

**reaction**  48:16

**reactions**  45:11

**read**  26:6 27:21,24 28:1 29:22 31:9 32:9 33:3,5 35:16,17 38:5, 14,16 39:13,18 40:3 43:12,13 44:8 45:6 48:4,10 49:21 50:25 56:7 65:8

**reading**  12:13 29:19 32:24

**reason**  35:20 37:5,10 38:25 63:11

**reasons**  28:4 48:15 58:5

**recall**  7:5,18 8:5,8,17 9:19 10:6, 12 12:8 15:20 16:17,23 18:12 21:14,22,25 23:15 24:24 28:21 29:3,4,5,9 33:22,24 35:7 39:6 45:2 52:10,15 53:1,8,12 56:23 57:5,6,8 59:6,11,15 61:19

**receipt**  63:8

**receive**  19:13 24:1

**received**  19:8 31:18 33:19 50:12

**recently**  21:15

**recipient**  29:17

**recommendations**  36:5

**recommended**  21:18 22:9

**record**  5:10 6:11 35:17 51:19 63:4

**recorded**  66:11

**records**  55:13

**refer**  10:17 48:1

**refusal**  30:25 32:5,16 33:4 35:10

**refuse**  23:1,7,20 24:2,23 25:14

**refused**  27:14,16

**related**  24:5 32:13 36:13 37:14

**relates**  24:17

**relative**  11:21 66:15

**relieve**  62:25

**remainder**  54:19

**remains**  24:14 54:18,21

**remember**  7:21,23 8:1 9:2,7 16:17 22:20 27:4 35:1,4 39:5

**removal**  58:15

**removed**  53:13,17 58:6,7,9

**repeat**  35:14 39:15

**rephrase**  15:5

**report**  8:14,15 30:22 35:1,4,21 36:23 37:3 60:19,24 61:15

**reporter**  29:13 63:1,4 66:4

**REPORTER'S**  66:1

**reports**  8:15 10:14 61:3

**represent**  50:6

**requesting**  34:19

**require**  18:10

**required**  18:7 21:12 22:9 23:9 31:3,6,23 41:13,15 48:25

**requirement**  21:17,19 22:15

**requirements**  32:2

**requiring**  24:12

**residence** 12:2 34:22,23

**resolved** 56:13

**respect** 23:15,17

**responded** 26:20 27:1

**responding** 26:10,11

**response** 39:25

**responsibility** 37:13

**responsible** 36:9

**restraining** 11:6,7,16 12:6 34:21 36:12

**retained** 15:15 16:16

**retains** 20:7

**retiring** 19:1

**returned** 53:19,21,24 56:14

**review** 8:9,12,18,22 9:2,3,9,21, 22,25 10:22 15:6 58:14

**reviewed** 8:11,13,15 9:6

**reviewing** 7:3 14:25

**ridiculous** 46:9

**right-hand** 55:25

**rights** 15:16 16:16,18,21 17:3,9, 11,14,23 18:14 19:6,14,17,19 21:4 23:18 24:22 54:13

**rights'** 19:21

**risk** 48:15

**role** 5:25 6:4,16 36:3

**Ronald** 34:12

**roughly** 9:12 51:4

**RPR** 66:24

**rule** 6:23

**ruled** 11:3

**ruling** 7:10,13,14 15:12 43:6

**rulings** 7:11 13:15 16:18

**run** 23:10

---

**S**

---

**S-T-E-P-H-E-N** 5:12

**safe** 60:2

**safety** 62:12

**Saturday** 39:20

**scenario** 60:10

**school** 19:24 20:1 22:11,16 23:3 24:13 27:15 30:16 31:22,23,25 32:3 34:25 40:15,20 41:2,4,8,14 42:14 47:3 48:18

**schools** 21:13

**scope** 36:6 37:13

**season** 10:10

**security** 60:23

**seeking** 47:10

**send** 34:10

**sender** 49:21

**sense** 36:18 45:25

**sentence** 28:11 44:11 46:2

**September** 42:16

**series** 50:22

**Serobian** 5:6 10:17,21 15:5 16:7,13 20:24 25:20,24 28:16 32:20,23 33:2 34:4 35:19 40:23 41:3,10,20 42:1 43:3 45:19 46:3, 10 47:5,9,14 48:1 52:14 56:22 57:2,18 59:3,20 60:11 62:14,17 63:7,16,23 64:3,5

**services** 14:12 18:7 31:11,15 50:11

**services-related** 36:9,11,13

**servicing** 52:18 59:9

**set** 34:8 36:20 39:24 62:4 66:6

**share** 58:18

**shine** 45:15

**shorthand** 66:4,14

**shortly** 6:20

**show** 27:13

**showing** 27:16

**shows** 40:16

**sick** 28:7 43:18 44:2

**side** 28:10 31:14 43:19 44:2,25

**signature** 33:15,17 35:11

**signatures** 33:11,12,14,15

**signed** 27:17 30:15 32:16 35:9 37:7

**significant** 38:20

**similar** 23:19 49:7

**single** 26:25 29:8

**skip** 18:18,19 20:3,8,15,19 45:4 48:18

**skipped** 20:6 40:5

**skipping** 44:8

**social** 5:15,17,18,21,23 6:1,6 17:1,12 18:23 19:21 20:6,17 24:20 26:18 31:15 36:8 46:12 50:7 52:18 58:25 59:9,17,22 60:13,18 61:12 62:11,12

**sole** 54:12

**sound** 42:17

**Sounds** 56:15

**Source** 50:20

**South** 48:7

**speak** 16:8,9 46:5,14,23

**speaking** 15:19 47:1 60:12

**special** 37:3

**specific** 7:7,8 10:2 13:12 19:20 23:17 24:4,24 25:17 36:3 42:5,13 60:9,10 61:19

**specifically** 7:22 19:18 28:23 33:24 36:20 37:14

**specifics** 59:11

**speculate** 28:20

**speculation** 28:14 32:18,22 40:22 41:18,24 42:22 45:17,22 57:17 59:19

**spell** 5:11

**spoke** 9:7 26:8

**SS** 65:1

**St** 30:16 32:1,3

Atkinson-Baker, Inc.
www.depo.com

Index: standard..unaware

**standard** 31:7 32:6 50:10 59:16

**start** 13:23 14:3 30:8

**started** 21:22 45:13

**starts** 27:22 40:4 43:13 45:4

**state** 5:10 19:22,25 31:11 65:1, 14

**state-provided** 37:6

**statement** 52:3

**statements** 66:10

**stay** 29:7

**stenographically** 66:11

**step** 60:16

**Stephen** 5:1,12 29:21 34:7 65:22

**steps** 61:13

**stipulated** 64:5

**stipulation** 62:16,21,22,24 63:25

**stop** 11:14

**strongly** 21:18 22:9

**stuck** 9:5

**subject** 26:2 29:18,20 30:12 34:6,7 39:17,21 40:10 48:5 49:12,14

**subjective** 56:8

**submit** 33:20

**submitted** 31:22,25 33:22,23

**suffered** 43:19 44:2

**sufficient** 48:18,21

**summary** 8:16

**supervisor** 56:11 57:4 61:7 62:10

**supervisors** 61:5,23

**supplemental** 8:14

**support** 43:15 44:5

**surprise** 48:23 49:3 58:11

**surprised** 59:7

**sustains** 13:21

**switched** 45:12

**sworn** 5:2

**system** 61:4

---

**T**

**taking** 51:15 61:15

**talk** 9:4

**talked** 23:11

**talking** 19:18 43:1,7

**Tara** 48:8

**teams** 43:15

**telephone** 28:17

**telling** 48:13

**tells** 44:1

**temp** 56:16

**temporary** 11:6,7,16 12:5 34:21

**term** 8:23,25

**terminated** 54:1,3

**terminology** 14:16 60:14

**test** 52:24 53:4,6

**tested** 53:1

**testified** 5:3 14:24 15:6 23:14 25:6 36:23

**testify** 41:7

**testimony** 65:12 66:8

**tests** 53:9

**thereof** 63:14

**thing** 28:6 61:6

**things** 9:3 15:24 39:18 62:4

**thousands** 43:16 44:4

**thread** 26:12,24 49:19

**threat** 59:25 60:1,6,13 61:8 62:11

**threatened** 61:14,20,22

**threats** 59:4,6,9,12,14,17,22

**time** 6:18 15:25 16:3 21:23,24 22:20 26:19 28:5,8 43:11 45:9

61:18 64:6 66:6,7,10

**timeframe** 9:1 19:3,10

**times** 7:16 42:5 61:22

**title** 12:13 30:24,25 31:2 32:24 33:3,4 39:23 50:2

**titled** 57:3

**today** 8:10

**told** 9:21 10:8 52:4 56:3

**top** 29:7,19 30:2,6 31:9 34:1 39:21,23

**topic** 27:6 51:1

**touched** 19:16

**touches** 40:11

**trained** 49:7 61:12

**training** 19:8,13 23:12,15 24:1, 4,19 61:18

**trainings** 19:4,16,21 24:24 25:1 61:17,19

**transcribed** 66:12

**transcript** 63:2,5,9,10,17,20,25 64:2,3 65:8,11 66:14

**transcripts** 63:8

**trial** 63:12

**true** 13:17 20:4 65:11 66:13,19

**turn** 25:20 50:1 55:4

**Turning** 21:8 49:10 50:14 55:21

**type** 23:25 24:19 26:1 50:4 54:15

**typos** 46:4,5,21

---

**U**

**Uh-huh** 5:9 36:25

**Ulikhanova** 6:13 15:15 16:16 26:4,13,17 27:5 29:20 30:10 33:8,20 34:8,13 39:19,24 49:16 57:13

**unauthorized** 57:14 58:1,19

**unavailable** 18:6

**unaware** 58:7

Atkinson-Baker, Inc.
www.depo.com

Index: uncle..Zandvliet

**uncle** 12:1

**unclear** 49:18

**undermined** 28:3,13,19,24 29:1

**undersigned** 65:7

**understand** 14:9 21:1 30:1
31:23 36:17 46:1 47:18 58:8

**understanding** 9:13 13:4,9
14:22 15:10 20:2 21:9,12 22:8
24:7,11,15 40:24 41:5,11 42:9
43:8,9

**understood** 43:11 47:23

**Unified** 42:14 48:24

**unmonitored** 58:1

**unsigned** 63:13

---

**V**

**vaccinate** 28:5 31:1,21 32:5,16
33:4 35:10

**vaccinated** 21:11 26:9 27:2,7
29:10 34:25 37:8 44:19,22 45:1

**vaccinating** 35:12

**vaccination** 24:22 26:5 28:10
36:15,21 44:12

**vaccinations** 21:8 27:14 43:23
45:16 50:22

**vaccine** 30:12,14 44:14

**vaccines** 39:23 43:19 44:2 45:8
48:16

**valid** 28:4

**verbally** 28:18

**violence** 60:15 61:14

**visit** 56:4,6

**visitation** 14:12,21 54:15

**visits** 54:17

---

**W**

**waived** 50:19 51:2

**waiver** 30:12,14 32:16 35:9

**walk-on** 34:18,19

**wanted** 18:17,19 60:19

**warning** 29:21

**ways** 23:22

**week** 56:13

**weeks** 56:13

**witnesses** 38:21,22 39:4

**words** 12:2

**worker** 5:15,17,18,21,23 6:2,6
17:1,12 18:23 20:17 26:18 46:12
58:25 60:13,18 61:12 62:11

**worker's** 52:19

**workers** 19:21 20:6 24:21 25:5
36:8 50:7 59:9,17,22 62:12

**worse** 56:18

**write** 46:6,17

**writing** 46:21

**written** 34:17 49:21

**wrote** 26:7 36:23 37:3

---

**Y**

**year** 7:21 8:2 10:3,5,10 25:15
42:16

**years** 5:18,19 18:24,25 19:1,11,
12 23:14 41:5,17 42:6,7,16

**yesterday** 26:8

---

**Z**

**Zandvliet** 48:9