Avi Burkwitz, Esq., Bar No.: 217225
aburkwitz@pbbllp.com
Ryan A. Graham, Esq., Bar No.: 310186
rgraham@pbbllp.com
**PETERSON · BRADFORD · BURKWITZ**
100 North First Street, Suite 300
Burbank, California 91502
Tel ....818.562.5800
Fax....818.562.5810

*Attorneys for Defendants,*
STEPHEN CAREY and MARAL HELWAJIAN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCY ULIKHANOVA, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF LOS ANGELES, *et al.*,<br><br>Defendants. | Case No. 2:17-CV-9193-FMO-E<br><br>Hon. Fernando M. Olguin (Dist. Judge)<br>Hon. Charles F. Eick (Mag. Judge)<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION TO EXPEDITE JUVENILE CASE FILE PETITION [ECF NO. 105]**<br><br>*[Filed concurrently with Decl. of Ryan Graham in Opposition]*<br><br>Complaint Filed: December 28, 2017<br>FAC Filed: April 19, 2018<br>SAC Filed: May 18, 2018<br>TAC Filed: July 2, 2018 |

Defendants Stephen Carey and Maral Helwajian ("Defendants") hereby submit their opposition to a document titled "PLAINTIFFS' EX-PARTE REQUEST FOR AN ORDER TO THE JUVENILE COURT TO ACT EXPEDITIOUSLY IN DECIDING THE JANUARY 15, 2019, PLAINTIFFS' REQUEST FOR DISCLOSURE OF JUVENILE CASE RECORDS UNDER WIC 827 AND PLAINTIFFS' JOINDER IN THE DEFENDANTS' IDENTICAL REQUEST APPROVED ON JULY 16, 2018" (ECF No. 105).

///

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

# TABLE OF CONTENTS

**I.**     **INTRODUCTION** .................................................................................4

**II.**    **LEGAL STANDARD FOR EX PARTE RELIEF** ..............................5

**III.**   **LEGAL BACKGROUND: SECTION 827 PETITIONS** ....................5

     A.    Statutory definition of "juvenile case file." ..............................5

     B.    Juvenile court procedures for processing section 827 petitions. ............6

**IV.**   **ARGUMENT** .......................................................................................7

     A.    Plaintiffs have not met the standard for ex parte relief..........................7

     B.    Granting ex parte relief, or the alternatively-requested relief, would reward Plaintiffs' gamesmanship..........................................................10

        1.    Plaintiffs persist in refusing to lay sufficient foundation for its requested relief....................................................................10

        2.    Plaintiffs have used § 827 to delay making disclosures. ............10

        3.    Defendants have had to withdraw demands for production due to Plaintiffs' lack of an 827 order. ...................................................11

        4.    Plaintiffs' gamesmanship in non-documentary discovery has been substantial and intentional....................................................11

     C.    On the merits, Plaintiffs' requested relief is unwarranted. ...................13

        1.    Plaintiffs' request is procedurally defective. ..............................13

        2.    Plaintiffs' request is better-suited to the state courts, as a practical matter. ........................................................................14

        3.    Plaintiffs' request needlessly entangles federal and state courts. ....................................................................................15

     D.    Plaintiffs continue to misrepresent events and facts.............................15

**V.**     **Conclusion** ....................................................................................16

N:\files\2003-Ulikhanova (COLA)\Pleadings\Opp_Ex_Parte_827\Opp_827 (MPAs).docx

1

## **TABLE OF AUTHORITIES**

**Cases (U.S. Supreme Court)**

*United Mine Workers of Am. v. Gibbs*,

    383 U.S. 715 (1966) ................................................................................15

**Cases (Circuit Courts of Appeals)**

*Manufactured Home Communities Inc. v. City of San Jose*,

    420 F.3d 1022 (9th Cir. 2005) ...............................................................14

**Cases (U.S. District Courts)**

*Mission Power Eng'g Co. v. Cont'l Cas. Co.*,

    883 F. Supp. 488 (C.D. Cal. 1995) ..............................................4, 5, 7

**Cases (State Appellate)**

*In re Elijah S.*,

    125 Cal. App. 4th 1532 (2005) ...........................................................6, 12

*In re Keisha T.*,

    38 Cal. App. 4th 220 (1995) ............................................................14, 15

*In re Tiffany G.*,

    29 Cal. App. 4th 443 (1994) ......................................................................6

**Statutes (State)**

Cal. Welfare & Institutions Code § 827(a)(3)(B)..........................................6

Cal. Welfare & Institutions Code § 827(a)(4) .............................................6

**Court Rules**

California Rule of Court 5.552 ...............................................................6, 7

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

3

N:\files\2003-Ulikhanova (COLA)\Pleadings\Opp_Ex_Parte_827\Opp_827 (MPAs).docx

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

The requests for ex parte relief in this case continue without end. It is more likely than not that another will come soon. This time, Plaintiffs believe there is some exigent circumstances to have the court make an order to the dependency court, although—as will be shown below—this request is not well-taken.

The Central District's local rules, the Court's standing order, and decisional authority—most notably *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488 (C.D. Cal. 1995)—provide that ex parte relief is limited to emergencies. Cases are commonly litigated to completion without a single ex parte filing. And for good reason—ex parte relief should be as rare as the emergencies that necessitate it. In *Mission Power*, Judge Edwards put it bluntly: "It is rare that a lawyer's credibility is more on the line, more vulnerable, than when he or she has created this kind of interruption[;] Lawyers must understand that filing an ex parte motion . . . is the forensic equivalent of standing in a crowded theater and shouting, 'Fire!' *There had better be a fire*." *Id.* at 492 (emphasis added).

Plaintiffs have now filed their fourth ex parte application within two weeks. *See* ECF Nos. 81 (clarification on MSJ order), 87 (disqualify Court as biased), 100 (strike Defs.' MSJ as late). In addition to meeting the substantive requirements for each type of relief in each of these filings, Plaintiffs must affirmatively explain why noticed motion procedures are inadequate to obtain that relief. When they fail to do so, as here, they should be held accountable for their serial, unnecessary disruptions.

What could justify the need for serial ex parte relief? Today, as in the previous applications, Plaintiffs point to the upcoming summary judgment hearing on June 20, 2019. But the Court set the summary judgment deadline on November 27, 2018. *Ord. Entering Joint Stip. Extending Deadlines*, ECF No. 70. Plaintiffs make no attempt to explain how they have been blindsided by an alleged emergency six months in the making.

4

The particular relief sought by Plaintiffs is extraordinary. With respect to Plaintiffs' petition for P.G.'s juvenile case file under California Welfare and Institutions Code section 827 ("section 827"), they ask the Court to admonish the California Superior Court, Los Angeles County, Juvenile Division ("juvenile court") that it should hurry up. The legal grounds for the order sought by Plaintiffs is left to speculation, and seems based on nothing more than frenzied impatience as Plaintiffs realize—at the eleventh hour—that they have no legitimate method of citing to the most important documents in this case.

 As discussed at length below, Plaintiffs should have filed their petition in March 2018, when they promised the Court they would—not January 2019, after a series of discovery disputes with Defendants (current and former). Defendants categorically oppose any order directed at the juvenile court. For these and other reasons, discussed below, the application is baseless and should be denied.

## II.    LEGAL STANDARD FOR EX PARTE RELIEF

"An ex parte motion should never be submitted by itself," but should also include a related noticed motion. *Mission Power*, 883 F. Supp. at 492. With respect to the merits, *Mission Power* counsels that (1) an ex parte applicant's evidence "must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures" and (2) "it must be established that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Id.* at 492.

## III.    LEGAL BACKGROUND: SECTION 827 PETITIONS

### A.    Statutory definition of "juvenile case file."

The present application concerns the juvenile case file of P.G. The term "juvenile case file," as defined and used in section 827, covers any documents filed

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

in a juvenile court case, § 827(e) [1], and "a wide range of records, including agency files where no juvenile court proceedings have been instituted and the matter is handled informally," *In re Elijah S.*, 125 Cal. App. 4th 1532, 1552 (2005). Agencies, such as DCFS, may not disseminate juvenile case files in their possession outside of the 827 petition procedures. *See* § 827(a)(3)(B); *accord In re Tiffany G.*, 29 Cal. App. 4th 443, 450 (1994). A juvenile case file can only be released to the public "pursuant to an order by the juvenile court after a petition has been filed and interested parties have been afforded an opportunity to file an objection" ("827 order" and "827 petition"). § 827(a)(2)(A).

Some persons intimately associated with juvenile proceedings have an automatic right to access juvenile case files outside of the 827 process—such as court personnel, parents, or certain school officials. § 827(a)(1). However, the automatic right afforded to this preferred group is limited to *access*—and does not include *dissemination*. *In re Tiffany G.*, 29 Cal. App. 4th at 450–51 ("While [a parent] has access to the juvenile court's records, to allow her to disseminate them to anyone she pleases would stand the confidentiality principle on its head.").

As especially relevant here, juvenile case file documents "may not be made as an attachment to any other documents without the prior approval of the presiding judge of the juvenile court." § 827(a)(4).

**B.     Juvenile court procedures for processing section 827 petitions.**

California Rule of Court No. 5.552 sets forth, in broad terms, the juvenile court's procedures for processing 827 petitions. First, the juvenile court must determine whether the petitioning party has shown good cause for the records requested. Cal. Rule. Ct. 5.552(d)(1). "Prior to the release of the juvenile case file or any portion thereof, the court shall afford due process, including a notice of and an opportunity to file an objection to the release of the record or report to all interested

---

[1] All subsequent citations to "827" are to California Welfare and Institutions Code section 827.

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

parties." Cal. Welf. & Inst. Code § 827(a)(3)(B). Consequently, if the 827 petitioner shows good cause, the juvenile court clerk issues notice to interested parties, which includes a blank objection form. Cal. Rule. Ct. 5.552(d)(2), (c)(1).

After notice is sent to involved parties, the juvenile court must "conduct an in camera review of the juvenile case file and [of] any objections." Cal. Rule Ct. 5.552(d)(3). The petitioner must show, by a preponderance of the evidence, "that the records requested are necessary and have substantial relevance to the legitimate need of the petitioner." Cal. Rule Ct. 5.552(d)(6). In deciding the petition, the juvenile court must balance the interests of (1) the petitioner, (2) the child, (3) the other parties to the juvenile proceedings, and (4) the public. Cal. Rule Ct. 5.552(d)(4). Balancing these interests, the juvenile court must come to the conclusion that "the need for discovery outweighs the policy considerations favoring confidentiality of juvenile case files." Cal. Rule Ct. 5.552(d)(5).

If the juvenile court grants the petition, it "*must* make appropriate orders, specifying the information to be disclosed and the procedure for providing access to it," Cal. Rule Ct. 5.552(d)(7)—*i.e.*, an "827 order." *See*, *e.g.*, ECF No. 63-1; ECF No. 78-2. In the resulting 827 order, the juvenile court also "*may* issue protective orders to accompany authorized disclosure, discovery, or access." Cal. Rule Ct. 5.552(d)(7), (8). [2]

## IV.   ARGUMENT

### A.   Plaintiffs have not met the standard for ex parte relief.

Plaintiffs make attempt to seriously justify their claim to require relief on an ex parte basis. Preliminarily, they have not attached a regularly noticed motion. *Mission Power*, 883 F. Supp. at 492.

---

[2]   For example, Defendants' 827 orders admonish Defendants' counsel that the recrds may only be used for purposes of this civil action, and may be distributed to the other parties, their counsel, expert witnesses, and insurance carriers—but nobody else. *E.g.*, ECF No. 63-1 ¶¶ 3–5. Defendants are also admonished that, if the documents need to be filed, they should be filed under seal. *Id.* at ¶ 3.

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

(1.) Regarding the first *Mission Power* consideration (prejudice), no irreparable prejudice would be suffered by hearing Plaintiffs' request for relief according to regular noticed motion procedures. Defendants do not dispute that P.G.'s juvenile case file records <u>are</u> critical to this litigation—the parties have always acknowledged this. The parties sought numerous adjustments to the Court's scheduling order because, in part, these records were not available due to the pending nature of Defendants' 827 petition. *Joint Stip to Cont. Discovery Cutoff* ¶ 5, ECF No. 63; *Joint Stip. to Cont. Mediation Cutoff*, at 2:23–24, ECF No. 67; *Joint Stip. to Cont. All Deadlines*, at 2:27–3:10, ECF No. 69. The critical importance of these records is no surprise to anyone—least of all the party who carries the burden at trial. But now, Plaintiffs claim they require ex parte relief in order to have the records in time for the hearings on June 20, 2019 (summary judgment and reconsideration). App. 2:18–21. But Plaintiffs have already filed their summary judgment motion and their motion for reconsideration without any evidentiary support from P.G.'s juvenile case file. Defendants have already opposed the motion for reconsideration. ECF No. 104. Supplemental memoranda in support of summary judgment are due June 6, 2019. The prejudice has already been suffered, and is already irreparable. This application is too little, too late.

(2.) Plaintiffs' request for ex parte relief also fails on *Mission Power*'s second consideration (fault/excusable neglect). Plaintiffs, respectfully, can only blame themselves for their inability to P.G.'s juvenile case records because they failed to file an 827 petition for almost a year, as discussed below. Whatever the merits of their request, Plaintiffs do not deserve any relief on an ex parte basis that would forgive—or worse, reward—their dramatic lack of diligence, their delay, and their deceit vis-à-vis the progress of their 827 petition.

In the parties' Joint Rule 26(f) Report, filed on April 5, 2018 (ECF No. 17), the parties informed the Court that a significant amount of evidence and discovery in this case would come from P.G.'s juvenile case file. *Order on Defs.' App. to File*

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

8

*Under Seal* ¶ 2, ECF No. 84. Pursuant to California Welfare and Institutions Code section 827, the parties are required to obtain an order from the juvenile court before using these critical records in this litigation. *Id.* at ¶ 3. Defendants filed their petition on March 7, 2018, which was granted in full by January 4, 2019. *Id.* at ¶ 5. Consistent with the juvenile court's orders, Defendants sought leave of court to file the records under seal in support of their summary judgment motion—which the Court permitted. *Id.* at ¶ 9. Those records were filed under seal, pursuant to the Court's order. *See* ECF Nos. 90 through 90-19.

　　While the records are equally important to both parties, only Plaintiffs find themselves facing summary judgment without an 827 order. Defendants have had no difficulties securing the necessary documents to litigate this case in the time the Court has given the parties—Plaintiffs make no attempt explain their inability to do the same.

　　Moreover, Plaintiffs have deceived the Court and Defendants throughout this case regarding the progress of the 827 petition. In the April 2018 Joint Rule 26(f) Report, the parties "jointly request[ed] the scheduling conference be continued" for approximately 120 days, in part, to "*give Plaintiffs time to file their petition for disclosure of Plaintiff P.G.'s juvenile case file*." *Joint Rule 26(f) Report*, 14:2–8, ECF No. 17 (emphasis added). On September 4, 2018, the parties reaffirmed that "the ability to use documents from the juvenile case file is necessary for a full presentation of the claims and defenses in issue." *Joint Stip. to Cont. Discovery Cutoff* ¶ 5, ECF No. 63. On September 24, 2018, Plaintiffs' counsel stated she would "work on [an 827 order] this week." ECF No. 78-3, 006 (letter describing 827 dispute filed in support of application for leave to file juvenile case file under seal). Nevertheless, Plaintiffs had made no progress in doing so even in October 2018. *Joint Stip. to Cont. Mediation Cutoff*, 3:1–4, ECF No. 67.

　　Now they claim they ultimately filed their petition in January 2019, without any explanation—or even any evidence suggesting they actually did so.

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

9

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

**B.**    **Granting ex parte relief, or the alternatively-requested relief, would reward Plaintiffs' gamesmanship.**

Plaintiffs request, alternatively, the Court "continue the June 20, 2019[] hearing and its decision on these motions until the juvenile court decides on the Plaintiffs' pending applications for access to the confidential records." App. 8:1–5. As discussed below, Plaintiffs purposely refused to pursue an 827 order and used their lack of an 827 order to their strategic advantage throughout this litigation. Plaintiffs have attempted to evade discovery throughout this action, and their lack of an 827 order has been their primary tool of abuse. Granting ex parte relief, or the alternative request to delay summary judgment, would reward this type of behavior and warrants denial of the application outright.

**1.**    **Plaintiffs persist in refusing to lay sufficient foundation for its requested relief.**

While this Court has regrettably been briefed on 827 petitions for over a year, Plaintiffs also claim that they filed a "joinder"—presumably one of the "pending applications" that Plaintiffs would request the Court delay summary judgment waiting for the juvenile court to decide. Plaintiffs make no serious attempt to explain what a "joinder" is. Defendants submit the Court should not be subjugating this proceeding to some exotic type of juvenile court proceeding that Plaintiffs refuse to even explain.

**2.**    **Plaintiffs have used § 827 to delay making disclosures.**

In the April 5, 2018 Joint Rule 26(f) Report, the parties agreed to delay making initial disclosures until obtaining P.G.'s juvenile case file. *Joint Rule 26(f) Report*, 14:5–8, ECF No. 17.

Defendants followed this plan. When the first portion of Defendants' 827 petition was granted in July 2018, Defendants made their initial disclosures several weeks later, in August 2018. *Declaration of Ryan A. Graham, Esq. in Opposition to Plaintiffs' Ex Parte Application to Expedite Juvenile Case File Processing [ECF*

10

*No. 105]* ("*Graham Declaration*") ¶ 3. Defendants served a copy of the documents on CD on August 7, 2018. *Id.* at ¶ 4, Ex. 1. When Defendants received the second batch of juvenile case file records in late February 2019, they promptly disclosed those records to Plaintiffs on March 1, 2019. *Graham Decl.* ¶ 7; *accord* ECF No. 78-5, at 018 (Defs.' Supp. Disclosures).

Plaintiffs completely abandoned the plan. By refusing to actually file an 827 petition, the event triggering the obligation to make disclosures never happened to Plaintiffs. Consequently, they were able to delay making initial disclosures until the eve of the discovery cutoff, which they did. *Graham Decl.* ¶ 6, Ex. 2 (Pls. delayed disclosures until March 2019); ECF No. 70 ¶(b) (discovery cutoff April 2019). Within Plaintiffs' disclosures, they do not even mention P.G.'s juvenile case file. *Graham Decl.*, Exs. 2, 3.

### 3. <u>Defendants have had to withdraw demands for production due to Plaintiffs' lack of an 827 order.</u>

After Defendants disclosed the first batch of juvenile case file records, they propounded written discovery on Plaintiffs, including a demand for production of documents. *Graham Decl.* ¶ 5, Ex. 5. Specifically, Demand No. 2 asked Plaintiffs to produce P.G.'s juvenile case file. *Graham Decl.* ¶ 5, Ex. 5, at 002. However, Defendants withdrew Demand No. 2 when they learned Plaintiffs did not have an 827 order. ECF No. 78-3, at 007, ¶ 1 (Sept. 2018 email from Graham to Serobian, "I don't want our discovery request to create a dispute where we've asked you to produce something you can't[,] [i]f you do not have an order permitting Plaintiffs to disseminate the records in this litigation, please consider [RFP] No. 2 . . . withdrawn").

### 4. <u>Plaintiffs' gamesmanship in non-documentary discovery has been substantial and intentional.</u>

While the lack of an 827 order precluded Plaintiffs from producing P.G.'s juvenile case file, it did not preclude Plaintiffs from answering interrogatories or

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

11

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

making admissions.

When Plaintiffs missed the deadlines to respond to Defendants' first round of discovery, Plaintiffs initially claimed that the Court's order continuing the discovery cut-off extended the discovery response deadlines. *Graham Decl.* ¶ 8, Ex. 6, at 006 ("I understood our stipulation for discovery extension to apply to all pending requests."). Plaintiffs persevered in this belief, over email (*id.* at ¶ 8), via telephone (*id.* at ¶ 9), and in person—until Defendants' counsel handed paper copies of Rule 33, Rule 34, and Rule 36 to Plaintiffs' counsel when meeting to confer on an anticipated motion to compel (*id.* at ¶ 10, ex. 10).

During the meeting, on November 9, 2018, Plaintiffs' counsel suddenly abandoned the parties' previously mutual understanding that section 827 applied to DCFS' internal agency files. *Graham Decl.* ¶ 10. Defendants' counsel showed a case to Plaintiffs' counsel in order to persuade her to return to their previous understanding: *In re Elijah S.*, 125 Cal. App. 4th 1532 (2005). *Graham Decl.* ¶¶ 10–11, Ex. 7 (Westlaw history). Plaintiffs claimed that section 827 could categorically not apply to DCFS records because *In re Elijah S.* is from 2005 and because it is only an appellate case. *Graham Decl.* ¶ 11. Despite this behavior, Defendants agreed to let the issue go if Plaintiffs would provide discovery responses and agree to seek an extension of deadline from the Court. *Graham Decl.* ¶ 11.

Weeks later, Plaintiffs reversed positions yet again in their discovery responses, using section 827 as a discovery objection in their most shameless attempt to subvert discovery yet. Before the Court dismissed the judicial deception claims, the most critical facts in this case related to the contents (and alleged omissions) of the warrant application. For example, Plaintiffs claimed that the warrant application "failed to disclose to the juvenile court that . . . "[Brian Garcia] had monitored visits which he failed to exercise." *Third Amended Complaint*, 46:15–21, ECF No. 39. As the Court now knows, the warrant application very clearly states that "Brian Garcia, does not reside in the home; there is a Family Law

order that grants the father monitored visits." ECF No. 90-3, at COLA_000037.

Naturally, Defendants propounded a request that Plaintiffs admit that the warrant application contains such a statement. *Graham Decl.*, ¶ 12, Ex. 4, at 010. In response, Plaintiffs answered that they "do[] not have authority to discuss the content of confidential juvenile case file under Welfare and Institutions Code section 827." *Id.* While this would have become subject of a discovery motion, the Court dismissed the County—who had propounded such discovery—before a motion could be taken. *See* ECF No. 78-3, at 003. They nevertheless re-asserted the identical objections in response to additional discovery propounded on behalf of Defendants Carey and Helwajian. *Graham Decl.* ¶ 15, Ex. 10.

Section 827 concerns documents in juvenile case files—not "authority" to make admissions. In any case, Defendants had sent the warrant application to Plaintiffs lawfully under the terms of Defendants' 827 orders. Now, Plaintiffs freely admit they actually received the records in June 2018, app. 5:25, months before they used section 827 as a shield to avoid discovery. In other words, ***Plaintiffs used section 827 as a justification to refuse to admit that a document contained a simple sentence, even though they possessed that very document from two sources, one of which was pursuant to section 827 itself***. Plaintiffs attempt to hide behind section 827 is a flagrant attempt to leverage their putative inability to use or access the juvenile case file to stonewall legitimate discovery. While Defendants made a strategic decision to forego motions to compel—Plaintiffs should not be rewarded now for such tactics by delaying summary judgment.

## C.   On the merits, Plaintiffs' requested relief is unwarranted.

### 1.   Plaintiffs' request is procedurally defective.

(a.) Plaintiffs seek an order directed at the juvenile court; consequently, the juvenile court should have received notice so that it could have opposed this request for relief. Plaintiffs have not done so. Plaintiffs have put the Court in the awkward position of deciding the rights and obligations of an entity—indeed, another court—

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

13

1   who is not represented in this proceeding. The Court should refrain from such

2   drastic remedies without observing the fundamental protections of procedural due

3   process.

4       (b.) Plaintiffs seem to seek a discovery order insofar as they are attempting to

5   leverage the Court's power to compel the production of documents. Consequently,

6   the application should be directed to the magistrate judge and there should have

7   been a joint stipulation filed pursuant to Local Rule 37-1. The Court should not

8   reward Plaintiffs' now-routine refusal to follow the local rules.

9       (c.) Plaintiffs' remedy is vague, and it is unclear how it would redress the

10  injury Plaintiffs claim to suffer. Plaintiffs claim to need records by June 20, but only

11  ask the Court to order the juvenile court "to act expeditiously." App. 4:9. The Court

12  should refrain from issuing such speculative orders.

13  **2.    Plaintiffs' request is better-suited to the state courts, as a practical**

14      **matter.**

15      (a.) Plaintiffs are not limited to seeking relief in the federal forum. Notably,

16  827 petitions trigger "a special proceeding on a collateral matter." *In re Keisha T.*,

17  38 Cal. App. 4th 220, 229 (1995) (citing Cal. Civ. Proc. Code §§ 21, 23).[3] The

18  juvenile court accepts filings and can even hold hearings in special proceedings on

19  827 petitions. Plaintiffs contend to have an 827 petition pending in the juvenile

20  court. Consequently, they have a forum—the juvenile court—that is ready and

21  willing to hear any request to expedite its processes.

22      (b.) As discussed in Part III.B., *supra*, the decisional process of the juvenile

23  court on an 827 petition is a complex one. Given that juvenile/family law is the

24  exclusive province of the state courts, the Court may not have the same familiarity

25

26  _____

    [3] While the California Civil Code nominally distinguishes between a "special proceeding" and an

27  "action," there is no appreciable difference between the two. For example, there is no distinction
    between actions and special proceedings for purposes of res judicata. *Manufactured Home*

28  *Communities Inc. v. City of San Jose*, 420 F.3d 1022, 1031 n.12 (9th Cir. 2005).

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

14

with these issues as the juvenile court. While the Court is certainly capable of becoming sufficiently familiar to decide the issues, it would be unnecessary for the Court to use its time to do so—when the juvenile court is ready and waiting.

(c.) In the unlikely event that the juvenile court denies Plaintiffs' 827 petition, California's appellate courts should be given the opportunity to correct the error. *In re Keisha T.*, 38 Cal. App. 4th at 229 ("an order granting a petition under section 827 is appealable as a final judgment in a special proceeding even absent a final decision as to which portions of the juvenile court records will be released").

### 3.   <u>Plaintiffs' request needlessly entangles federal and state courts.</u>

"Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). As discussed above, there is no need for Plaintiffs to seek relief here. Despite this, Plaintiffs invite the Court to make a dramatic entrée into an ongoing state proceeding that is not necessary for any reason and that the applicable law counsels should be determined by the juvenile court.

### D.   <u>Plaintiffs continue to misrepresent events and facts.</u>

(1.) Plaintiffs claim that "[o]n or about November 9, 2018, at the [offices of defense counsel], . . . Ryan A. Graham provided 'the entire record from the dependency court file' on a Compact Disk to the undersigned attorney Liana Serobian." App. 5:11–19. Plaintiffs' counsel also swears to this fact ***<u>under penalty of perjury</u>***. *Declaration of Liana Serobian in Support of the Plaintiffs' Ex-Parte Request for Order to the Juvenile Court* ¶ 5, <u>ECF No. 105-1</u>.

This is completely false. The purpose of the November 9, 2018 meeting was to confer on a then-anticipated motion to compel. *Graham Decl.* ¶ 8–10. <u>Ex. 6</u> (Rule 37 letter). The records were disclosed via postal mail on August 7, 2018. *Graham Decl.* ¶¶ 3–4, <u>Ex. 1</u> (letter accompanying Rule 26 disclosures); <u>ECF No. 78-5</u>, at 006 (Rule 26 disclosures, proof of service).

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

---

*N:\files\2003-Ulikhanova (COLA)\Pleadings\Opp_Ex_Parte_827\Opp_827 (MPAs).docx*

Defendants note this is the second time Plaintiffs' counsel has filed misleading statements under penalty of perjury about her interactions with Defense counsel. *See Defs.' Opp. to Pls. Ex Parte (ECF No. 81)*, 2:1–14, ECF No. 85.

(2.) Plaintiffs claim the juvenile court "completed the tenuous task of approving, redacting, and providing to the Defendants' counsel in only about four months the entire juvenile record that is over 1,300 pages long." App. 5:1–4.

This makes several misleading assumptions. While the juvenile court did release 1,300 pages by July 2018—the remaining 1,777 pages were not available until late February, 2019. *Graham Decl.* ¶ 7. The juvenile court processed Defendants' petition in two phases—juvenile court records, following by DCFS records. The juvenile court may process Plaintiffs' petition in two phases, but it might not. To the extent that Plaintiffs insist it would be reasonable to grant the requested relief because the juvenile court is taking longer than it did with respect to Defendants' petition, the comparison is flawed insofar as there is no reason to think that Plaintiffs will not receive their records on a schedule that is loosely analogous to Defendants' petition in the long run.

## V.  CONCLUSION

This motion is yet another make-work exercise for the Court and Defendants, and Defendants' request that it be denied as such.

DATED:  June 6, 2019                     PETERSON · BRADFORD · BURKWITZ


By:  /s/ Ryan A. Graham, Esq.
       Avi Burkwitz, Esq.
       Ryan A. Graham, Esq.
       *Attorneys for Defendants*
       STEVE CAREY, and
       MARAL HELWAJIAN

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

16

## <u>PROOF OF SERVICE</u>

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

     I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 100 North First Street, Suite 300, Burbank, California 91502.

     On June 6, 2019, I served the foregoing document described as:
**DEFENDANTS' OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION TO EXPEDITE JUVENILE CASE FILE PETITION [ECF NO. 105]**
on interested parties in this action by placing a true and correct copy thereof enclosed in a sealed envelope addressed as follows:

### SEE ATTACHED MAILING LIST

☒    **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed document(s) with the Clerk of the Court by using the CM/ECF system. Participants in this case who are registered CM/ECF users will be served by the CM/ECF system. Participants in this case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

☒    **FEDERAL:** I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on June 6, 2019, at Burbank, California.

                      /s/ Lilliana Rosales

                      Lilliana Rosales

PETERSON · BRADFORD · BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION [ECF NO 105]**
Case No. 2:17-CV-9193-FMO-E

N:\files\2003-Ulikhanova (COLA)\Pleadings\Opp_Ex_Parte_827\Opp_827 (MPAs).docx

## SERVICE LIST

**RE:**   **Ulikhanova, Lucy v. County of Los Angeles**

**Case No.:**   2:17-CV-9193-FMO-E

Liana Serobian, Esq.
Serobian Law, Inc.
100 North Brand Blvd., Suite 600
Glendale, CA 91203
Tele: (818) 539-2249
L.Serobian@yahoo.com

**Attorney for Plaintiffs**
**Lucy Ulikhanova and**
**P.G., a Minor**

PETERSON • BRADFORD • BURKWITZ
100 North First Street, Suite 300
Burbank, California 91502
818.562.5800

---

18

*N:\files\2003-Ulikhanova (COLA)\Pleadings\Opp_Ex_Parte_827\Opp_827 (MPAs).docx*